1 | Arif A. Durrani
Reg. No. 09027-014
2 | Federal Correctional Complex
Victorville I
3 | Adelanto, CA 92301



FILED
CLERK, U.S. ...
APR 23 2008
CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

4

5

6

7

8 | UNITED STATES DISTRICT COURT

9 | CENTRAL DISTRICT OF CALIFORNIA

10 | ARIF A. DURRANI,                           CASE No. CV-06-06281-PA

11 |          Petitioner,              PETITIONER'S OPPOSITION
                                      TO MOTION TO DISMISS
12 |     v.                           28 U.S.C. §2241

13 | S.A. HOLENCIK,

14 |          Respondent.

15 | _____

16 |        Arif A. Durrani (Petitioner), hereby submits his

17 | response and opposition to the Respondents Motion. This response

18 | is based upon the files and records of this case, together with

19 | the attached statements of facts and the accompanying memorandum

20 | of points and authorities.

21 |        Respectfully submitted on this 11th day of April, 2008.

22

23

24 |                          Arif A. Durrani

25 |                              Petitioner

26

27

28

MEMORANDUM OF POINTS AND AUTHORITIES

I

INTRODUCTION

Arif A. Durrani, Petitioner, ("Durrani") filed a petition for a writ of habeas corpus on October 2, 2006, to correct the erroneous Release Order D6270, dated September 23, 2005. (CACD CR 27). Durrani seeks the correction of the Release Order to comply with the governments affirmative duty to set forth contemporaneously with a Rule 48(a) its motion for reasons seeking dismissal. (CACD CR 27). The correction is required because the dismissal was in derogation of the Durrani's rights (1) The dismissal was in bad faith, or (2) Durrani has been prejudiced in his ability to attack the prosecutor's motive due to trial court's failure to require submission of adequate reasons as a condition of dismissal, (3) develop the record for the Ninth Circuit, to consider the merits of the fraudulent indictment and the governments conduct in securing Durrani's presence in the United States. (USCA 07-50031/APPENDIX 'A'), (4) the order must provide for the remedy for the illegal arrest and damages it caused Durrani, and to return all the property that was seized from an innocent person upon the indictments dismissal, and (5) ensure there was no use of any illegally seized property from this indictment. If any derivative information was used, to identify its reasons for that purpose(s).

- 2 -

As discussed below, this court has jurisdiction to adjudicate Durrani's writ of habeas corpus, which is only cognizable pursuant to 28 U.S.C. §2241 and its rules.

II

STATEMENT OF FACTS

On May 7, 1999, a grand jury in the Central District California returned a two count indictment in <u>United States</u> v. <u>Arif A. Durrani,</u> CR99-470-PA. (CACD CR 1). The indictment was based upon conduct for which no offense was committed against the United States by Durrani or anyone else. The document presented by agent, Wayne Kempton to the grand jury to obtain the indictment had the export license stated on it. The same document used to indict Durrani proved his innocence. APPENDIX 'B'. The government attorneys and agent Kempton committed perjury before the grand jury to obtain this indictment.

Since the export license was issued, the grand jury indicted an innocent person. The government is required to have known this evidence prior to presenting its perjured testimony before the grand jury. Although, it is irrelevant at this juncture, the alleged, lawful act on May 9, 1994, was not completed until May 18, 1994. Therefore, the indictment was facially beyond the statute of limitations. The grand jury was deceived. Durrani, was not debarred from participating in FMS export sales. (BATES No. 0246, 7 and 8). AUSA William A. Crowfoot, has lied in his Rule 48(a) Application. (CR 26). The agent, Wayne Kempton, similarly, was intentionally untruthful in his affidavit. (CR 19).

There was no probable cause on May 7, 1999, to obtain any indictment, against anyone, certainly, not Durrani. Who was an innocent person.

The government agent and attorneys were informed in July 2002, by Durrani's attorney an export license was issued. (Government Investigation Report # 53). The government returned a copy of the SED's for the license issued under the FMS program in its discovery in June 2005. These documents were initially seized from Durrani in May 1996. After the June 12, 2005, arrest in Mexico. On the next day, Durrani was interviewed by a U.S. government agent in the offices of the Mexican Immigration in Mexico City. The U.S. government agent was informed that the export license was issued. It was in the U.S. Customs, the U.S. Department of State and most importantly, it was in the U.S. attorneys files.

The Mexican immigration officials met with Durrani and his attorney, Carlos Solano-Otriz, that evening. He had secured the residency for Durrani in 1998. Durrani and his attorney, were informed that the U.S. attorney and the ICE agents from San Diego insisted that Durrani be extradited from Mexico. Mexico, did not expel Durrani. The first original letter, that was prepared for this purpose, with its translation, was found in the U.S. attorneys file in San Diego. APPENDIX 'C'. It clearly states Durrani's itinerary from Mexico city to London. There is no mention of Los Angeles, California. Mexico did not purchase any airline ticket. The U.S. government arrested Durrani and purchased the ticket.

- 4 -

The Mexican government agreed to release Durrani on June 15, 2005. It had agreed to a normal court proceeding to challenge the detention.

The documents that were required had already been submitted for the yearly residency renewal in April, 2005. APPENDIX 'D'. It was scheduled for 9:00 A.M. on June 15, 2005. The fraudulent cover up expulsion letter was created to appease the U.S. government. It clearly states that Durrani was to be delivered to Mexico city airport. APPENDIX 'E'. The U.S. government had already purchased the airline ticket prior to the issuance of this letter. This letter was issued to conceal its unlawful arrest and conduct in Mexico.

It dispatched three U.S. agents from the Central District on the evening of June 14, 2005, to Mexico city to arrest Durrani in Mexico and to bring him to Los Angeles, California. APPENDIX 'F'.

The government fabricated an arrest warrant on October 27, 2005. APPENDIX 'G'. It back dated it to June 15, 2005. It lodged this arrest warrant after a month on October 27, 2005, after this case was dismissed with prejudice. It produced this arrest warrant in a subsequent case in San Diego to offset the actual arrest for the San Diego case on June 15, 2005. Appendix 'H'. This document shows the arrest for this case was in Mexico and it was opened and closed on June 15, 2005. This document also shows arrest for San Diego, on June 15, 2005, and it was closed on October 27, 2005.

The AUSA William A. Crowfoot, stated to the court Durrani was brought for these proceedings. APPENDIX 'I'. There was no probable cause for any arrest on June 15, 2005. The U.S. government agents arrested Durrani in Mexico and brought him to the United States. APPENDIX 'J'. The government agents, Brian Bucaro and Clark Settles altered the chronology and created false investigation reports. This court must order release of the "raw notes" utilized to fabricate these reports to authenticate the facts of this case.

The arrest warrant lodged with the clerk on October 27, 2005, was taken from the files of the U.S. Marshals Service. (CR 30). This is deceit and intentional submission of fraudulent documents by the government. Whereas, the documents submitted by Durrani, show the actual facts. When compared to the investigation reports provided in discovery by the government (05CR1746-LAB) and the documents that were intentionally withheld (FOIA DOJ 07-2423, Appeal 08-0363 and DHS 07FOIA53208, Appeal 08-034/APPENDIX 'K'). One is left with nothing more than a firm belief of the duplicity, deceitful, intentional and willful creation of fraudulent investigation reports by government agents. Compare the investigation report (05CR1746-LAB BATES No. unknown, 06/15/05 at 2007, 4 pages by ICE agent Brian Bucaro/Clark Settles/APPENDIX 'C') with the investigation report submitted by AUSA William A. Crowfoot, in the Central District of California. BATES NO. 645/APPENDIX 'L'). It is clear that, misleading and fraudulent investigation reports were created to alter the chronology of the events as they unfolded.

A review of the reports also confirm to fabricate the false allegation for lack of legal status. The U.S. government agents and their Mexican counterparts had been conducting surveillance since September 2004, They took photographs and visited Durrani's homes and business. They reviewed bank and immigration records. They did not find any problem with the legal status in those documents. The alleged claim to verify the legal status is nothing more than outright lies. It was an excuse to harm Durrani and engage in unlawful conduct.

After the arrest in Mexico, on June 22, 2005, the agents conducted a warrantless, illegal and without probable cause search and seizure. The government agents seized Durrani's documents and files. They took the copy of the export license. They disobeyed this courts order (CR 15) to ensure Durrani could not call his wife and obtain a copy of the export license. They threatened her and said, they would do the same to her and took away Durrani's files and his property.

These shipments, as all other U.S. export shipments, by regulations and law are lodged in the U.S. Customs computer upon shipment. Similarly, all exhausted export licenses are reported under the applicable C.F.R. and statute to the United States Department of State. The government was required to have known from May 18, 1994, no offense was ever committed by Durrani.

The Ninth Circuit recently noted in United States v. Mendoza, 9th Cir. No. 06-50447, 03/03/08 a delayed arrest was a violation of the speedy trial act when the government knew the whereabouts of the accused.

This arrest was particularly egregious because the highest levels of the executive branch of the U.S. government knew at all times, the home address, telephone numbers and Durrani's attorneys. Its agent met with Durrani to discuss possible killing or apprehension of Osama Bin Laden (UBL). This meeting took place at his legal residence in Mexico. They had full and complete knowledge of Durrani's status. The escort was provided by the Mexican federal government agents in Mexico.

The trial court could have immediately dismissed this case for speedy trial violation. It was not inclined to do so. That would have been a dismissal on a technicality of law. Durrani, has affirmatively proved complete innocence. He must be afforded the proper remedy and a judgment of innocence in the Release Order. Therefore, it is absolutely essential and a must Durrani obtain a certificate of innocence from this court. He must not suffer from any disabilities or burdens which flowed from this unlawful arrest in Mexico by U.S. government. Durrani, has a very substantial stake to restore his legal status in Mexico and United States. He is a naturalized United States citizen. He needs to recover all his assets and damages from a judgment of innocence from this court.

This is prosecutable criminal misconduct by the agent and the government attorneys. It spanned over two decades. It has continued to this day.

Durrani, was a legal resident of Mexico. His arrest in Mexico, on June 12, 2005, was under a joint bilateral agreement between United States and the Mexican government. A prearranged, false claim was made that Durrani could not establish his legal address in Mexico. Durrani had continuously maintained his legal status from 1998 until he was arrested in Mexico on June 12, 2005. He paid his personal and businesses taxes. The social security payments for his workers on a monthly basis throughout his residency. The resident permit is approved on a yearly basis. The government conspiracy enumerates, when Durrani would next apply for his yearly renewal. It should be withheld, and he would be arrested. APPENDIX 'M'.

When he submitted his FM-3 permit to be renewed. It was withheld upon the implicit instructions of the U.S. government.

The govrement created and caused to be created numerous false documents to effectuate this illegal arrest. A simple cursory review of the ICE, investigation reports highlight the contradictions. They expose the unclean hands of the U.S. government agents. They bribed the local Mexican officials in Tijuana, Mexico. They caused false documents to be created in violation of Foreign Corrupt Practices Act (FCPA), 15 U.S.C. §§78dd-2, 78ff. These illegal acts are contemporaneously mirrored in the U.S. government investigation reports.

These reports were discovered post dismissal in this case. They give credence to facts that, the government agents orchestrated this arrest and used this resurrected indictment for other purposes.

After, the arrest, on June 12, 2005. Durrani was brought from Mexico, on June 15, 2005. The U.S. attorney from the Southern District of California in collusion with the U.S. Attorney in the Central Dictrict, caused Durrani to be illegally detained. In the meantime, he investigated to fabricate an offense from the unlawfully seized documents and property based on this CR99-470-PA, indictment. APPENDIX 'N'.

The government gained access to information legally unavailable to it in order to fabricate its complaint in the Southern District of California. It did not have the probable cause for the arrest it had already made on June 15, 2005, for which it had brought Durrani to the United States. The derivative information from this search was "fruit of the poisonous tree" and for other purposes.

After the government attorneys were confronted with a hearing scheduled for Monday, September 26, 2005, (USCD CR99-470-PA CR 24) to dismiss the indictment. It was followed by the Ex-Parte Application filed on the morning of September 23, 2005, (USCD CR99-470-PA CR 25). AUSA William A. Crowfoot, informed the AUSA William P. Cole, in the San Diego, to prepare his complaint on September 22, 2005, for the next day, to coincide with his dismissal the next day. This prompted these government attorneys, who had at first aborted this procedure on September 9, 2005, to file their own Ex-Parte Application to dismiss this indictment.

- 10 -

1    This affirms and lends credence to the fact that, both
2  these attorneys knew, that the export license was issued. It was
3  pretextual use of this indictment to arrest Durrani, in Mexico.
4  Further, to hold him, until an offense could be fabricated in
5  San Diego. APPENDIX 'O'. It was done prior to the hearing
6  scheduled on September 26, 2005, to prevent being exposed for
7  concealing illegal conduct in a judicial proceeding.

8    On October 2, 2006, Durrani filed a petition for a writ
9  of habeas corpus in this instant case. The district court did
10 not order the government to show cause. The U.S. attorney made
11 no effort or ask the leave of court to submit any response. On
12 July 17, 2007, after waiting for approximately nine months, it
13 issued an order denying Durrani's petition and referred it to
14 the Ninth Circuit.

15    The Ninth circuit assigned it case number C.A. 07-73112.
16 Durrani petitioned the Ninth Circuit. The district court order
17 is in fact, an error of law. It did not follow the established
18 precedent of the Supreme Court and or this circuit. It did not
19 follow the habeas corpus rules. The Ninth Circuit correctly
20 determined, it was a challenge to the erroneous Release Order
21 6270. It correctly stated the petition is not a challenge to the
22 subsequent proceedings in the Southern District. It clearly
23 recognized the district court order for, what it was. It sought
24 to seek a "pass" for the illegal arrest of an innocent person in
25 Mexico on June 12, 2005. The order did not allow transfer to
26 challenge the subsequent case developed from the "fruit of the
27 poisonous tree".

28

The district court must first address the issue of the illegal arrest in Mexico on June 12, 2005. Otherwise, the Ninth Circuit would have condoned illegal criminal misconduct by the government agents. It clearly saw and deployed the safeguards to prevent the government attorneys from getting their free pass for their illegal conduct without any scrutiny.

The petition addresses the erroneous release order and not the subsequent illegal conviction 05CR1746-LAB. That is under a dircet appeal, USCA 06-50344. The exhibits attached from a previous dismisssed §2241, CV 06-1730-LAB (S.D. CAl 2006), is the subject of a recall of mandate. The district court order was an error of law. A §2241 petition does not require a COA from the district court, as the Ninth Circuit, recently held in Harrison v. Ollison, 9th Cir., No. 06-55470, 3/20/08. A Section §2255, does not reference, treaties. The district court should have either denied or granted the petition. A second §2241, 07CV1249-LAB(NLS), was filed and withdrawn. The district court again used a procedural bar not to reach the merits of the issues presented, once again. Those challenges culminated into a Rule 33(b)1, petition. Durrani, filed it to prevent the district court to use  procedural bar and answer the motion on its merits. It was denied under "lack of jurisdiction" without first reaching its merits. It did not follow the Ninth Circuit precedent in U.S. v. Frame, 454 F.2d 1136 (9th Cir. 1972) Cert. denied, 406 U.S. 925, 92 S.Ct. 1794, 32 L.Ed 2d 126 (1972). It is currently upon appeal under USCA 08-50007, seeking remand to either, grant or deny the petition.

1   Durrani, is fully aware that the government attorney
2   does not want the district court to reach the merits of the
3   issues. It would be forced to grant the petition(s) as a matter
4   of law. That would be admission of the governments unlawful
5   conduct. Not surprisingly, the government attorney did not
6   attach the §2241, petition 3:07-CV-1196(SRU), <u>Arif A. Durrani v.</u>
7   <u>S.A. Holencik</u>. It was filed in the District of Connecticut. It
8   would have confirmed this court has jurisdiction for its
9   erroneous release order it issued on September 23, 2005.
10  Durrani, seeks the correction of his release order to reflect
11  his innocence. It was not granted on some technicality of law.
12  The current Release Order does not reflect the true reason for
13  the dismissal, and furthermore, it never intended to release
14  Durrani. It was merely a step in the continuation of the
15  governments unlawful conduct. Therefore, a new proposed release
16  order is submitted. APPENDIX 'P'. Durrani is entitled to such a
17  certificate. He is an innocent person. He should not have been
18  arrested at all. He should not have been brought from Mexico. He
19  did not commit any offense. These are the facts of this case.
20  //
21  //
22  ///
23  ///
24  ///
25  ///

### III

### SUMMARY OF THE ARGUMENTS

First, under Carafas v. LaVallee, 391 U.S. 234, 20 L Ed 2d 554, 88 S. Ct. 1556 (1968), the district court has jurisdiction under 28 U.S.C. §2241. The court erred in failing in its July 17, 2007, order to grant the writ. Instead, the court improperly denied the petition, construed it as a §2255, stated it lacked jurisdiction and transferred it to the Ninth Circuit Court of Appeals.

Second, the district court erred under Walker v. Wainworth, 390 U.S. 335, 88 S. Ct 962, 19 L Ed. 2d 1215 (1968), See also, Carafas v. LaValle, 391 U.S. 234, 239, 88 S. Ct. 1556, 20 L Ed. 2d 554 (1968). The basis for the district court's disposition of the issues is not vaild. On remand Durrani's contention must be determined upon the merits.

Third, the underlying claim for correction of the Release order 6270, is based upon actual innocence. Durrani has clearly established his innocence. He should not have been indicted nor arrested. The government had known from May 18, 1994, no offense was ever committed against the United States.

Fourth, 28 U.S.C. §2241 dictates that the merits of Durrani's contention cannot be passed by this district court before determination of the first issue of the unlawful arrest. Durrani was arrested in Mexico and brought to the United States on June 15, 2005, for this indictment.

He is not required to pass his first claim in this court in deciding to resort to any claims in unlawful subsequent proceedings. The "merits" cannot stand unresolved in this district for which he was brought from Mexico by the U.S. government.

Fifth, the district court must reach the merits of the pretextual unlawful arrest in Mexico of an innocent person, to manufacture a probable cause for any other subsequent proceedings.

Sixth, the district court must issue a certificate of innocence, and curtail any collateral consequences that flowed from the unlawful arrest. It must reach the merits of the Rule 48(a), bad faith claim for the dismissal of the indictment by the government attorneys.

Seventh, Durrani, has produced the governments own document that, he was arrested in Mexico. The document affirmatively states he was extradited. Therefore, the respondent must produce all the documentation by which the government gained Durrani's presence in the United States, for an offense he has never committed which was known to the government from May 18, 1994. Respondents bases all of its arguments upon its contention that, Durrani, was not extradited from Mexico, and asserts he was arrested in Los Angeles.

IV

ARGUMENT

DISTRICT COURT HAS JURISDICTION

TO ADJUDICATE THIS 28 U.S.C. §2241 PETITION

The U.S. District court has jurisdiction of Durrani's §2241 petition to correct the Release Order. The Ninth Cirucit, Court of Appeals, specifically remanded this case back to this court to address the Release Order 6270, dated September 23, 2005. Exclusive Relief Pursuant to 28 U.S.C. §2241, provides "[t]he writ of habeas corpus shall not extend to prisoner unless...[h]e is in custody in violation of the Constitution or laws or _treaties_ of the United States." 28 U.S.C. §2241(c)(3) (emphasis added). On the other hand, Section §2255 provides relief for federal prisoners on "the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack". 28 U.S.C. §2255 does not reference treaty violations.

This is a 28 U.S.C. §2241, to correct a errorenous Release Order 6270, issued by this court. There is no sentence to vacate, set aside or correct. It is not a second or successive habeas petition. It is clearly established that Durrani was innocent of the undelying offense, which the government knew from May 18, 1994.

1    [U]nder the doctrine, codified, it cannot be barred, as
2    second or successive. The challenge is for the unlawful arrest
3    of an innocent person. It is not reflected in the Release Order
4    issued by this court.

5    It provides that "[t]he court....shall dispose of the
6    matter as law and justice require." 28 U.S.C. §2243. "collateral
7    consequences" flow from the errorenous release order. See,
8    Carafas v. LaVallee, 391 U:S: 234, 237, 88 S:Ct. 1556, 1589, 20
9    L.Ed.2d 554 (1968). There is no need in the statute, the
10    Constitution, or sound jurisprudence for denying to petitioner
11    his ultimate day in court." id. 559

12    Durrani, has a current §2241 petition filed in the U.S.
13    District Court, Bridgeport, Connecticut, 3:07-CV-1196(SRU), Arif
14    A. Durrani v. S.A. Holencik,. It seeks relief from disabilities
15    from a previous unlawful conviction for events related to the
16    Iran-Contra, investigation. The conviction was barred by
17    statute. No aspect of the hostage release efforts or Iran
18    initiatives were claimed to have been illegal, and by the
19    Presidential finding dated January 17, 1986, for involvement of
20    private third parites.

21    Similarly, Durrani, was innocent for the offense alleged
22    in the indictment CR99-470-PA, which the government was required
23    to have known. The arrest was unlawful. Durrani, is entitled to
24    full remedy to restore his status and property. No aspect of
25    this unlawful arrest can be used for any other purposes.

26
27
28

## LOCATION OF THE ARREST BY U.S. GOVERNMENT

## AND SURRENDER BY MEXICO

Durrani was arrested in Mexico on June 12, 2005, and brought to the United States on June 15, 2005, by U.S. Marshals. APPENDIX 'Q'. It was the formal arrest of an innocent person. No offense was ever committed against the United States to justify this arrest. There was no probable cause for this arrest. It was conducted under a bilateral agreement. A demand for the arrest was made by the United States upon the other treaty party for the extradition. See, Stevenson v. United States, 381 F.2d 142, 144 (9th Cir. 1967).

The Respondent asserts in its motion on Page 2, line 8 - 9 as follows: "Defendant, who was had been living in Mexico, was arrested in Los Angeles on June 15, 2005."

The record reflects it is a blatant lie. The government attorney omits the most crucial aspect the arrest location in Mexico. It confirms the arrest warrant lodged on October 27, 2005, is a forgery. His counterpart's similar assertion in San Diego, are also false in Exhibit B, CR # 10, n 1, 3:06-CV-1730-LAB-JMA, 2:06-CV-06281-PA CR # 25-2, page 13). The Exhibit 'D' submitted by the government and emphasized as "one crucial document" is the focal point of the cover up of its unlawful conduct. It did not submit the first, preceding letter retrieved from them. APPENDIX 'R'. Their motive is evident from the date of the translation of their exhibit. They knew on September 16, 2005, an export license was issued. It was done in preparation of the original intent to use this bogus indictment as a ruse to fabricate an offense in San Diego. This is criminal misconduct.

- 18 -

It has not submitted its instructions to fabricate these document(s). (FOIA DOJ 07-2423 (Appeal 08-363) DHS 07OIA53208 (Appeal 08-034). The second revised document submitted is crystal clear to deliver Durrani to Mexico City International airport. The U.S. government purchased the airline ticket, prior to the issuance of this letter. The government has lost all creditability. It has lied to this court. It has lied to the appellate court. It needs to come clean. The chronology and the documents affirm this conclusion

It is by intent to deceive the court(s). It cites in its defense, <u>United States v. Alvarez-Machain,</u> 504 U.S. 655 (1992), and <u>United States v. Matta-Ballesteros,</u> 71 F.3d 754, 761-62, 764-65 (9th Cir. 1996). Apparently, implying and suggesting the government actually kidnapped and or abducted Durrani. Assuming, this is to be the government's justification for its contention. The only other contention would be that Durrani, was extradited from Mexico. Both these assertions fail. However, phrased. There was no probable cause to arrest a known innocent person. It is a violation of the Fourth Amendment. It does not permit any search or seizure, nor unlawfully kidnap or extradite Durrani from his legal residence. These actions were bilateral, violating laws of three different countries.

Then, the inquiry must turn to the motive for the unlawful arrest in Mexico. From the chronology of the events the only inference that can be made is that, the government brought Durrani, from Mexico, for other purposes.

1   It would be a fair conclusion to infer its objective was

2 to fabricate an offense in San Diego. The ICE investigation

3 reports assert exactly this conclusion. The Central District

4 District court is not the gateway to unlawfully arrest innocent

5 person(s) for a rouge AUSA in San Diego.

6   This court must take judicial notice of the untruthful

7 representations made by the government attorney.

8   With the analysis of ICE reports, Bates No. 645,

9 APPENDIX 'L', it further shows the duplicity and intentional

10 fabrication of investigation reports by ICE agent Brian

11 Bucaro/Clark Settles. AUSA William A. Crowfoot, was not even

12 assigned to this case. (07-50031, BAUS Footnote 4, Page 6) until

13 the initial apperance.

14   All instructions emanated from San Diego. The unlawful

15 pretextual arrest was for other purposes. The government's

16 objective was to gain access to Durrani's files, documents and

17 to seize his property, based upon this indictment. Hence, it was

18 used for other purposes. APPENDIX 'S'. Both, the government

19 attorney's knew, and continued to unlawfully hold Durrani, a

20 known innocent person, in violation of the Fourth Amendment.

21 APPENDIX 'T'. The SED's were in their possession since May 18,

22 1994.

23   FORGED ARREST WARRANT CREATED ON OCTOBER 27, 2005.

24   The arrest warrant lodged in this case on October, 27,

25 2005, after the dismissal of the indictment, did not exist until

26 October 27, 2005. It was forged to conceal the arrest in Mexico.

27

28

1    The only use that could be derived from this document is
2  to support the subsequent proceeding. The government's thought
3  process is flawed. It appears to argue its initial extradition
4  and or kidnapping of an innocent person from Mexico, can be
5  overcome by multiple prosecutions that can be derivative of the
6  initial "fruit of the poisonous tree" unlawful search or seizure
7  of person and property. There is no foundation for such conduct
8  in Statute or case law precedent.

9    The government forged arrest warrant was not presented
10 to this court. It was produced in the subsequent case in San
11 Diego. It was utilized to conceal its motive for the June 12,
12 2005, arrest in Mexico. Where there is motive, there is a
13 reason. Without the forgery, the government's arguments fail. It
14 argues for a free pass for this unlawful arrest, seizure, and
15 the creation of a probable cause from its unlawful arrest, for a
16 subsequent case in San Diego. It does not want this court's
17 scrutiny of its unlawful arrest and its use by the government.

18    Apparently, it rests its recommendation for a transfer
19 to take away the spotlight from how it gained Durrani presence.
20 Additionally, how it obtained the documents and property
21 utilizing this indcitment for its fabrication of the indictment
22 in San Diego.

23    RETURN OF PROPERTY TAKEN UPON DISMISSAL OF INDICTMENT

24    The property taken based upon this indictment must be
25 returned (USCA 07-55086). The U.S. district court in Connecticut
26 has already disavowed any responsibility for these actions or
27 taking away of the property. APPENDIX 'U'.

28

- 21 -

This court has an obligation to order return of all the property taken from an innocent person upon dismissal of this indictment to effectuate complete justice and final dismissal of the case.

### RULE 48(a) DISMISSAL WAS IN BAD FAITH

The record in this case reveals sufficient evidence to infer the government made the motion to dismiss the indictment in bad faith. The plan to dismiss the indictment on September 9, 2005, which was aborted and done on September 23, 2005, was collusion between the two government attorneys. APPENDIX 'V'. This court must protect Durrani's rights. The record exposes the true reason for dismissal was in derogation of Durrani's rights. The government attorney is under obligation to supply sufficient reasons.

### DURRANI HAS PROVIDED EVIDENCE OF THE GOVERNMENT'S ARREST AND EXTRADITION FROM MEXICO

The government attorney asserted on Page 7, that, "without supporting evidence, that he was extradited and/or kidnapped from Mexico by United States government".

Now, the government attorney has the document, APPENDIX 'W', showing Durrani was arrested in Mexico by U.S. Marshals, and extradited from Mexico. The government attorney is obligated to produce all of the documents concealed for the court to make its own determination of the veracity of the government's assertions. Mexico never expelled Durrani. The government used this indictment to conceal its unclean hands for the extradition on June 15, 2005, without probable cause. The San Diego, arrest is reflected in the U.S. Marshals document, APPENDIX 'X'.

- 22 -

1   The arrest for San Diego, was executed on June 15, 2005,

2 and by use of the forged arrest warrant from this case closed on

3 October 27, 2005, after this case was already dismissed with

4 prejudice on September 23, 2005. This case was used for other

5 purposes, by the government. This is not permitted by any

6 statute or precedent. This is criminal prosecutorial misconduct.

7   <u>THE COURT MUST ORDER AN INVESTIGATION AND REVIEW</u>

8   Durrani, had filed a complaint with the Inspector

9 General, Department of Justice, Pursuant to 28 U.S.C. §535(b),

10 and with the U.S. Attorney's Office. The complaint has been

11 forwarded to the FBI. Durrani, has reviewed all of the evidence,

12 and requests this court to order an investigation to preserve

13 judicial integrity of the court processes. APPENDIX 'Y'.

14   CONCLUSION

15   Durrani, has step by step, dismantled the veil of

16 deception by government attorneys. Although, numerous releveant

17 documents were reviewed and retrieved, a limited number have

18 been submitted as exhibits in support of the arguments.

19   For the foregoing reasons, Durrani, respectfully

20 requests that the Court construe this §2241 petition for a writ

21 of habeas corpus on its merits, amend and issue the proposed

22 release order enclosed. Alternatively, order an investigation of

23 the arrest in Mexico, and the full disclosure of the official

24 record to preserve Durrani's rights, and dispose of the writ as

25 law and justice require.

26

27

28

Respectfully submitted, on this 11th day of April, 2008.

Arif A. Durrani, Petitioner

AFFIDAVIT OF MAILING

Arif A. Durrani, hereby attests that pursuant to the rules of the U.S. District Court, the preceding motion was enclosed in an envelope, first class postage prepaid and addressed to:

Clerk of the Court
U.S. District Court
312 North Spring Street
Los Angeles, CA 90012

AUSA William A. Crowfoot
U.S. Attorneys Office
U.S. Courthouse
312 North Spring Street
Los Angeles, CA 90012

It is further attested that the envelope were deposited with the mail room at the Federal Correctional Complex on the 11th day of April, 2008.

Arif A. Durrani

/

//

1  Arif A. Durrani
   Reg. No. 09027-014
2  Federal Correctional Complex
   Victorville I
3  Adelanto, CA 92301

4

5

6

7

8                UNITED STATES DISTRICT COURT

9             CENTRAL DISTRICT OF CALIFORNIA

10  ARIF A. DURRANI,                    CASE No. CV-06-6281-PA

11          Petitioner,                 SUMMARY OF APPENDIX'S
                                        A THROUGH Z
12          v.                          FOR QUICK REFERENCE BY
                                        BY THE U.S. DISTRICT COURT
13  S.A. HOLENCIK,

14          Respondent.

15

16          Arif A. Durrani (Petitioner), hereby submits his

17  Appendix, A through Z, with the summary of the contents and in

18  support of his petition for quick reference by the U.S. District

19  Court.

20          Respectfully submitted, on this 11th day of April 2008.

21

22                        Arif A. Durrani
                              Petitioner
23

24

25

26

27

28

SUMMARY OF APPENDIX SUBMITTED

APPENDIX 'A'

Ninth Circuit Order, dated October 24, 2007. 1 page.

The Ninth Circuit will consider merits of the claim how a fraudulent indictment and unlawful arrest took place of an innocent person. The U.S. District Court must establish the record for appellate review for this claim.

APPENDIX 'B'

Report 018/AWB 3 pages.

The government agent and attorneys had these documents in their possession. They show the export license was issued before they obtained the indictment from the grand jury.

APPENDIX 'C'

INM # 4220/BATES 0167 June 14, at 5:00 P.M. 1 page.

This letter was concealed by the government. It was initially created upon instructions of the U.S. government agents from San Diego, seeking the cancellation of the immigration status. The court must take judicial notice that Mexico never intended to surrender Durrani to the U.S. Marshals agents in Mexico city.

APPENDIX 'D'

05CR1746-LAB(CR # 32) 9 pages.

The Mexican Immigration documents given to Durrani, are clear, the application for renewal was submitted. It should be noteworthy that, their is no allegation for denial of the renewal. All the relevant documents were correct and

/

/

- 2 -

conclusively contradict the false statements made by AUSA Crowfoot, on page 7, in his motion requesting to Transfer or Dismiss Defendants Petition. This court should take judicial notice of these false statements made to it during the course of this case. (Transcripts ordered but not delivered). The conduct of the government attorney must be referred to the office of the Inspector General, Department of Justice, for investigation and criminal misconduct and prosecution. It is clear and undisputed fact, that based on the Mexican government documents, which are countersigned, translated and provided to the court(s) show, the documents submitted by the government attorneys, are in fact, false. The government of Mexico, in a normal court proceeding, which is required, could have contested the renewal. It did not. It could have made a judicial determination not to renew them. It is evident that it could not contest it because every single requirement was met. These renewal were done on a yearly basis for the past (7) seven years. Therefore, the question of legal status, could never have been an issue. It was not an issue in 2005, either. Until the U.S. government agents prompted to cause its cancellation. They caused fraudulent documentation to be created. They engaged in willful criminal conduct.

There should be no doubt by this court, as a fact finder, the government has engaged in criminal conduct. The example is within this court. It had to dismiss this indictment because, no offense was ever committed. It took over a decade to ferret out criminal conduct by the government attorneys and agents in this district.

/

- 3 -

## APPENDIX 'E'

INM # 5530 June 14, 2005, 9:00 P.M./Airline tickets, 3 pages.

The arrest took place in Mexico of an inncocent person. Durrani was brought to this district. He was unlawfully held to allow the AUSA in San Diego, to fabricate another fraudulent offense.

## APPENDIX 'F'

The U.S. Marshals documents retrieved from AUSA William P. Cole, CASD, 2 pages.

The documents confirm the arrest was in Mexico of an innocent person on June 12, 2005, upon the instructions of AUSA William P. Cole.

## APPENDIX 'G'

The October 27, 2005, forged arrest warrant. 1 page.

The forgery was made by ICE agents on October 27, 2005. This document was taken from U.S. Marshals on October 27, 2005. It was stamped with the ICE arrest validation stamp to create this forgery. This is the reason the U.S. Marshals do not have their copy in their files.

## APPENDIX 'H'

The U.S. Marshal document # 3. 1 page.

This document confirms the arrest was in Mexico. It was upon U.S. government attorney and agents instructions.

/

//

//

//

- 4 -

APPENDIX 'I'

05CR1746-LAB, Bail Hearing in the Central District, 17 pages.

The government statements clearly set forth the real objective of the its agents and the attorneys. It made the arrest in Mexico for San Diego, on June 12, 2005. It used the indictment CR99-470-PA, from this district to unlawfully hold Durrani. Its undisputed objective was to fabricate an indictment in San Diego. AUSA William Crowfoot's own addmission that the arrest on June 12, 2005, was made, when there was no probable cause for the arrest(s), for CR99-470-PA, the fraudulent indictment, and most certainly, 05CR1746-LAB, which did not even exist on June 12, 2005.

It is undisputed, Durrani was arrested without probable cause. The probable cause was manufactured after the arrest of a known innocent person.

It confirms the arrest was in Mexico. The arrest warrant was lodged on October 27, 2005. It was a forgery created upon instructions of AUSA William P. Cole.

APPENDIX 'J'

The U.S. Marshals document, showing the location of arrest, Mexico. 09/28/05, 2 pages.

This document again provides confirmation the arrest was in Mexico.

APPENDIX 'K'

The Civil FOIA lawsuit, 08-CV-00609, 7 pages.

The filed copy of the civil lawsuit filed to officially recover the documents showing fraud by the U.S. attorney upon

Durrani and the courts.

## APPENDIX 'L'

Arrest Report # 018/San Digeo/ICE, 3 Pages.

The fabricated false investigation report by ICE agents Brain Bucaro/Clark Settles, that was concealed by the government attorney.

## APPENDIX 'M'

ICE Report, Brian Bucaro, 06/15/05 at 2007 P.M., 5 Pages.

The admission that the arrest was in Mexico on June 12, 2005. It was for San Diego. The fraudulent indictment CR99-470-PA, was a ruse to make the arrest and fabricate the charges in San Diego. The unlawful arrest, and to bring Durrani to the U.S. from Mexico. There was no layover nor any expulsion by Mexico.

## APPENDIX 'N'

The CJA attorney, Sylvia Torres-Guillen's, notes, Re: AUSA Cole 7/14, 8/9, 8/15, 8/19/05. 3 pages.

The notes of Durrani's attorney to confirm that, AUSA William P. Cole, was busy fabricating the charges in San Diego, from the unlawful seizure of person and property. The use of CR99-470-PA was for other purposes.

## APPENDIX 'O'

The Ex-Parte Application, Rule 48(a), 5 pages.

The bad faith ex-parte application, with false statements. Durrani, was not barred. See, Bates # 0246, 0247 and 0248. Furthermore, the conviction in 1987 is barred by statute. See, 5:86-cr-0059-1(SRU) and 3:07-CV-1196(SRU), APPENDIX 'Z'. 28 U.S.C. §2241, Durrani v. Holencik. Acceptance of the writ by the

1  district court because the Petition cannot be transferred.

2  Further, This Petition is based on actual undisputed innocence.

3  It must be adjudicated in this district.

APPENDIX 'P'

5      The PROPOSED ORDER, 2 pages.

6      The Proposed order seeking correction and certificate of

7  innocence. No offense was committed by Durrani. The order must

8  reflect actual innocence.

APPENDIX 'Q'

10     The U.S. Marshals document, 09/06/07. Arrest in Mexico.

11  1 page.

12     The arrest took place in Mexico. The arrest warrant

13  lodged on October 27, 2005, in CR99-470-PA, is a forgery to

14  cover up the actual arrest in Mexico on June 12, 2005.

APPENDIX 'R'

16     NIM Mexico, translated letter # 4220, dated 06/14/05. 1

17  page.

18     This letter did not suffice to make the unlawful arrest

19  in Mexico city. It was withheld by the government. A new letter

20  was created and referred by AUSA Crowfoot, as "one very

21  important document". See, APPENDIX 'I', page 11, line 23 - 25

22  and page 12, line 1 - 3. The parroting of Alvarez-Machain, page

23  12, line 4 - 9, does not permit extradition nor kidnapping of

24  innocent person(s) by fabricating fraudulent indictment(s). Most

25  importantly, if Durrami was expelled from Mexico, the government

26  attorney must explain, why did the U.S. government (AUSA William

27  P. Cole) send three U.S. Marshal's to arrest Durrani in Mexico?

28  The answer cannot be other than that, all the documents are

- 7 -

false, they were specifically created upon the instructions of the U.S. government agents, to unlawfully violate laws of three different countries. This is prosecutorial criminal misconduct. They must be prosecuted.

## APPENDIX 'S'

05CR1746 (CR # 29) Governments Response for Motion to Dismiss. 20 pages.

The motive for the unlawful arrest in <u>Mexico</u>. It was quite clear the governemnt reliance on CR99-470-PA, to make an unlawful arrest first, and then to, fabricate a probable cause. This is use for other purposes.

## APPENDIX 'T'

The subpoena for Circle International documents/Crowfoot letters to State Dept. 4 pages.

It is apparent the government attorney and the agent do not have any knowledge about FMS export procedures. It should be obvious to them an export license was issued. They had the copy of the export license. No offense was ever committed.

## APPENDIX 'U'

The U.S. District Court Order. Case Closed. 1 page.

This is an honest District Court Judge. He unfortunately inherited this case. He is required to adjudicate it on its merits. He is not oblivious to criminal prosecutorial misconduct by government attorney's from this district. He declined to accept any responsibility for seizure of property on account of this closed case utilizing CR99-470-PA. This District Court should make its own judicial inquiry, and come to the same conclusion to prevent itself being used for prosecutorial

criminal misconduct. This District Court has and is currently withholding property required for this case. (USCA 07-50031) The property should have been returned in compliance with the clear Ninth Circuit, Court of Appeals, precedent in United States v.Martinson., 809 F.2d. 1364 (9th Cir. 1987). The government must keep proper records and provide notice prior to any destruction of property. United States v. Cardona-Sandoval, 518 F.3d 13, (1st Cir. 2008).

APPENDIX 'V'

05CR1746-LAB (CR # 7) ICE Report. 3 pages.

The first attempt to dismiss the case was on September 9, 2005. It states the arrest date of September 9, 2005. It is exactly as stated during the course of the CR99-470-PA, court proceedings. (transcripts ordered but not delivered). It would be fair to infer, the agents and the government attorneys have always known, an export license was issued and in their possession from May 1994.

APPENDIX 'W'

The U.S. Marshals document. Location of arrest in Mexico. 1 page.

It clearly, sets forth the arrest was in Mexico, upon the U.S. government agents instructions. The fraudulent documents to cover up the unlawful arrest and to bring Durrani to the U.S. based upon CR99-470-PA, which is a fraudulent indictment.

//

//

//

- 9 -

APPENDIX 'X'

The U.S. Marshal document. 06/15/05 arrest in Mexico. 1 page.

It confirms the unlawful arrest in Mexico.

APPENDIX 'Y'

The Inspector General's letter for investigation to FBI. 1 page.

The district court should refer this case to the FBI for investigation for the criminal misconduct by the U.S. attorneys and the ICE agents.

APPENDIX 'Z'

The U.S. District Court, Connecticut, documents to confirm a 28 U.S.C. §2241, is cognizable for a claim of actual innocence for which it has jurisdiction.

This District Court has jurisdiction for the 28 U.S.C. §2241 Petition. It must grant the correction of the Release Order 6270, and return all the unlawfully seized property. It must bar any derivative use of the unlawfully seized property. If destroyed or unavailable, to order payment for the replacement to effectuate complete justice.

//
//
//
//
//
//
//
//

- 10 -

APPENDIX A

**FILED**

OCT 24 2007

CATHY A. CATTERSON, CLERK
U.S. COURT OF APPEALS

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

    v.

ARIF ALI DURRANI,

      Defendant - Appellant.

No. 07-50031

D.C. No. CR-99-00470-PA
Central District of California,
Los Angeles

ORDER

Before: Peter L. Shaw, Appellate Commissioner.

    Appellant's motion entitled "obligation to affirm or deny unlawful act(s)" is denied.

    Appellant's "supplement to submit documents to confirm kidnapping by government was based upon a fraudulent indictment" is referred to the panel assigned to consider the merits of this appeal.

    The answering brief remains due October 29, 2007. Appellant's optional reply brief is due within 14 days after service of the answering brief.

*Peter L. Shaw*
General Order 6.3(e)

S:\MOATT\Cmshords\10-07\lc\07-50031.wpd

APPENDIX B

REQUESTED BY GIBSON, DESMOND

O F F I C I A L   U S E   O N L Y

| DEPARTMENT OF HOMELAND SECURITY<br>ICE<br><br>R E P O R T   O F   I N V E S T I G A T I O N | 1. ▓▓▓▓▓▓▓▓▓▓ |
|---|---|
| | 2. PAGE    1 |
| | 3. ▓▓▓▓▓▓▓▓▓▓ |

4. TITLE: ARIF A. DURRANI DBA LONESTAR

5. CASE STATUS:    INTERIM RPT

| 6. REPORT DATE<br>051099 | 7. DATE ASSIGNED<br>050593 | 8. ▓▓▓ | 9. ▓▓▓ | 10. REPORT NO.<br>018 |
|---|---|---|---|---|

11. RELATED CASE NUMBERS: ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

12. COLLATERAL REQ:

13. TYPE OF REPORT:
    INVESTIGATIVE FINDINGS

TOPIC: SEALED INDICTMENT NAMING DURRANI FOR UNLICENSED EXPORTS TO JORDAN

14. SYNOPSIS:
    The Resident Agent in Charge, Oxnard, California is investigating alleged illegal exports by Arif A. Durrani, doing business as Lonestar Aerospace, Inc. The investigation was initiated in May, 1993, based upon allegations that Durrani was seeking to purchase defense articles for export, despite being ineligible to obtain export licenses from the US Department of State, Office of Defense Trade Controls.

    On 07MAY99, Arif Durrani was indicted, under seal, in the Central District of California for two counts of violating 22USC2778(b)(2), exporting ITAR controlled items without having first obtained an export license, for two unlicensed exports of General Electric J85 military jet aircraft engine compressor blades to the Royal Jordanian Air Force. On 07MAY99, RAIC/Oxnard Senior Special Agent E. Wayne Kempton testified to the Grand Jury for the Central District of California regarding the above. The investigation continues at the direction of the US Attorney.

| 15. DISTRIBUTION:<br>▓▓▓▓▓▓▓▓ | 16. SIGNATURE: _____<br>KEMPTON        ERNEST    W  SENIOR SPEC AGENT |
|---|---|
| | 17. APPROVED: _____<br>BAIRD        PAMELA    J  RAC - RES. AGENT IN C |
| | 18. ORIGIN OFFICE: OX<br>OXNARD - RAC | 19. TELEPHONE: 805 988 8690 |
| | | 20. TYPIST: KEMPTON |

O F F I C I A L   U S E   O N L Y

THIS DOCUMENT IS LOANED TO YOU FOR OFFICIAL USE ONLY AND REMAINS THE PROPERTY OF THE DEPARTMENT OF HOMELAND SECURITY, ICE. ANY FURTHER REQUEST FOR DISCLOSURE OF THIS DOCUMENT OR INFORMATION CONTAINED HEREIN SHOULD BE REFERRED TO ICE HEADQUARTERS TOGETHER WITH A COPY OF THE DOCUMENT.



LONESTAR AEROSPACE INC.
HANGAR ONE CAMARILLO AIRPORT
CAMARILLO , CALIFORNIA 93010
U.S.A.

**Air Waybill**

Issued by    **ALIA-ROYAL JORDANIAN**

Copies 1, 2 and 3 of this Air Waybill are originals and have the same validity.

Consignor's Name and Address    Consignee's Account Number

CENTRAL BANK OF JORDAN, AMMAN
FOR ACCOUNT OF THE BUYERS
H.Q. ROYAL JORDANIAN AIR FORCE
(FREIGHT PAYABLE AT DESTINATION)

It is agreed that the goods described herein are accepted in apparent good order and condition (except as noted) for carriage SUBJECT TO THE CONDITIONS OF CONTRACT ON THE REVERSE HEREOF. ALL GOODS MAY BE CARRIED BY ANY OTHER MEANS INCLUDING ROAD OR ANY OTHER CARRIER UNLESS SPECIFIC CONTRARY INSTRUCTIONS ARE GIVEN HEREON BY THE SHIPPER. THE SHIPPER'S ATTENTION IS DRAWN TO THE NOTICE CONCERNING CARRIER'S LIMITATION OF LIABILITY. Shipper may increase such limitation of liability by declaring a higher value for carriage and paying a supplemental charge if required.

Issuing Carrier's Agent Name and City
CIRCLE INTERNATIONAL, INC.
LINTHICUM, MARYLAND, U.S.A.
REF# 613014200

Accounting Information
FREIGHT TO BE EFFECTED BY OPENERS OF THE
CREDIT SHIPPING AGENTS M/S CIRCLE INTERNATIO
INC 810-R OREGON, LINTHICUM MD 21090, U.S.A

Agent's IATA Code    05.6.8317/013    Account No.

Airport of Departure (Addr. of first Carrier) and requested Routing
NEW YORK A/P

| To | By First Carrier ROYAL JORDANIAN | To | by | To | by | Currency | Code | | | | Declared Value for Carriage | Declared Value for Customs |
|----|----|----|----|----|----|----|----|----|----|----|----|----|
| AMN | | | | | | | XX | | XX | | | $ 16,605.00 |

Airport of Destination    Flight/Date    Flight/Date    Amount of Insurance
Q.A.T. A/P AMMAN JORDAN RJ 092/18

INSURANCE - If carrier offers insurance and such insurance is requested in accordance with conditions on reverse hereof indicate amount to be insured in figures in box marked. Amount of Insurance

Handling Information
RJAF/TP/AC/J85/94/1/L/1549        CJ0999

JORDAN        Diversion contrary to U.S. law prohibited.

These commodities licensed by the U.S. for ultimate destination

| No of Pieces RCP | Gross Weight | kg lb | Rate Class Commodity Item No. | Chargeable Weight | Rate Charge | Total | Nature and Quantity of Goods (incl. Dimensions or Volume) |
|----|----|----|----|----|----|----|----|
| 2 | 5.5 | K | GCR | 14.5K | 9.94 | $ 114.13 | "J85 ENGINE PARTS" AS PER ATTACHED LETTER NO. RJAF/TP/AC/J85/94/1/L/1549 |
| | | | | | | | DATED APRIL 4, 1994. DIMS: 18x12x12 IN X 2 |

CENTRAL BANK OF JORDAN L/C NO. 204/94 DATED APR 13 1994.
ARAB BANK PLC ADVICE NO. 94/20622 DATED APRIL 21, 1994.

APPROVED

| | | $ 114.13 |

| 2. | 5.5 K |

| Prepaid | Weight Charge | Collect 114.13 | Other Charges |
|----|----|----|----|

| Valuation Charge |

| Tax |

| Total Other Charges Due Agent |

| Total Other Charges Due Carrier |

Shipper certifies that the particulars on the face hereof are correct and that insofar as any part of the consignment contains dangerous goods such part is properly described by name and is in proper condition for carriage by air according to the applicable Dangerous Goods Regulations.

LONESTAR AEROSPACE, INC. *M.K. Varghese*

M.K. VARGHESE/AGENT    Signature of Shipper or his Agent

| Total Prepaid | Total Collect 114.13 |

18 MAY 1994 BALTIMORE, MD. *M.K. Varghese*

| Currency Conversion Rates | CC Charges in Dest. Currency |

Executed on (date) at (place) Signature of Issuing Carrier or its Agent

| For Carrier's Use only at Destination | Charges at Destination |
|----|----|
| | Total Collect Charges |

AS AGENT FOR ALIA-ROYAL JORDANIAN AIRLINES

APPERSON BUSINESS FORMS, INC. H-5694 (12/93)    ORIGINAL 3 (FOR SHIPPER)

**Air Waybill**

Shipper's Name and Address

LONESTAR AEROSPACE, INC
HANGAR ONE CAMARILLO AIRPORT
CAMARILLO CALIFORNIA 93010
U.S.A.

Not Negotiable

Issued by   ALIA-ROYAL JORDANIAN

Copies 1, 2 and 3 of this Air Waybill are originals and have the same validity.

Consignee's Name and Address

CENTRAL BANK OF JORDAN, AMMAN
FOR ACCOUNT OF THE BUYERS
H.Q. ROYAL JORDANIAN AIR FORCE
(FREIGHT PAYABLE AT DESTINATION)

Issuing Carrier's Agent Name and City

CIRCLE INTERNATIONAL, INC.
LINTHICUM, MARYLAND, U.S.A.
REF# 613014200

Accounting Information

FREIGHT TO BE EFFECTED BY OPENERS OF THE
CREDIT SHIPPING AGENTS M/S CIRCLE INTERNATION
INC 810-R OREGON, LINTHICUM MD 21090, U.S.A.

Agent's IATA Code    Account No.

05 6 8517/013

Airport of Departure (Addr. of first Carrier) and requested Routing

NEW YORK A/P

To  By First Carrier    To  by  To  by  Currency  Declared Value for Carriage  Declared Value for Customs

AMM  ROYAL JORDANIAN              $ 1,318.00

Airport of Destination  Flight/Date  Flight/Date  Amount of Insurance

O.A.T A/P AMMAN JORDAN RJ 092/18

Handling Information

RJAF/TP/94/J85/4/1662      LOT NO. CJ1004   TAG NO. 613014266

Diversion contrary to U.S. law prohibited.

Those commodities licensed by the U.S. for ultimate destination   JORDAN

| No. of Pieces RCP | Gross Weight | Rate Class / Commodity Item No. | Chargeable Weight | Rate / Charge | Total | Nature and Quantity of Goods (Incl. Dimensions or Volume) |
|---|---|---|---|---|---|---|
| 4 | 10 K | GCR | 22.5K | 9.94 | $223.65 | "JS5 ENGINE PARTS" AS PER ATTACHED LETTER RJAF/TP/94/J85/4/1662 DATED APRIL 10, 1994. |
| | | | | | | DIMS:17X11X11 IN X 4 |

CENTRAL BANK OF JORDAN L/C NO. 231/94 DATED APR 26 1994
ARAB BANK PLC ADVICE NO. 94/20593 DATED MAY 4, 1994.

$223.65

Prepaid  Weight Charge  Collect    Other Charges

Valuation Charge   223.65

Tax

Total Other Charges Due Agent

Total Other Charges Due Carrier

Shipper certifies that the particulars on the face hereof are correct and that insofar as any part of the consignment contains dangerous goods, such part is properly described by name and is in proper condition for carriage by air according to the applicable Dangerous Goods Regulations.

LONESTAR AEROSPACE, INC  _M.K. Varghese_

Total Prepaid  Total Collect

M.K. VARGHESE/AGENT

Currency Conversion Rates  CC Charges in Dest. Currency

18 MAY 1994  BALTIMORE  MD  _M.K. Varghese_

For Carriers Use only at Destination  Charges at Destination  Total Collect Charges

AS AGENT FOR ALIA-ROYAL JORDANIAN AIRLINES

APPERSON BUSINESS FORMS, INC. H-6684 (12/93)    COPY 9 (FOR AGENT)

APPENDIX C



SECRETARIA DE GOBERNACION
INSTITUTO NACIONAL DE MIGRACION

INSTITUTO NACIONAL DE MIGRACION
COORDINACION DE CONTROL Y
VERIFICACION MIGRATORIA

N° OFICIO           4220

ASUNTO: OFICIO DE COMISION

México D.F., a 14 de Junio de 2005

AGENTE FEDERAL DE MIGRACION
N° EMPLEADO

AGENTE FEDERAL DE MIGRACION
N° EMPLEADO

ME PERMITO INFORMAR A USTED(ES) QUE HA(N) SIDO DESIGNADO(S) PARA RELIZAR LA COMISION QUE SE DETALLA:

LUGAR:      México, D.F.  Miami, Florida, E.U.  Londres, Inglaterra  Miami, Florida, E.U.  México, D.F.

PERIODO:    DEL 15 AL 17 DE JUNIO DE 2005

OBJETIVO:   SE REALIZARA TRASLADO, CUSTODIA Y EXPULSION DEL EXTRANJERO ARIF ALI DURRANI, DE NACIONALIDAD PAKISTANI.

POR LO ANTERIOR, DEBERAN TRAMITAR ANTE EL COORDINADOR ADMINISTRATIVO LOS VIATICOS Y PASAJES INTERNACIONALES CORRESPONDIENTES, LOS CUALES SE OTORGARAN CON CARGO AL PRESUPUESTO DE LA UNIDAD ADMINISTRATIVA, CON RELACION AL PROYECTO PO55 DENOMINADO DOCUMENTAR Y REGULAR LA ENTRADA, ESTANCIA Y SALIDA DE EXTRANJEROS.

NO OMITO MENCIONAR, EL COMPROMISO Y OBLIGACION DE EFECTUAR LA COMPROBACION DE LOS RECURSOS RECIBIDOS A MAS TARDAR TRES DIAS HABILES POSTERIORES A LA TERMINACION DE LA COMISION.

A T E N T A M E N T E
EL DIRECTOR

LIC. HECTOR EDUARDO ZELONKA VALDES



0167

APPENDIX D

1  MOHAMMAD "MOE" NADIM
   Attorney at Law
2  Bar # 129366
   1541 Ocean Avenue, Suite 200
3  Santa Monica, California 90401-2104
   (310) 458-7230
4  Fax (310)917-9221

5  Attorney for Defendant, Durrani

6

7

8                  UNITED STATES DISTRICT COURT

9           FOR THE SOUTHERN DISTRICT OF CALIFORNIA

10

11  UNITED STATES OF AMERICA,          )   CASE NO.: 05 CR-1746-LAB
                                       )
12              Plaintiff,             )   DEFENDANT'S REPLY TO
                                       )   GOVERNMENT'S OPPOSITION TO
13                                     )   MOTIONS TO:
                                       )
14                                     )   1. DISMISS INDICTMENT;
                                       )   2. SUPPRESS EVIDENCE ILLEGALLY
15                                     )      SEIZED;
                                       )   3. PRODUCE GRAND JURY
16           vs.                       )      TRANSCRIPTS;
                                       )   4. TO PRODUCE DOCUMENTS.
17                                     )
                                       )
18  ARIF DURRANI,                      )
                                       )
19              Defendants.            )
                                       )   Date: November 29, 2005
20                                     )   Time: 4:00 p.m.
                                       )   Courtroom: "9"
21  _____   )

22                                         Honorable: Larry Alan Burn, Judge

23  TO UNITED STATES ATTORNEY AND WILLIAM P. COLE ITS DESIGNATED

24  ATTORNEY:

25          DEFENDANT Arif Durrani, by and through his attorney of record, hereby submits the

26  following reply to Government's 'combined' and improper opposition and response to Defendant's

27  four motions.

28          Since this reply is being done before a 4 day weekend holiday (Thanksgiving), Defendant

_____
                        1



INSTITUTO NACIONAL DE MIGRACIÓN
SUBDELEGACIÓN LOCAL DEL I.N.M.
EN ROSARITO, B.C.
OFICIO No. 650/INMR/2004
EXP. 2334/IN/2000

SECRETARIA DE GOBERNACION
INSTITUTO NACIONAL DE MIGRACION

PLAYAS DE ROSARITO B.C. 30 DE ABRIL DEL 2004.

*SR. (A) DURRANI ARIF ALI*
NACIONALIDAD. PAKISTANI
CARR. TIJ-EDA. KM. 53.5
MEDIO CAMINO
PLAYAS DE ROSARITO, B.C.

Con fundamento en los artículos 55 y 57 fracción IV del reglamento interior de la Secretaria de Gobernación; por el articulo 6 apartado A inciso b) punto 4. del Acuerdo por lo que se delegan facultades para autorizar tramites migratorios y ejercer diversas atribuciones previstas en la ley general de población y su reglamento en favor del Delegado Regional del I.N.M. en B.C., Subdelegado Regional, Delegados Locales, Subdelegados Locales y Jefe del Departamento de Regulación Migratoria, en el ámbito territorial de su competencia, publicado en el diario oficial de Federación el 11 de diciembre de 2000; y de conformidad con los artículos 42, fracción III de la Ley General de Población, 159 y 162 fracción II de su Reglamento, y sin perjuicio de cumplir con las demás disposiciones aplicables, **se le autoriza prorroga**, en los siguientes términos:

F.M.3. NUMERO:                                     1417946

CALIDAD Y CARACTERÍSTICA           NO INMIGRANTE – ACTIVIDAD LUCRATIVA
MIGRATORIA:

NUMERO DE PRORROGA:                      PRIMERA PRORROGA

TEMPORALIDAD:                                    365 DÍAS, A PARTIR DEL 26 DE ABRIL DEL 2004 Y
                                                               CONCLUYE EL 25 DE ABRIL 2005.

ACTIVIDAD AUTORIZADA:                     PARA QUE SE DESEMPEÑE COMO ADMINISTRADOR UNICO
                                                               DE AEROSPACE LOGISTICS SERVICES S.A. DE C.V. Y
                                                               COASTAL CITIES DE MEXICO S.A. DE C.V..

DERECHOS PAGADOS:                          POR LA CANTIDAD DE $ 1686.00 EN EL BANCO SERFIN
                                                               EL DIA 21 DE ABRIL DEL 2004.

FUNDAMENTO:                                      ART. 8VO FRACC. II INCISO B. DE LA LEY GENERAL DE
                                                               DERECHOS FISCALES.

ANEXO:                                                 SE DEVUELVE LA FM3 MENCIONADA CON LA ANOTACIÓN
                                                               RESPECTIVA

Una nueva prorroga a su FM3, deberá solicitarse dentro de los treinta dias anteriores al vencimiento de la que aquí se autoriza, si usted la solicita despues de la fecha de vencimiento será acreedor a una sanción.

A T E N T A M E N T E
SUFRAGIO EFECTIVO. NO-REELECCIÓN
EL SUBDELEGADO LOCAL DEL I.N.M. EN ROSARITO

LIC. DAVID LIMON GRIJALVA.

EXHIBIT "B"

06-15-05.   17:33   De-                                    T-333  P 003  F-333

ACTA ADMINISTRATIVA
SLM/534/05



En el Municipio de Tijuana, Baja California, siendo las diecisiete horas con treinta minutos del día doce de junio del dos mil cinco, presentas en las instalaciones que ocupa la Subdelegación Local del Instituto Nacional de Migración en el Aeropuerto Internacional de Tijuana, Baja California, ante el **LIC. REYNALDO TOMÁS ROJO MENDOZA**, Encargado de Despacho de la Subdirección de Control Migratorio del Instituto Nacional de Migración en Baja California y como testigos de asistencia los CC. Sergio Rábago Espinoza y Héctor Garnica Ortega, se procede a levantar la presente acta ante la comparecencia de quien dice llamarse **ARFI ALI DURRANI**, de nacionalidad **PAKISTANI**, quien no habla el idioma español, por lo que se designa como traductor a la Lic. Katia Romero Equia, quien en este acto se identifica con Credencial de Elector, expedida a su favor por el Instituto Federal Electoral; y acepta el cargo conferido, protestando desempeñarlo fielmente, a quien se le instruye de que apercibe al extranjero de las penas contempladas en artículo 247 del Código Penal Federal, relativas a las penas en que incurren los que se conducen con falsedad ante autoridad distinta de la judicial; así mismo se le hace saber al extranjero que tiene derecho de nombrar a una persona de su confianza para que este presente o lo asista, manifestando que se reserva dicho derecho y que con relación a los hechos manifiestan.-----------------------------------------------------------------

El extranjero compareciente manifestó bajo protesta de decir verdad llamarse como quedó escrito, ser originario de Pakistán, haber nacido el 14 de agosto de 1949, tener 55 años de edad, estado civil casado, instrucción universitaria, ocupación comerciante, domicilio en Playas de Rosarito, baja California, quien en este momento no cuenta con identificación alguna.---------
----------------------------------- C O N S T A N C I A -------------------------------------
Se hace constar que con fecha 26 de enero del presente año, se realizó una verificación migratoria en los domicilios de las empresas denominadas "AEROSPACE LOGISTICS SERVICES" y "COASTAL CITIES INVESTMENTS LLC DE MÉXICO", arrojando como resultado que ninguna de las dos empresas se encontraba en funcionamiento o en operación; asimismo se hace constar que con fecha 9 de junio del 2005, la Lic. Juana Iveth Baltazar Quintana, Jefa del Departamento de Regulación Migratoria en B.C., informó a la Subdirección de Control Migratorio mediante oficio número 49/INMP/2005, de la solicitud de trámite migratorio que señor ARIF ALI DURRANI de nacionalidad PAKISTANI, promovió a fin de obtener su segunda prórroga, para seguir desempeñándose como administrador único de las empresas "AEROSPACE LOGISTICS SERVICES" y "COASTAL CITIES INVESTMENTS LLC DE MÉXICO", en virtud de lo cual se ordenó la localización y comparecencia del citado extranjero mediante oficios número **SDCM/972/05** y **SDCM/973/05**---------------------------------------------------------------------------------

Con relación a los hechos que nos ocupa el compareciente manifiesta: Que llevo viviendo legalmente en México los pasados seis años, en Playas de Rosarito, Baja California, con documento migratorio FM-3 1417946 autorizado como administrador único de las empresas "AEROSPACE LOGISTICS SERVICES" y "COASTAL CITIES INVESTMENTS LLC DE MÉXICO", que recientemente cambie sus domicilios y que los di en el expediente de trámite que realice para obtener mi prórroga para continuar desempeñándome como administrador de dichas empresas. Siendo todo lo que tengo que manifestar.-----------------------------------

Una vez escuchadas las manifestaciones de la extranjero compareciente ARFI ALI DURRANI, de nacionalidad **PAKISTANI** ;----------------------------------------------------------------------

------------------------------------ C O N S I D E R A N D O: ----------------------------------

**PRIMERO:** El extranjero compareciente fue puesto a disposición de la Subdirección de Control Migratorio, con fecha 10 de junio del 2005, en cumplimiento a las órdenes de localización y comparecencia giradas mediante oficios SDCM/972/05 y SDCM/973/05 --------------------------

**SEGUNDO:** Toda vez que el extranjero compareciente cuenta con documento FM-3 1417946, en el cual se encuentra autorizado para desempeñarse como administrador único de las

Pag. 2
SLM/534/05



empresas "AEROSPACE LOGISTICS SERVICES" Y "COASTAL CITIES INVESTMENTS LLC DE MÉXICO", las cuales según actas circunstanciadas números 76/05 y 77/05 no se encuentran en funcionamiento ni operación.------------------------------------------------

TERCERO: Toda vez que el extranjero compareciente  promovió trámite migratorio a fin de obtener su segunda prórroga, para seguir desempeñándose como administrador único de las empresas "AEROSPACE LOGISTICS SERVICES" Y "COASTAL CITIES INVESTMENTS LLC DE MÉXICO", mismas que no se encuentran en funcionamiento ni operación.-------------------

En virtud de lo anterior el suscrito con la personalidad acreditada----------------------------

------------------------------------------ RESUELVE ---------------------------------------------

UNICO: Póngase a disposición del Titular de la Coordinación de Control y Verificación Migratorias del Instituto Nacional de Migración, al extranjero ARFI ALI DURRANI, de nacionalidad PAKISTANÍ a efecto de que sea resuelta su situación migratoria y para ello trasládesele a la Estación Migratoria de Iztapalapa, México, Distrito Federal; lo anterior en los términos del artículos 1, 7, 64, 119, 121, 125, 128 de la Ley General de Población, 106 fracción III, 111, 114 y 199 de su Reglamento  artículo 57 fracción IX y XIX del Reglamento Interior de la Secretaría de Gobernación y de conformidad con el Acuerdo Delegatorio de Facultades para autorizar trámites migratorios y ejercer diversas atribuciones previstas en la Ley General de Población y su Reglamento a favor de Delegado Regional del Instituto Nacional de Migración en el Estado de Baja California, así como del Subdelegado Regional, Subdirector de Regulación Migratoria, Subdirector de Control migratorio, Delegados Locales, Subdelegados Locales, Jefe del Departamento de Regulación Migratoria, Jefe del Departamento de Asuntos Jurídicos y Jefe del Departamento de Control Migratorio y Asuntos Jurídicos, en el ámbito territorial de su competencia; publicado en el diario oficial de la federación el día 11 de diciembre del 2000, en el Artículo 5°, Fracción II, Inciso B, Numeral 29. ----------------------------------------------------

Se cierra la presente acta a las trece horas  de día de su inicio, firmando a  margen y al calce los que en ella intervinieron.------------------------------------------------------------------------

ENCARGADO DE DESPACHO DE LA
SUBDIRECCIÓN DE CONTROL
MIGRATORIO DEL INM EN B.C.

LIC. REYNALDO TOMAS ROJO MENDOZA

EL EXTRANJERO COMPARECIENTE

ARFI ALI DURRANI

TRADUCTOR

LIC. KATIA ROMERO EQUIZ

TESTIGOS DE ASISTENCIA

C. HECTOR GARNICA ORTEGA

C. SERGIO RÁBAGO ESPINOZA



SECRETARÍA DE GOBERNACIÓN
INSTITUTO NACIONAL DE MIGRACION.
DELEGACION REGIONAL DEL INM EN B.C.
SUBDIRECCION DE CONTROL MIGRATORIO

No. DE OFICIO SDCM/ 972 /05

ASUNTO: ORDEN DE COMPARECENCIA.

Tijuana, B. C., a 10 de Junio del 2005

SR. ARIF ALI DURRANI
NACIONALIDAD: PAKISTANI
P R E S E N T E

Con fundamento en lo dispuesto en los Artículos 11, 14 y 16 de la Constitución de los Estados Unidos Mexicanos, Artículo 7 Fracción III, 64, 65, 151 fracciones I y II y 154 de la Ley General de Población, 140, 141 y 197 de su Reglamento, 16 fracciones I y II, 62, 63 y 64 de la Ley Federal de Procedimiento Administrativo 56 Y 57 fracciones II, VIII y IX del Reglamento Interior de la Secretaría de Gobernación, publicado en el Diario Oficial de la Federación el 30 de julio de 2002, y artículo 5ª Fracción II, Inciso B, numeral 28 del Acuerdo por el que se Delegan Facultades en Favor del Delegado Regional del Instituto Nacional de Migración en el Estado de Baja California, así como de los Subdelegados Regionales, Delegados Locales, Subdelegados Locales, Delegados de Regulación de Estancia y Delegados de Control Migratorio y Jurídico, en el ámbito territorial de su competencia, publicado en el Diario Oficial de la Federación el 11 de diciembre del 2002, se le ordena presentarse ante la Subdirección de Control Migratorio del Instituto Nacional de Migración en B.C. a efecto de que manifieste lo que a su derecho convenga respecto de su situación migratoria en territorio nacional ya que ha solicitado un trámite migratorio y de actuaciones se desprende que las empresas para las cuales se encuentra autorizado a prestar sus servicios no se encuentran en funcionamiento.

A T E N T A M E N T E
SUBDIRECTOR DE CONTROL MIGRATORIO
DEL I.N.M. EN BAJA CALIFORNIA
ENCARGADO DE DESPACHO

LIC. REYNALDO TOMÁS ROJO MENDOZA.

SUBDIRECCION DE CONTROL MIGRATORIO
DELEGACION REGIONAL EN B.C.
INSTITUTO NACIONAL DE MIGRACION

C.c.p.- Lic. Agustín Caso Raphael - Coordinador de Delegaciones de INM.- Para su conocimiento.
C.c.p.- Lic. Tonatiuh García Castillo.-Coordinador de Control y Verificación Migratoria del INM.- Mismo fin.
C.c.p.- Lic. Francisco Javier Reynoso Nuño.-Delegado Regional del INM en B.C.- Mismo fin.
C.c.p.- Lic. David Limón Grijalva - Subdelegado Regional del INM en B.C.- Mismo fin.
C.c.p.- Archivo.-

OF THE MEXICAN REPUBLIC
INTERIOR DEPARTMENT
NATIONAL IMMIGRATION INSTITUTE

INM REGIONAL DELEGATION IN B. C.
IMMIGRATION CONTROL SUB DIRECTOR
OFFICIAL COMMUNICATION NUMBER:
SDCM:/972/05

SUBJECT: ORDER TO APPEAR

TIJUANA, B. C., JUNE 10, 2005.

MR. DURRANI ARIF ALI
PAKISTANI NATIONAL

With basis on the stipulations of Articles 11, 14 and 16 of the Mexican Political Constitution, Articles 7 Fraction III, 64, 65, 151, Fractions I and II and 154 of the General Population Law, 140, 141 and 197 of its Regulations, 16, Fractions I and II, 62, 63 and 64 of the Federal Administrative Processes, 56 and 57 Fractions II, VIII and IX of the Interior Department Regulations, as published in the Federal Official Gazette on June 30, 2002, and according to the Decree Authorizing the Power to perform immigration processes and other functions stipulated by the General Population Law and its Regulations, in favor of the National Immigration Institute Delegate in Baja California, as well as for the for the Regional Sub Delegate, Immigration Regulation Sub - Director, the Immigration Control and Sub - Director, Local Delegates and Sub - Delegates, Head of the Immigration Regulation Department, Head of the Legal Department and Head of the Immigration Control and Legal Department, within their territory, published in the Federal Official Gazette on December 11, 2000, you are hereby ordered to appear before the Sub Director for Immigration Control of the National Immigration Institute in Baja California,  so you can declare concerning the immigration application you submitted, and the fact that the Corporations you have been authorized to work for are not in operation.

YOURS TRULY
INTERIM SUB - DIRECTOR OF THE
INM IMMIGRATION CONTROL OFFICE
SIGNATURE AND OFFICIAL SEAL
REYNALDO TOMAS ROJO MENDOZA, ESQ.

COPIES:
AGUSTIN CASO RAPHAEL - INM DELEGATIONS COORDINATOR - FYI
TONATIUH GARCIA CASTLLO, ESQ - IMMIGRATION VERIFICATION AND CONTROL COORDINATOR - FYI
FRANCISCO JAVIER REYNOSO NUÑO, ESQ. - INM REGIONAL DELEGATE IN B. C. - FYI
DAVID LIMON GRIJALVA, ESQ. - REGIONA SUB DELEGATE IN B. C. - FYI
FILE.

I HEREBY CERTIFY THIS IS A TRUE AND COMPLETE TRANSLATION FROM THE
ORIGINAL DOCUMENT IN SPANISH. JULY 13, 2005.

*José Manuel Puig*

PERITO INTERPRETE TRADUCTOR
AUXILIAR DEL SISTEMA JUDICIAL DE B.C.

AUTHORIZED IN ROSARITO, TIJUANA AND ENSENADA.
REG. NUMBER 000349

PAGE 2
SLM/534/05

-- for the Corporations known as "AEROSPACE LOGISTIC SERVICES" and "COASTAL CITIES INVESTMENTS LLC DE MEXICO" neither of which is operating, according to reports number 76/05 and 77/05,

THIRD - Since the foreign national submitted an application to obtain his second extension to continue on working as administrator for the Corporations known as "AEROSPACE LOGISTIC SERVICES" and "COASTAL CITIES INVESTMENTS LLC DE MEXICO", which are not operating,

Considering all these facts, the undersigned:

### DECIDES

ONE - Place the Pakistani National ARFI (SIC) ALI DURRANI, under the custody and control of the Head of the Immigration Control and Verification Coordinating Office, so his immigration situation is resolved. For this purpose, transport him to the Immigration Station in Iztapalapa, Mexico City, with basis on Articles 1, 7, 64, 119, 121, 125, 128 of the General population law, 106 Fraction III, 111, 114 and 199 of its Regulations, Article 57 Fractions IX and XIX of the Ministry of the Interior Regulations, and according to the Decree Authorizing the Power to perform immigration processes and other functions stipulated by the General Population Law and its Regulations, in favor of the National Immigration Institute Delegate in Baja California, as well as for the for the Regional  Sub Delegate, Immigration Regulation Sub Director, the Immigration Control and Sub Director, Local Delegates and Sub Delegates, Head of the Immigration Regulation Department, Head of the Legal Department and Head of the Immigration Control and Legal Department, within their territory, published in the Federal Official Gazette on December 11, 2000, in Article 5o. Fraction II, Item "B", number 29.

This document is concluded at 13:00 hours of the same day it was started, and all those who participated in it signed it.

INTERIM HEAD OF THE
INM IMMIGRATION CONTROL OFFICE IN B. C.
SIGNATURE
REYNALDO TOMAS ROJO MENDOZA, ESQ.


THE FOREIGN NATIONAL
SIGNATURE
ARFI(SIC) ALI DURRANI


TRANSLATOR
SIGNATURE
KATIA ROMERO EQUIZ, ESQ.


WITNESSESS


SIGNATURE                          SIGNATURE
SERGIO RABAGO ESPINOZA             HECTOR GARNICA ORTEGA

I HEREBY CERTIFY THIS IS A TRUE AND COMPLETE TRANSLATION FROM THE ORIGINAL DOCUMENT IN SPANISH. JULY 13, 2005.

*Jose Manuel Puig*
PERITO INTERPRETE TRADUCTOR
AUXILIAR DEL SISTEMA JUDICIAL DE B.C.

AUTHORIZED IN ROSARITO, TIJUANA AND ENSENADA.
REG. NUMBER 000349

OFFICIAL SEAL                      NATIONAL IMMIGRATION INSTITUTE

OFFICIAL
SEAL OF THE
MEXICAN REPUBLIC

## ADMINISTRATIVE DOCUMENT

-- In the Municipality of Tijuana, Baja California, at 16:30 hours of June 12, 2005, in the Offices of the Local Sub - Delegation of the National Immigration Institute in the Tijuana, Baja California International Airport, before me, REYNALDO TOMAS ROJO MENDOZA, ESQ., Head of the INM Immigration Control Office and with the assistance of the witnesses Sergio Rabago Espinoza and Hector Garnica Ortega, we issued this document before the man who calls himself ARFI (SIC) ALI DURRANI, a PAKISTANI NATIONAL who does not speak Spanish, so Katia Romero Equiz, Esq., was appointed interpreter. She identified herself with a Voter's Credential issued by the National Electoral Institute, and after she accepted her appointment, she was instructed to tell the foreign national about the penalties stipulated by Article 247 of the Federal Penal Code for those who make false declarations to authorities other than the Judicial, and also tell him that he has the right to appoint somebody he trusts t represent him or assist him. He answered that he reserves that right and concerning the facts, he declared:

-- The foreign national declared under oath that his name is as stated above, born in Pakistan on August 14, 1949, theta he is 55 yeas old, married and a merchant by trade. He also said he has university education and that he lives in Playas de Rosarito. At the moment he had no identification with him.

## VERIFICATION

-- We herby certify that on January 26 of this year INM  Rosarito verified the addresses of the Corporations known as "AEROSPACE LOGISTIC SERVICES" and "COASTAL CITIES INVESTMENTS LLC DE MEXICO", and it was discovered that neither one of them was operating; also we hereby certify that on June 9, 2005, Juana Iveth Baltazar Quintana, Esq., Head of the Immigration Regulatory Department in Baja California, reported to the Immigration Control Office, by means of Official Communication number 43/INMR/2005, of the immigration process application submitted by MR. ARIF ALI DURRANI, a Pakistani national, to obtain a second extension to continue working as administrator for the Corporations known as "AEROSPACE LOGISTIC SERVICES" and "COASTAL CITIES INVESTMENTS LLC DE MEXICO", so it was ordered to locate and present him by means of Official Communications number SDCM/972/05, and SDCM/973/05

-- Concerning these facts, MR. ARIF ALI DURRANI DECLARED: "I have been residing legally in Mexico in Playas ed Rosarito, Baja California, Mexico, for the past six years with immigration document FM3 1417946, authorized as administrator for the Corporations known as "AEROSPACE LOGISTIC SERVICES" and "COASTAL CITIES INVESTMENTS LLC DE MEXICO". Recently I changed the domiciles of these Corporations, and I notified the change in the application I submitted for my extension to continue on working as administrator of said Corporations. That is all I have to declare".

After hearing the Pakistani National MR. ARFI (SIC) ALI DURRANI' statement, and:

## CONSIDERING

FIRST - That this Pakistani born foreign national was placed under the custody of the Migratory Control Office on June 10, 2005, complying with the localization and presentation orders issued by means of Official Communications number SDCM/972/05 and SDCM/973/05,

SECOND - Since this foreign national has an FM3 number 1417946 authorizing him to work as Administrator ----------------------------------------------------------------------------------

OFFICIAL SEAL
OF THE MEXICAN REPUBLIC

INTERIOR DEPARTMENT
NATIONAL IMMIGRATION INSTITUTE

NATIONAL IMMIGRATION INSTITUTE
INM SUB - DELEGATION
IN ROSARITO, B. C.
COMMUNICATION # 650/INMR/2004
FILE 3 2334/IN/2000

PLAYAS DE ROSARITO, B. C., APRIL 30 2004.

MR. DURRANI ARIF ALI
PAKISTANI NATIONAL
TIJUANA - ENSENADA ROAD, KM 53.5
MEDIO CAMINO
PLAYAS DE ROSARITO, B. C.

    With basis on Articles 55 and 57, Fraction IV of the Regulation of the Ministry for the Interior, Article 68 Item A, Sub'- Item b), point 4 of the Agreement granting the Regional INM Delegate in Baja California, the Regional Sub - Delegate, the Local Sub - Delegates and the Head of the Immigration Regulations Department, various attributions and authority to authorize immigration processes according to the General Population Law and its Regulations, as published in the Federation Official Gazette on December 11, 2000, and also according to Articles 41, Fraction III of the General Population Law, 159 and 162 Fraction II of its Regulations and other applicable dispositions, you are hereby authorized an extension, in the following terms:

| | |
|---|---|
| F. M. 3 NUMBER | 1417946 |
| IMMIGRATION STATUS | NON - IMMIGRANT LUCRATIVE ACTIVITY |
| EXTENSION NUMBER | FIRST EXTENSION |
| TIME | 365 DAYS STARTING ON APRIL 26, 2004 ENDING APRIL 25, 2005 |
| AUTHORIZED ACTIVITY | WORKING AS ADMINISTRATOR FOR AEROSPACE LOGISTICS SERVICES S. A. DE C. V. AND COASTAL CITIES DE MEXICO, S. A. DE C. V. |
| PAYMENT | $ 1,068 PESOS IN BANCO SERFIN ON APRIL 21, 2004 |
| LEGAL BASIS | ART. 8, FRACTION III OF THE GENERAL LAW FOR FISCAL FEES |
| ATTACHMENT | WE RETURN THE ABOVE - MENTIONED FM3, EXTENDED. |

    You must request a new extension of your FM3 30 days before it expires. If you request the extension after the expiration date, you will be fined.

YOURS TRULY
EFFECTIVE SUFFRAGE - NON REELECTION
THE LOCAL INM SUB - DELEGATE IN ROSARITO
SIGNATURE
DAVID LIMON GRIJALVA, ESQ

SEAL OF THE
ROSARITO INM
DELEGATION SHOWING
THIS DOCUMENT WAS
SENT ON MAY 3, 2004

OFFICIAL
SEAL OF THE
INM OFFICE
IN ROSARITO

I HEREBY CERTIFY THIS IS A TRUE AND COMPLETE TRANSLATION FROM THE
ORIGINAL DOCUMENT IN SPANISH. JULY 13, 2005.

*Manuel Puig*

INTERPRETE TRADUCTOR
AUXILIAR DEL SISTEMA JUDICIAL DE B.C.

AUTHORIZED IN ROSARITO, TIJUANA AND ENSENADA.
REG. NUMBER 000349

APPENDIX E



**SECRETARIA DE GOBERNACION
INSTITUTO NACIONAL DE MIGRACION**

COORDINACICION DE CONTROL Y
VERIFICACIÓN MIGRATORIA.
DIRECCIÓN DE APLICACIÓN DE
SANCIONES
SUBDIRECCION DE RESOLUCIONES
DEPARTAMENTO DE DICTAMINACIÓN

EXPEDIENTE: 1900/2005

OFICIO No.   5530

ASUNTO: SE NOTIFICA RESOLUCIÓN DE
EXPULSIÓN.

México, D. F. 14 de junio de 2005.

ARIF ALI DURRANI
NACIONALIDAD: PAKISTANÍ
PRESENTE

En cumplimiento a lo ordenado en el Punto Resolutivo Primero de la Resolución de fecha 14 de junio del 2005, dictada por esta Coordinación de Control y Verificación Migratoria, en el expediente administrativo, abierto a su nombre, me permito notificar a usted la misma en una foja útil con firma autógrafa, la que en su punto resolutivo Primero cita textualmente "*SE DETERMINA LA EXPULSIÓN DE ARIF ALI DURRANI, DE NACIONALIDAD PAKISTANI, POR ADECUAR SU CONDUCTA EN LA HIPOTESIS CONTEMPLADA EN EL ARTÍCULO 123 DE LA LEY GENERAL DE POBLACIÓN, AL NO ACREDITAR SU LEGAL ESTANCIA EN EL PAÍS, SANCIONADA POR EL ARTICULO 125 DE LA PROPIA LEY*".

Asimismo, en cumplimiento del Resolutivo Segundo de la propia resolución se le notifica: *APERCIBASE A ARIF ALI DURRANI DE NACIONALIDAD PAKISTANI, LA PROHIBICIÓN QUE TIENE PARA INTERNARSE NUEVAMENTE A TERRITORIO NACIONAL, SIN HABER OBTENIDO PREVIAMENTE ACUERDO DE READMISIÓN, PARA LO CUAL SE LE FIJA EL PERIODO DE DIEZ AÑOS, A PARTIR DE LA NOTIFICACION DE LA PRESENTE RESOLUCIÓN PARA SOLICITARLO EN TERMINOS DEL ARTICULO 229 DEL REGLAMENTO DE LA LEY GENERAL DE POBLACION.*

Para la ejecución de la resolución emitida, se comisiona al C. LUIS MARIANO MARTÍNEZ CRUCES, jefe del departamento de Seguridad y Custodia de la Estación Migratoria, para que designe al inspector que conduzca al extranjero al Aeropuerto Internacional de la Ciudad de México.

Lo anterior para su conocimiento y fines legales conducentes.

A T E N T A M E N T E.
SUFRAGIO EFECTIVO. NO REELECCIÓN
JEFE DE DEPARTAMENTO

C. GUADALUPE FERNANDEZ SALAZAR

DESPACHADO
14 JUN 2005
DEPARTAMENTO
DE
EJECUCIÓN

c.c.p. Lic. Héctor Eduardo Zalonia Valdés, Director de Aplicación de Sanciones, para su conocimiento. Presente
c.c.p. Lic. Alejandro Reyes Rodríguez, Jefe del Dpto. Técnico Operativo en Estación Migratoria, para su conocimiento.
c.c.p. C. Delegado del Instituto Nacional de Migración del punto de salida, para su conocimiento y apoyo

'GFS/srr'

0166

```
VENDEDOR: GD                        ITINERARIO                  FECHA: 14 JUN 05
NO. DE CLIENTE USA001                          EZTDLD           PAGINA: 01
```

```
         A: EMBAJADA DE LOS ESTADOS UNIDOS DE AMERICA
            REFORMA 305/COL CUAUHTEMOC
            06500 MEXICO,D.F.
            RFC ██████████              ← Embassy of U.S.
            TEL 52 09 91 00
```

PARA: DURRANI/ARIF ALI              REF: USMS


```
15 JUN 05  -  MIERCOLES
  VUELO   DELTA AIR LINES INC   VLO:DL8122  ECONOMY
          MEXICO CITY-LOS ANGELES OPERADO POR AEROMEXICO
          SAL  MEXICO CITY                0940            EQP: BOEING 737
                                                         03HR 55MIN
          LLEG LOS ANGELES                1135            SIN ESCALAS
          ARRIVE: TERMINAL 5                              REF: 5IPBA5
  VUELO   CONTINENTAL AIRLINES  VLO:CO684  COACH          SNACK
          SAL  LOS ANGELES                1300            EQP: BOEING 737 300
          DEPART: TERMINAL 6                              03HR 29MIN
          LLEG HOUSTON GEO BUSH           1829            SIN ESCALAS
          ARRIVE: TERMINAL C                              REF: 3HJB0E

16 JUN 05  -  JUEVES
  VUELO   CONTINENTAL AIRLINES  VLO:CO2758  COACH          SNACK
          OPERATED BY EXPRESSJET AIRLINES INC DBA CO EXPRESS
          SAL  HOUSTON GEO BUSH           1545            EQP: EMBRAER 145 JET
          DEPART: TERMINAL B                              03HR 21MIN
          LLEG TORONTO ON                 2006            SIN ESCALAS
          ARRIVE: TERMINAL 3                              REF: 3HJB0E
  VUELO   BRITISH AIRWAYS       VLO:BA96   ECONOMICA       COMIDA
          SAL  TORONTO ON                 2305            EQP: BOEING 777-200
          DEPART: TERMINAL 3                              07HR 00MIN

 7 JUN 05  -  VIERNES
          LLEG LONDON HEATHROW            1105            SIN ESCALAS
          ARRIVE: TERMINAL 4                              REF: ZU539W
  VUELO   BRITISH AIRWAYS       VLO:BA107  ECONOMICA       COMIDA
          SAL  LONDON HEATHROW            1240            EQP: BOEING 777-200
          DEPART: TERMINAL 4                              06HR 55MIN
          LLEG DUBAI                      2235            SIN ESCALAS
          ARRIVE: TERMINAL 1                              REF: ZU539W
  VUELO   PAKISTAN INTL         VLO:PK228  DOM FLT OUT PCENATAN
          SAL  DUBAI                      2359            EQP: AIRBUS A310
                                                         02HR 01MIN

 8 JUN 05  -  SABADO
          LLEG KARACHI                    0300            SIN ESCALAS
                                                         REF: IXRVDO
```

CONTINUA EN PAGINA 2

6/14/2005



APPENDIX F

**U.S. Department of Justice**
**United States Marshals Service**



| REPORT OF INVESTIGATION | | Page 1 of 1 |
|---|---|---|
| 1. FID: 389864 | 2. DATE OF REPORT: 06/16/2005 | 3. REPORTED BY: ▮▮▮▮▮  b7C, j2 |
| 4. SUBJECT NAME: DURRANI,ARIF | | AT: HQTS |

5. TYPE OF REPORT:
[ ] REPORT OF ELECTRONIC INTERCEPTION     [ ] ARREST
[ ] COLLATERAL LEAD     [ ] INTELLIGENCE UPDATE
[ ] WITNESS INTERVIEW     [ ] MEMORANDUM TO FILE
[x] OTHER: International Lead

     Fid : 389864
     Fugitive Name: DURRANI,ARIF
     Sequence Number: 1

Country: MEXICO
Date Of Lead: 06/16/2005
Lead Sent To: Mexico City USMS      Sent To Remarks:

Remarks: OPENED ON 6-15-05

Date Closed: 06/16/2005
Close Remarks: DEPORTED TO U.S., VIA LOS ANGELES, CA., ON 06-15-05.

| 6. SIGNATURE (Name and Title) | 7. DATE 06/16/2005 12:00 AM EDT | 10. DISTRIBUTION __DISTRICT __HEADQUARTERS __OTHER_____ |
|---|---|---|
| ▮▮▮▮▮  b7C, j2 | | |
| 8. APPROVED (Name and Title) | 9. DATE | |

UNITED STATES MARSHALS SERVICE
THIS REPORT IS THE PROPERTY OF THE UNITED STATES MARSHALS SERVICE NEITHER
IT NOR ITS CONTENT MAY BE DISSEMINATED OUTSIDE THE AGENCY TO WHICH LOANED.

11/14/2005 2:51 PM EST



**U.S. Department of Justice**
United States Marshals Service

---

## REPORT OF INVESTIGATION

Page 1 of 1

| | | |
|---|---|---|
| 1. FID: 389864 | 2. DATE OF REPORT: 06/20/2005 | 3. REPORTED BY: ▮▮▮▮ |
| 4. SUBJECT NAME: DURRANI,ARIF | | AT: CA/C |

5. TYPE OF REPORT:
[ ] REPORT OF ELECTRONIC INTERCEPTION     [x] ARREST (USM11 48549)
[ ] COLLATERAL LEAD     [ ] INTELLIGENCE UPDATE
[ ] WITNESS INTERVIEW     [ ] MEMORANDUM TO FILE
[ ] OTHER

---

On 6/15/2005, at approximately 12:30 pm, Deputies ▮▮▮▮ and Pacific Southwest Regional Taskforce Supervisory Inspector ▮▮▮▮ and Mexico City INM Agent ▮▮▮▮ arrived at the Los Angeles International Airport with fugitive DURRANI, Arif from Mexico City and turn him over without incident to U.S. Department of Homeland Security Immigration & Customs Enforcement Special Agent ▮▮▮▮ based on a Central District of California warrant for Exporting Defense Articles without a License in violation of Title 22 CFR 127.1(d), 127.3 and 22 USC 2778 (b)(2),(c).

End of report.

*b7C, J2*

---

| 6. SIGNATURE (*Name and Title*) | 7. DATE 06/20/2005 1:17 PM EDT | 10. DISTRIBUTION __DISTRICT __HEADQUARTERS __OTHER_____ |
|---|---|---|
| ▮▮▮▮ *b7C, J2* Deputy USM | | |
| 8. APPROVED (*Name and Title*) | 9. DATE 06/22/2005 1:02 PM EDT | |
| ▮▮▮▮ Warrant Supervisor | | |

*UNITED STATES MARSHALS SERVICE*
*THIS REPORT IS THE PROPERTY OF THE UNITED STATES MARSHALS SERVICE NEITHER*
*IT NOR ITS CONTENT MAY BE DISSEMINATED OUTSIDE THE AGENCY TO WHICH LOANED.*

11/14/2005 2:52 PM EST

APPENDIX G

*U. S. Customs*

# United States District Court
### Central District of California

United States of America

Plaintiff

**WARRANT FOR ARREST**

v.

Case Number:    CR 99-470  *PA*

ARIF DURRANI

Defendant

CLERK, U.S. DISTRICT COU
OCT 2 7 2005
DISTRICT OF CALIFOR
DEP

FILED
OCT 2 7 2005

TO: The United States Marshal and
   Any Authorized United States Officer

**YOU ARE HEREBY COMMANDED to arrest** _____ Arif Durrani _____

(Name)

and bring him or her forthwith to the nearest magistrate judge to answer a(n):

☒ Indictment  ☐ Information  ☐ Complaint  ☐ Order of Court  ☐ Violation Notice  ☐ Probation Violation Petition

charging him or her with (brief description of offense):

Exporting Defense Articles without a License

ARRESTED WITHIN THE C/CA
BY: *U. S. Customs (ICE)*
ON: *6/15/05*
SIGNED: *E. Neal*

U.S. MARSHAL SERVICE
LOS ANGELES, CALIF.

'99 MAY 10 A7:15

RECEIVED

in violation of Title _____ 22 _____ United States Code, Section(s) 2778(b)(2),(c)    127.1(d), 127.3
                                    22

SHERRI R. CARTER
Name of Issuing Officer

*[signature]*
Signature of Issuing Officer

CLERK OF COURT
Title of Issuing Officer

5/7/99  Los Angeles,   C
Date and Location

Bail Fixed at $ _____ DETENTION _____

By Margaret A. Nagle, US Magistra
Name of Judicial Officer    Judge

---

**RETURN**

This warrant was received and executed with the arrest of the above-named defendant at

| DATE RECEIVED | NAME AND TITLE OF ARRESTING OFFICER | SIGNATURE OF ARRESTING OFFICER |
|---|---|---|
| DATE OF ARREST | | |

APPENDIX H

United States Marshals Service
LIMITED OFFICIAL USE
Subject Report for DURRANI,ARIF (FID 389864)



Date Closed: 09/28/2005
Date Executed: 09/26/2005
Execution Code: DET LODGED; CUSTODY TAKEN
Arrested in District: 012
To Be Prosecuted: U
Close Summary: NOTIFIED BY ▇▇▇▇ FROM LOS ANGELES USMS SUBJECT WAS ARRAIGNED ON SAN DIEGO
WARRANT ON 09/26/05. HE IS WT. TO
REMOVED TO SAN DIEGO.

Case Number: 9912-0510-2394-J
Case Status: CLOSED
Originating District: 012 - CA/C LOS ANGELES (Warrants)
International Liaison: HQTS - Mexico City Liaison
Opened: 06/15/2005
Closed: 06/15/2005

Charge Information
Agency: USC - Federal Agency
DTR  US CUSTOMS SERVICE
Part of Task Force: LOS ANGELES REG TASK FORCE
Charge: 5299, WEAPON OFFENSE
Warrant Date: 05/07/1999
Date Received: 05/10/1999
OCDE: No
Remarks: CASE#CR99-470,EXPORTING DEFENSE ARTICLES WITHOUT A LICENSE

Close Information
Date Closed: 10/27/2005
Date Executed: 06/15/2005
Execution Code: PHYSICAL ARREST
Arrested in District: 012
To Be Prosecuted: Y
Close Summary: MCFO DEPORT FROM MEXICO CITY.DUSM'S ▇▇▇▇ AND INSPECTOR
▇▇▇▇▇ESCORTED
AND TOT US CUSTOMS AT PORT OF ENTRY.

APPENDIX I

FILED
CLERK, U.S. DISTRICT COURT

NOV 4 2005

CENTRAL DISTRICT OF CALIFORNIA
BY ____ DEPUTY

ORIGINAL

ENTER ON ICMS

NOV 8 2005

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

UNITED STATES OF AMERICA,       )
                                )
        PLAINTIFF,              )
                                )
        VS.                     )     CASE NO. 05-2011M
                                )
                                )
ARIF A. DURRANI,                )
                                )     LOS ANGELES, CALIFORNIA
                                )     SEPTEMBER 27, 2005
                                )
        DEFENDANT.              )
_____)

ARRAIGNMENT

BEFORE THE HONORABLE ANDREW J. WISTRICH
UNITED STATES MAGISTRATE JUDGE

FOR THE PLAINTIFF:          DEBRA W. YANG
                            UNITED STATES ATTORNEY
                            STEVEN D. CLYMER
                            CHIEF, CRIMINAL DIVISION
                            ASSISTANT UNITED STATES ATTORNEY
                            BY:  BILL CROWFOOT
                            ASSISTANT UNITED STATES ATTORNEY
                            312 NORTH SPRING STREET
                            LOS ANGELES, CALIFORNIA  90012

FOR THE DEFENDANT:          MOHAMMAD MOE NADIM
                            ATTORNEY AT LAW
                            1541 OCEAN AVENUE
                            SUITE 200
                            SANTA MONICA, CALIFORNIA  90401

PROCEEDINGS RECORDED BY ELECTRONIC SOUND RECORDING;
TRANSCRIPT PRODUCED BY TRANSCRIPTION SERVICE.

2

```
1   APPEARANCES:   (CONTINUED)
    COURTROOM DEPUTY/         YSELA BENAVIDES
2   RECORDER:

3   TRANSCRIBER:             DOROTHY BABYKIN
                             COURT HOUSE SERVICES
                             1218 VALEBROOK PLACE
4                            GLENDORA, CALIFORNIA  91740
                             (626) 963-0566
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

3

**I N D E X**

CASE NO. 05-2011M                    SEPTEMBER 27, 2005

HEARING:   ARRAIGNMENT.

4

1      LOS ANGELES, CALIFORNIA; SEPTEMBER 27, 2005

2      THE COURT:  BEFORE THE CALENDAR IS CALLED, I WILL

3  ADVISE ALL DEFENDANTS OF THEIR CONSTITUTIONAL AND STATUTORY

4  RIGHTS IN CONNECTION WITH THESE PROCEEDINGS.

5      YOU ARE HERE BECAUSE YOU'VE BEEN CHARGED WITH A

6  CRIMINAL OFFENSE AGAINST THE UNITED STATES.

7      YOU HAVE RECEIVED OR SOON WILL RECEIVE A COPY OF

8  THE FORMAL PAPERS SUMMARIZING THE CHARGES AGAINST YOU.

9      YOU HAVE THE FOLLOWING CONSTITUTIONAL AND STATUTORY

10  RIGHTS AMONG MANY OTHERS.

11      PLEASE LISTEN CAREFULLY.

12      YOU HAVE THE RIGHT TO RETAIN AND TO BE REPRESENTED

13  BY AN ATTORNEY OF YOUR OWN CHOOSING AT EACH AND EVERY STAGE

14  OF THE PROCEEDINGS AGAINST YOU.

15      IF YOU CANNOT AFFORD AN ATTORNEY, YOU MAY REQUEST

16  THAT THE COURT APPOINT AN ATTORNEY TO REPRESENT YOU.

17      THE APPOINTED ATTORNEY WILL BE PAID BY THE

18  GOVERNMENT WITHOUT COST TO YOU.  YOU MUST, HOWEVER, SUBMIT A

19  FINANCIAL AFFIDAVIT TO THE COURT BEFORE COUNSEL MAY BE

20  APPOINTED TO REPRESENT YOU.

21      IF YOU MAKE ANY FALSE, MISLEADING OR INCOMPLETE

22  STATEMENTS IN YOUR FINANCIAL AFFIDAVIT, YOU MAY BE SUBJECT TO

23  FURTHER PROSECUTION FOR A SEPARATE VIOLATION OF FEDERAL LAW.

24      YOU HAVE THE RIGHT TO REMAIN SILENT.  ANYTHING THAT

25  YOU DO, SAY, SIGN, OR WRITE WHICH TENDS TO INCRIMINATE YOU

1   MAY BE INTRODUCED AGAINST YOU IN THIS OR IN ANY OTHER COURT

2   PROCEEDING.

3         YOU HAVE THE RIGHT TO HAVE THE ISSUE OF YOUR

4   RELEASE ON CONDITIONS OR DETENTION IN CUSTODY PENDING TRIAL

5   DETERMINED THIS AFTERNOON OR WITHIN A FEW DAYS THEREAFTER IF

6   A POSTPONEMENT IS REQUESTED BY EITHER THE DEFENSE OR THE

7   GOVERNMENT AND SUCH POSTPONEMENT IS ALLOWED BY THE COURT.

8         YOU HAVE THE RIGHT TO A PRELIMINARY HEARING OR TO

9   HAVE THE CASE PRESENTED TO THE GRAND JURY WITHIN TEN DAYS OF

10   THIS DATE IF YOU ARE IN CUSTODY AND WITHIN 20 DAYS OF THIS

11   DATE IF YOU ARE RELEASED ON BOND.

12         A PRELIMINARY HEARING IS A PROCEEDING IN WHICH THE

13   GOVERNMENT PRESENTS ITS EVIDENCE AND A DECISION IS MADE AS TO

14   WHETHER THERE IS PROBABLE CAUSE TO BELIEVE THAT THE OFFENSE

15   CHARGED WAS COMMITTED AND THAT YOU WERE THE PERSON WHO

16   COMMITTED IT.

17         IF PROBABLE CAUSE IS NOT FOUND, THE CHARGES WILL BE

18   DISMISSED.  IF PROBABLE CAUSE IS FOUND, YOU WILL THEN BE

19   REQUIRED TO ENTER A PLEA TO THE CHARGES AGAINST YOU.

20         SOME OF YOU MAY BE HERE BECAUSE YOU'VE BEEN CHARGED

21   IN AN OUT-OF-DISTRICT COMPLAINT OR INDICTMENT OR WITH A

22   VIOLATION OF PROBATION OR SUPERVISED RELEASE.

23         IF SO, YOU HAVE THE RIGHT TO A REMOVAL HEARING,

24   WHICH INCLUDES A DETERMINATION OF PROBABLE CAUSE IF ONE HAS

25   NOT ALREADY BEEN MADE IN YOUR CASE, AND A DETERMINATION OF

1    YOUR IDENTITY, UNLESS WAIVED.

2            A REMOVAL HEARING MUST BE HELD HERE BEFORE YOU CAN

3    BE REQUIRED TO RESPOND TO ALLEGATIONS AGAINST YOU IN A

4    DISTRICT OTHER THAN THIS ONE.

5            THE CLERK WILL NOW CALL THE CALENDAR.

6            (PROCEEDINGS IN UNRELATED MATTERS HELD.)

7            THE CLERK:  CALLING 05-2011M, UNITED STATES OF

8    AMERICA VERSUS ARIF ALI DURRANI.

9            COUNSEL, PLEASE MAKE YOUR APPEARANCES.

10           MR. CROWFOOT:  GOOD AFTERNOON, YOUR HONOR.

11           BILL CROWFOOT ON BEHALF OF THE UNITED STATES.

12           MR. NADIM:  GOOD AFTERNOON, YOUR HONOR.

13           MOE NADIM FOR DEFENDANT, WITH MR. DURRANI PRESENT.

14           THE COURT:  PLEASE STATE YOUR TRUE AND COMPLETE

15    NAME, SIR.

16           THE DEFENDANT:  MY NAME IS DURRANI.

17           THE COURT:  WERE YOU ABLE TO HEAR AND UNDERSTAND MY

18    EXPLANATION OF YOUR RIGHTS A FEW MOMENTS AGO?

19           THE DEFENDANT:  YES, I DID.

20           THE COURT:  OKAY.  HAVE YOU REVIEWED THE COMPLAINT

21    SUMMARIZING THE CHARGES AGAINST YOU?

22           THE DEFENDANT:  YES, YOUR HONOR.

23           THE COURT:  AND YOU'RE SATISFIED YOU UNDERSTAND

24    WHAT THOSE CHARGES ARE?

25           THE DEFENDANT:  YES, YOUR HONOR.

1    THE COURT:  I SEE THE GOVERNMENT IS SEEKING

2  DETENTION.

3    BOTH READY TO PROCEED ON THAT ISSUE?

4    MR. NADIM:  THEN, OBVIOUSLY, I'D LIKE TO REQUEST

5  BAIL.  I KNOW THE GOVERNMENT HAS REQUESTED DETENTION, BUT I'D

6  LIKE TO ARGUE AND REQUEST BAIL.

7    THE COURT:  ALL RIGHT.

8    WHY DON'T YOU MAKE YOUR PROFFER.

9    MR. CROWFOOT:  YES, YOUR HONOR.  THE GOVERNMENT

10  OFFERS IN SUPPORT OF ITS REQUEST FOR DETENTION THE COMPLAINT

11  AND AFFIDAVIT AS WELL AS THE PRETRIAL SERVICES REPORT THAT IS

12  BEFORE THE COURT.

13    I'D NOTE, YOUR HONOR, A COUPLE OF CORRECTIONS OR

14  FURTHER INFORMATION TO THAT PRETRIAL SERVICES REPORT.

15    THE MATTER THAT WAS BEFORE JUDGE ANDERSON HERE IN

16  THIS COURTHOUSE, WHICH IS DESCRIBED AS A STILL PENDING

17  DISPOSITION, IN FACT, WAS DISMISSED BY JUDGE ANDERSON ON

18  MOTION FOR THE GOVERNMENT.

19    ANOTHER ISSUE OR PIECE OF INFORMATION THAT'S IN

20  HERE, IT INDICATES INFORMATION RELATED TO THE DEFENDANT'S

21  IMMIGRATION STATUS.  THE COMPLAINT SWORN OUT BY THE ICE AGENT

22  IN SAN DIEGO INCLUDES A REFERENCE TO THE FACT THAT THE

23  DEFENDANT WAS DEPORTED IN 1995.

24    I BELIEVE HIS A FILE CONTAINS A LONG RECORD OF THE

25  APPEALS TO THAT.  SO, THAT IS NOT -- IT STATES IN HERE THAT

1    HE, IN FACT, REPORTS HAVING SELF-DEPORTED, BUT HE WAS

2    DEPORTED BY THE UNITED STATES.

3                 SO, WITH THOSE TWO ADDITIONS, YOUR HONOR, THE

4    GOVERNMENT SUBMITS ON THAT -- ON ITS REQUEST FOR DETENTION.

5                 ILLUSTRATING, OF COURSE, YOUR HONOR, THE FACT THAT

6    HE IS PENDING A VERY SERIOUS CASE IN SAN DIEGO.  HE IS IN

7    THIS COUNTRY FOR THE PURPOSES OF THESE LEGAL PROCEEDINGS AND

8    OTHERWISE DOES NOT HAVE LEGAL STATUS IN THE UNITED STATES.

9                 MR. NADIM:  YOUR HONOR, THE GOVERNMENT IS ALLUDING

10   TO THE IMMIGRATION FILE, WHICH IS NOT BEFORE YOUR HONOR.  BUT

11   IF WE CAN TALK ABOUT THE FILE, THERE ARE DOCUMENTS, COPIES OF

12   WHICH I HAVE WITH ME, THAT SHOW MR. DURRANI BECAME A U.S.

13   CITIZEN ON MAY 13, 1986.

14                IF YOUR HONOR WOULD LIKE TO LOOK AT COPIES OF THE

15   PAPERS, I WOULD SHOW IT TO YOU.  HE WAS NOT DEPORTED IN 1995,

16   BUT IT WAS IN 1998.  HIS DEPORTATION WAS ILLEGAL BECAUSE THEN

17   I OBTAINED THE IMMIGRATION FILE LATER ON RECENTLY.  THERE IS

18   PROOF THAT HE WAS A CITIZEN WHEN HE WAS DEPORTED.

19                I DON'T KNOW WHETHER THE CIRCUMSTANCES UNDER WHICH

20   HE'S HERE FOR THIS PROCEEDING MAKES ANY DIFFERENCE, BUT HE

21   WAS KIDNAPPED FROM MEXICO AND BROUGHT HERE.

22                SO, WITH THAT IN MIND, AGAIN, I'D LIKE TO ARGUE AND

23   REQUEST BAIL.

24                THE PRETRIAL SERVICES -- THE REPORT INDICATES THAT

25   HE WAS NOT INTERVIEWED.  SO, THE BASIS OF THEIR REPORT IS

1    BASICALLY BASED ON WHAT THEY READ IN THE FILE.

2          THE COURT:  ALL RIGHT.  DID HE DECLINE TO BE

3    INTERVIEWED?

4          MR. NADIM:  YES.

5          THE COURT:  OKAY.  HE HAS THE RIGHT TO DECLINE, OF

6    COURSE.  IT'S HARDLY PRETRIAL SERVICES' FAULT THAT THEY DON'T

7    HAVE MORE INFORMATION IF HE DOES DECLINE.

8          HOW WAS HIS PRESENCE HERE PROCURED?

9          MR. CROWFOOT:  YOUR HONOR, I DON'T KNOW ALL OF THE

10   DETAILS.  BUT THE INFORMATION THAT I HAVE IS THAT MR. DURRANI

11   WAS ACTUALLY EXPELLED FROM MEXICO AND CAME TO THE UNITED

12   STATES IN THE COMPANY OF THE UNITED STATES MARSHALS WHO

13   BROUGHT HIM HERE FROM MEXICO.  AND, THEN, HE MADE HIS INITIAL

14   APPEARANCE IN THIS VERY COURTROOM ON JUNE 16TH.

15         MR. DURRANI, THE GOVERNMENT WOULD SAY, WAS NOT

16   KIDNAPPED IN MEXICO.

17         MR. NADIM:  MAY I, YOUR HONOR?

18         THE COURT:  YES.

19         MR. NADIM:  I DO HAVE DOCUMENTS FROM THE MEXICAN

20   GOVERNMENT THAT BASICALLY DESCRIBE THAT WHEN A FOREIGNER HAS

21   A BUSINESS IN MEXICO, THEY ARE REQUIRED -- HE LIVED IN MEXICO

22   FROM 1998 TO 2005.  HE REPORTED EVERY YEAR.  THE RULES IN

23   MEXICO REQUIRE SOMEBODY LIKE MR. DURRANI TO FILE A CHANGE OF

24   ADDRESS FORM EVERY TIME THEY MOVE.

25         IN APRIL OF 2005 HE SUBMITTED HIS DOCUMENTS TO THE

1   IMMIGRATION FOR HIS CHANGE OF ADDRESS.  WHILE THAT WAS BEING

2   PROCESSED, HE WAS KIDNAPPED FROM A RESTAURANT, TAKEN TO

3   MEXICO CITY.  WHILE HE WAS IN MEXICO CITY, FROM THAT POINT HE

4   WAS KIDNAPPED BY THE U.S. MARSHALS AND BROUGHT TO THE U.S. ON

5   A TICKET THAT WAS PURCHASED BY THE U.S. GOVERNMENT THREE DAYS

6   BEFORE HE WAS KIDNAPPED.

7        THEREFORE, THE ARGUMENT THAT HE CAME HERE ON HIS

8   OWN OR HE WAS ON A FLIGHT TO PAKISTAN WITH A LAY-OVER IN LOS

9   ANGELES ARE INCORRECT.

10        YOUR HONOR, I MADE A MOTION TO DISMISS THE

11   INDICTMENT IN JUDGE ANDERSON'S COURT.  AND THE GOVERNMENT

12   CHOSE TO DISMISS THE CASE BEFORE THE MOTION WAS HEARD.

13        THE BASIS OF THE MOTION WAS, NUMBER ONE, THAT HE

14   WAS KIDNAPPED.  AND IT HAD ALL THE DOCUMENTS ATTACHED.  MR.

15   --

16        THE COURT:  SO, ALL THE DOCUMENTS THAT YOU'RE

17   PROFFERING TODAY, THE GOVERNMENT HAS ALREADY SEEN?

18        MR. NADIM:  THE GOVERNMENT HAS ALREADY SEEN, BUT

19   THE GOVERNMENT -- THE COURT DISMISSED THE ACTION BEFORE THE

20   MOTION WAS HEARD.

21        THE COURT:  OKAY.  AND I TAKE IT -- IF I UNDERSTOOD

22   YOU CORRECTLY, YOU AGREE THAT HE WAS DEPORTED BY THE UNITED

23   STATES GOVERNMENT, BUT YOU CONTEND THAT THE DEPORTATION WAS

24   IMPROPER.

25        MR. NADIM:  YES.  I HAVE THOSE PAPERS HERE.  I HAVE

1   PAPERS THAT SHOWED HE WAS A CITIZEN.

2           MR. CROWFOOT:  YOUR HONOR, I WOULD EXPECT THAT IT

3   WASN'T THE COURT'S INTENTION TO LITIGATE EITHER MR. DURRANI'S

4   CITIZENSHIP THIS AFTERNOON OR THE CIRCUMSTANCES OF HIS

5   DEPARTURE FROM MEXICO.

6           IF HIS ARGUMENTS WITH RESPECT TO HIS DEPARTURE FROM

7   MEXICO TELLS US ANYTHING IT'S THAT HIS OWN VIEW IS THAT HE'S

8   IN THE UNITED STATES AGAINST HIS WILL AND SHOULDN'T BE HERE,

9   WHICH FOR THE PURPOSES OF THE ISSUE OF RETAINING HIM IN

10  CUSTODY, YOUR HONOR WOULD INDICATE THAT HE HIMSELF IS MAKING

11  THE ARGUMENT FOR FLIGHT.

12          HOWEVER, SINCE MR. DURRANI'S COUNSEL HAS RAISED THE

13  ISSUE, JUST FOR THE SAKE OF THE RECORD -- ALTHOUGH I DON'T

14  BELIEVE IT'S THE COURT'S INTENTION TO LITIGATE THAT ISSUE

15  HERE.  HE COULD MAKE A MOTION IN SAN DIEGO IF HE WISHES

16  BEFORE THE JUDGE HEARING THAT CASE.

17          TWO THINGS.  ONE, THE MOTION TO -- THE APPLICATION

18  FOR DISMISSAL THAT THE UNITED STATES MADE BEFORE JUDGE

19  ANDERSON WAS BASED ON A TECHNICAL ISSUE RELATED TO THE

20  INDICTMENT AND THE ELEMENTS OF THE CHARGE.  AND IT HAD

21  NOTHING TO DO WITH MR. -- WITH THE DEFENDANT'S MOTION TO

22  DISMISS.

23          IN ADDITION, MR. DURRANI'S COUNSEL ALSO HAS -- DID,

24  IN FACT, SUBMIT TO THE COURT THE NUMBER OF DOCUMENTS RELATED

25  TO HIS DEPARTURE FROM MEXICO OMITTING ONE VERY IMPORTANT

1    DOCUMENT, WHICH THE GOVERNMENT THEN ADDED TO THAT COURT'S

2    RECORD, WHICH WAS A LETTER TO MR. DURRANI FROM THE GOVERNMENT

3    OF MEXICO NOTIFYING HIM OF HIS EXPULSION FROM THAT COUNTRY.

4            NOW, ALL OF THOSE FACTS RELATED TO HOW HE GOT HERE

5    MAY OR MAY NOT BE RELEVANT TO THE CONTINUATION OF HIS CASE IN

6    SAN DIEGO.  BUT THE GOVERNMENT DID CITE IN ITS OPPOSITION TO

7    DEFENDANT'S MOTION BEFORE JUDGE ANDERSON THE ALVAREZ-MACHIN

8    CASE, A SUPREME COURT CASE ON THE VERY ISSUE OF AN ACTUAL

9    KIDNAPPING IN THAT CASE.

10           AND THE COURT IN THAT CASE RULED THAT THAT REALLY

11   ACTUALLY WAS NOT RELEVANT TO WHETHER THAT CASE WAS GOING TO

12   GO FORWARD.

13           SO, YOUR HONOR, THE ISSUE OF WHETHER MR. DURRANI

14   SHOULD REMAIN IN CUSTODY, THE FACT REMAINS THAT HE IS -- HE'S

15   IN THIS COUNTRY FOR THE SAKE OF THESE LEGAL PROCEEDINGS.  HE

16   IS PRESENT HERE.  AND WHETHER OR NOT ULTIMATELY SOME

17   APPELLATE COURT MIGHT DECIDE TO REHEAR HIS IMMIGRATION ISSUE,

18   THE FACT IS AS OF TODAY BY HIS OWN STATEMENT MR. DURRANI WAS,

19   IN FACT, DEPORTED FROM THE UNITED STATES.  AND HE HAS NO

20   LEGAL STATUS IN THIS COUNTRY.

21           YOUR HONOR, IT IS ABUNDANTLY CLEAR THAT MR. DURRANI

22   IS A FLIGHT RISK.  AND THAT BEING THE ISSUE, THE GOVERNMENT

23   WOULD ARGUE THAT HE REMAIN IN CUSTODY AS HE HAS BEEN FOR THE

24   CASE.

25           THE COURT:  HAVE YOU DONE ANY SORT OF POTENTIAL

1  SENTENCE CALCULATION?

2      MR. CROWFOOT:  I HAVE NOT WITH RESPECT TO THE CASE

3  IN SAN DIEGO, YOUR HONOR.  IT'S A TEN-YEAR MAXIMUM SENTENCE I

4  BELIEVE.  I HAVE NOT -- I JUST SAW THE COMPLAINT FROM SAN

5  DIEGO FOR THE FIRST TIME THIS AFTERNOON.  SO, I'VE NOT DONE A

6  SENTENCE CALCULATION.

7      THE COURT:  ALL RIGHT.  THE GOVERNMENT'S REQUEST

8  FOR DETENTION IS GRANTED.

9      THIS IS AN OUT-OF-DISTRICT MATTER.  WHAT ELSE DO WE

10  NEED TO TAKE UP THIS AFTERNOON?

11      MR. CROWFOOT:  YOUR HONOR, WE NEED TO TAKE UP, I

12  BELIEVE, THE ISSUE OF IDENTITY AND REMOVAL -- FROM THE

13  PRELIMINARY HEARING DATE.  I WON'T SPEAK FOR DEFENSE ON THIS,

14  BUT I'LL JUST SAY --

15      THE COURT:  GO AHEAD.

16      MR. CROWFOOT:  -- WHAT I THINK WE'VE DISCUSSED.

17  WHICH WAS THAT I BELIEVE IT'S MR. DURRANI'S INTENTION TO

18  WAIVE IDENTITY AND TO ASK FOR THIS COURT TO SET THE

19  PRELIMINARY HEARING DATE AS FAR INTO THE FUTURE AS IT LEGALLY

20  MAY DO SO THAT HE MAY CONTINUE TO CONFER WITH HIS COUNSEL

21  HERE BEFORE HE GOES TO SAN DIEGO TO RESPOND TO THE --

22      MR. NADIM:  YOUR HONOR, THE WARRANT FOR ARREST WAS

23  SIGNED ON SEPTEMBER 23.  TEN COURT DAYS FROM SEPTEMBER 23RD

24  WOULD BE OCTOBER 5TH.  THAT'S WHEN WE'D LIKE TO HAVE THE

25  PRELIMINARY HEARING.

1        THE DECISION FOR REMOVAL CAN BE HELD ON THE SAME

2    DATE.  MY CLIENT DOES NOT INTEND TO WAIVE HIS RIGHT TO THE

3    HEARING FOR ANY PERIOD AFTER 10 DAYS.  TEN DAYS WOULD BE

4    OCTOBER 5TH.

5        MR. CROWFOOT:  I CAN'T SEE THE CALENDAR.  IT'S ON

6    THIS SIDE.

7        THE COURT:  ALL RIGHT.  PRELIMINARY HEARING IS

8    SCHEDULED FOR OCTOBER 5, 2005, 10:00 A.M.  THAT WILL BE

9    BEFORE ME IN MY COURTROOM ON THE SIXTH FLOOR OF THE BUILDING.

10       ANYTHING ELSE WE NEED TO TAKE UP?

11       MR. CROWFOOT:  YOUR HONOR, I ACTUALLY BELIEVE THE

12   DEFENDANT WAS ARRESTED ON MONDAY.  AND, SO, THE ORDER FOR

13   ARREST MAY HAVE BEEN SIGNED LAST FRIDAY, BUT HE WAS, IN FACT,

14   ARRESTED MONDAY.  AND I'M WONDERING WHETHER WE COULD ACTUALLY

15   (INAUDIBLE) --

16       MR. NADIM:  YOUR HONOR, THE WARRANT WAS SIGNED ON

17   THE 23RD.  NOW, THAT WAS --

18       THE COURT:  I SET THE DATE.  IF THAT DATE POSES A

19   PROBLEM, THEN, YOU CAN REQUEST A CONTINUANCE.

20       MR. CROWFOOT:  THANK YOU, YOUR HONOR.

21       MR. NADIM:  YOUR HONOR, I HAVE A COUPLE OF

22   REQUESTS.  FIRST OF ALL --

23       THE COURT:  A COUPLE OF WHAT?  I'M SORRY.

24       MR. NADIM:  I HAVE TWO REQUESTS, IF I MAY.  THEY

25   HAVE  --

1    (MR. NADIM CONFERRING WITH CLIENT.)

2    MR. NADIM:  THEY TOOK AWAY HIS LEGAL PAPERS, LEGAL

3  FILE, AND HIS GLASSES.  HE'S GOT HIS GLASSES BACK.  I WANT

4  YOUR HONOR TO ORDER THE MARSHALS TO RELEASE HIS LEGAL

5  DOCUMENTS TO HIM.  I HAVE MADE THE REQUEST A COUPLE OF TIMES

6  TODAY, BUT IT HASN'T BEEN DONE.

7    THE COURT:  ALL RIGHT.  I SUSPECT THEY'LL BE

8  RETURNED TO HIM IN THE NORMAL COURSE ONCE HE'S SITUATED WHERE

9  HE'S GOING TO BE IN CUSTODY.  SO, IF THAT IS A CONTINUING

10  PROBLEM, THEN, LET MY CLERK KNOW, AND I'LL ADDRESS IT THEN.

11    MR. NADIM:  THANK YOU, YOUR HONOR.

12    MR. CROWFOOT:  YOUR HONOR, DID WE ACTUALLY GET ON

13  THE RECORD THE DEFENDANT'S WAIVER OF IDENTITY -- OR MY

14  PROFFER --

15    THE COURT:  ALL RIGHT.  THERE SHOULD BE A FORM

16  THERE.  COULD HE PLEASE EXECUTE THAT FORM.  IT'S A USEFUL

17  CLARIFICATION.

18    (PAUSE IN PROCEEDINGS.)

19    THE COURT:  NO BOXES WERE CHECKED.

20    (PAUSE IN PROCEEDINGS.)

21    THE DEFENDANT:  I CHECKED THREE BOXES.

22    (PAUSE IN PROCEEDINGS.)

23    THE COURT:  OKAY.  AS FILLED OUT, THE FORM

24  INDICATES THAT THE DEFENDANT WOULD LIKE A PRELIMINARY

25  EXAMINATION IN THE PROSECUTING DISTRICT.  THAT'S NOT THIS

1  DISTRICT.

2          MR. NADIM:  OH, NO, NO.  I'D LIKE TO CROSS THAT

3  OUT.  I'M SORRY.  YOU KNOW, YOU'RE PUT ON THE SPOT.

4          (PAUSE IN PROCEEDINGS.)

5          THE COURT:  ALL RIGHT.  THE DEFENDANT'S WAIVER OF

6  IDENTITY HEARING IS ACCEPTED BY THE COURT.

7          I THINK WE'RE READY FOR THE NEXT CASE.

8          MR. NADIM:  THANK YOU.

9          (PROCEEDINGS CONCLUDED.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2                    C E R T I F I C A T E

3

4          I CERTIFY THAT THE FOREGOING IS A CORRECT

5    TRANSCRIPT FROM THE ELECTRONIC SOUND RECORDING OF THE

6    PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

7

8

9    _____        _____
                                          11/4/05
10   FEDERALLY CERTIFIED TRANSCRIBER       DATED
     DOROTHY BABYKIN

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

APPENDIX J



*** LIMITED OFFICIAL USE ***

DATE: 09/28/2005 TIME: 13:29  PAGE:      1

UNITED STATES MARSHALS SERVICE
PRISONER TRACKING SYSTEM
CENTRAL DISTRICT OF CALIFORNIA
DISTRICT: 12    OFFICE: ROY

INDIVIDUAL CUSTODY AND DETENTION REPORT USM (129)

NAME:  DURRANI , ARIF ALI
USMS NUMBER:  31948112

PHONE:

CATION DATA:
NAME: DURRANI, ARIF ALI
NBR: 31948112
SEX: M  RACE: W  HAIR: BLK  EYE: BRO  HEIGHT: 511  WEIGHT: 180
ESS:  EXTRADITION FROM MEXICO, XX
08/14/1949  AGE: 56  POB: PAKISTAN, XX
FBI NBR: 447572FA5    ALIEN NBR: A21N3558

SPECIAL HANDLING REMARKS:
ECIAL HANDLING CODE:                HIGH BLOOD PRESSURE
DICAL                               SUBJ. TAKES ACCUPRIL FOR HEART MURMUR
DICAL                                               REMARK

1st case —

JETAINER/DATE  ACTIVE  AGENCY
06/15/2005        Y    , CUSTOMS & BORDER PROTECTION
                                    ALIAS REMARK:

PRISONERS ALIASES:
NONE                         b76, 52         — 09027-D14 —

GENERAL REMARKS:
ARRESTING AGENT
BODY HELD OVER DUE TO OUTSTANDING S/CA CASE

                                    FEDERAL COURT CITY
                                    LOS ANGELES
I. CASE INFORMATION:         COURT CASE NUMBER   LOS ANGELES
CTR   STATUS                  CR 99-740
 1    RL-DISMSS                                   LOCATION OF ARREST   WARRANT NUMBER
 2    WT-TRIAL                05-2011M            MEXICO               C/CA
                                                 ROYBAL FED BUILDING   S/CA
CTR   ARREST DATE  ARRESTING AGENCY                                        DISPOSITION
 1    06/15/2005   U.S. MARSHALS SERVICE   OFFENSE REMARK       W CHARGES DISMISSED/DROPPED
 2    09/26/2005   U.S. MARSHALS SERVICE   22 USC 2778 EXPORTING DEFENSE ARTICLES W CHARGES DISMISSED/DROPPED
                                           22 USC 2278 CONSPIRACY/ ARMS CONTRDL ACT NOT YET DISPOSED
CTR   OFFENSE
 1    (2699) FRAUD                                          APPEAL DATE
 2    (4808) COMPOUNDING CRIME                              **/**/****
                                                           **/**/****
CTR   SENTENCE DATE    SENTENCE
 1    **/**/****
 2    **/**/****
                                                 RELEASE DATE      REMARK
                                                 **/**/****        S/CA
III. STATUS HISTORY         STATUS DATE   CUSTODY DATE
CTR   STATUS                06/15/2005    06/15/2005
 1    WT-TRIAL

*** LIMITED OFFICIAL USE ***

10

United States Marshals Service
LIMITED OFFICIAL USE
Subject Report for DURRANI,ARIF (FID 389864)



Arrested in District: 012
To Be Prosecuted: U
Close Summary: MCFO DEPORT FROM MEXICO CITY. DUSM'S ███████ AND INSPTR.
██████ ESOCRTED AND TOT US CUSTOMS AT PORT OF ENTRY.

b7C, b2

b

APPENDIX K

1 | Arif A. Durrani
Reg. No 09027-014
2 | Federal Correctional Complex
Victorville I
3 | P.O. Box 5300
Adelanto, CA 92301-5300
4

5

6

7

8 |                    UNITED STATES DISTRICT COURT

9 |                      DISTRICT OF COLUMBIA

10 | ARIF A. DURRANI                    )    PETITION FOR DISCLOSURE
                                       )    OF ALL DOCUMENTS AND LOSS
11 |        Petitioner,                 )    OF PROPERTY, ASSETS AND
                                       )    DAMAGES FOR WILLFUL ACTS
12 |        v.                          )    OF THE AGENCIES WITH ADVERSE
                                       )    AFFECT PURSUANT TO 5 U.S.C.
13 | U.S. DEPARTMENT OF JUSTICE,        )    §552a/PRIVACY ACT
U.S. DEPARTMENT OF STATE AND           )
14 | DEPARTMENT OF HOMELAND SECURITY,   )
                                       )
15 |        Respondents.                )
                                       )
16 | _____  )

17

18 |        Arif A. Durrani, Petitioner, (DURRANI), requests the

19 | U.S. Dictrict Court, for an order for disclosure of all the

20 | documents withheld under his Freedom of Information and Privacy

21 | Act requests to the Respondents.

22 |                         JURISDICTION

23 |        This U.S. District Court has jurisdiction for this

24 | action pursuant to 5 U.S.C. §552(a)(4)(B), and has jurisdiction

25 | over the defendants, because the actions occurred within the

26 | confines of this court.

27 | //

28 | ///

1                          VENUE

2        The venue is proper in the District of Columbia, pursuant

3   to U.S.C. §1391.

4                     STATEMENT OF THE CASE

5        The relevant procedural history of the case is set forth

6   in more detail in the statement of facts section. In brief, this

7   is a case arising from the arrest and extradition for which the

8   Petitioner was innocent, and no offense was committed. All three

9   Respondents knew prior to their actions that the Petitioner was

10  innocent or should have known that the Petitioner was innocent

11  from the documents that were in their constructive possession

12  prior to the alleged offense in May 1994.

13                     STATEMENT OF FACTS

14       In May 1999, the U.S. Attorney, Central District of

15  California, obtained a fraudulent indictment CR99-470-PA, after

16  the case agent, Wayne Kempton, U.S. Customs was rebuffed by the

17  U.S. Attorney in the District of Connecticut on May 17, 1994.

18       On June 12, 2005, the AUSA William P. Cole, Southern

19  District of California, knowingly, willingly and intentionally

20  caused the arrest of the Petitioner without any probable cause

21  and had him extradited from his legal residence in Mexico on

22  June 15, 2005, by providing the government the fraudulent sealed

23  indictment CR99-470-PA. He caused the Mexican immigration

24  officials to be bribed to obtain the Mexican residency records

25  of the Petitioner.

26  //

27  ///

28  ///

1   He utilized this information to cause the cancellation

2 of the Petitioner's residency in Mexico. He further caused false

3 documents to be fabricated to conceal his activities. On June 22,

4 2005. He caused the Petitioner's property to be taken away

5 without any probable cause.

6   The Petitioner filed his requests under the FOIA and

7 the Privacy Act upon each of the Respondents. The Respondents

8 denied these requests. All administrative appeals or time for

9 response have been exhausted. The documents sought from all three

10 Respondents are in a series of documents for the same actions

11 in support of the instructions given or caused by AUSA William

12 P. Cole. The following FOIA and Privacy Act numbers were assigned

13 to the Petitioner's requests:

14       U.S. Department of State: 200602972

15       U.S. Department of Justice: 07-2423 (Appeal 08-0363)

16       U.S. Department of Homeland Security: 07FOIA53208(Appeal

17       DHS 08-034), 2008FOIA1044 and 2008FOIA871

18                    REQUEST FOR RELIEF

19   Petitioner requests a Vaughn Index to ensure complete

20 disclosure of all the documents from the three Respondents and

21 payment for damages caused by the illegal arrest and extradition

22 for which he was innocent of all the charges and for his loss of

23 all his property by these willful acts of these three agencies

24 and the cost for litigation.

25                    CONCLUSION

26   For the foregoing reasons, the Petitioner requests the

27 complete disclosure of all the documents, return of all his

28 //

1  property and damages and seeks equitable remedy and damages to

2  effectuate complete justice.

3          Respectfully submitted on this 17th day of March 2008

4

5                          Arif A. Durrani

6

7                          AFFIDAVIT OF MAILING

8          Arif A. Durrani, hereby attests that pursuant to the

9  rules of the District Court, the preceding petition was enclosed

10 in an envelope, first class postage prepaid and addressed to:

11         Ms. Nancy Mayer-Wittington
           Clerk of the Court
12         333 Constitution Avenue, N.W.
           Washington, D.C. 20001-2866
13
           U.S. Department of Homeland Security
14         Office of the General Counsel
           Washington, D.C. 20538
15
           U.S. Department of State, SA-2
16         Office of Information Programs and Services
           Washington, D.C. 20522-8100
17
           Office Information and Privacy
18         Department of Justice
           1425 New York Avenue, Washington, D.C. 20530
19

20         It is further attested that the envelopes were deposited

21 with the mail room at the Federal Correctional Complex on the

22 17th day of March, 2008.

23

24                         Arif A. Durrani

25

26

27

28

                              - 4 -

ADDENDUM TO PETITION

The Petitioner was arrested and extradited for CR99-470-PA. The proceedings for this case has been terminated in favor of the Petitioner. Under 5 U.S.C. §552(c)(1)(B)(ii),

> the agency may, during only such time as circumstances continues, treat the records as not subject to the requirements of this section.

Therefore, the exemptions of (b)(7)(A) and- should not be applicable to the requested disclosure by the three agencies.



**U.S. Department of Justice**

Office of Information and Privacy

_Telephone: (202) 514-3642_                    _Washington, D.C. 20530_

**FEB 2 6 2008**

Mr. Arif A. Durrani
Register No. 09027-014
Federal Correctional Institution         Re:    Appeal No. 08-0363
Post Office Box 5300                             Request No. 07-2423
Adelanto, CA  92301                              KAH:CL

Dear Mr. Durrani:

        You appealed from the action of the Executive Office for United States Attorneys
(EOUSA) on your request for access to records pertaining to yourself.

        After carefully considering your appeal, I am affirming EOUSA's action on your request.
The records responsive to your request are exempt from the access provision of the Privacy Act
of 1974 pursuant to 5 U.S.C. § 552a(j)(2).  See 28 C.F.R. § 16.81 (2007).  Because these records
are not available to you under the Privacy Act, your request has been reviewed under the
Freedom of Information Act in order to afford you the greatest possible access to them.

        EOUSA properly withheld certain information that is protected from disclosure under the
FOIA pursuant to:

        5 U.S.C. § 552(b)(5), which concerns certain inter- and intra-agency
        communications protected by the attorney work-product and deliberative process
        privileges;

        5 U.S.C. § 552(b)(7)(A), which concerns records or information compiled for law
        enforcement purposes the release of which could reasonably be expected to
        interfere with enforcement proceedings;

        5 U.S.C. § 552(b)(7)(C), which concerns records or information compiled for law
        enforcement purposes the release of which could reasonably be expected to
        constitute an unwarranted invasion of the personal privacy of third parties; and

        5 U.S.C. § 552(b)(7)(D), which concerns records or information compiled for law
        enforcement purposes the release of which could reasonably be expected to
        disclose the identities of confidential sources and information furnished by such
        sources.

-2-

In addition, EOUSA referred twenty-five pages of responsive records to the Department of Homeland Security and two pages of responsive records to the United States Marshals Service for processing and direct response to you. These referrals were proper and in accordance with Department of Justice regulations. See 28 C.F.R. § 16.4(C).

If you are dissatisfied with my action on your appeal, you may file a lawsuit in accordance with 5 U.S.C. § 552(a)(4)(B).

Sincerely,

Janice Galli McLeod
Associate Director

APPENDIX L

## DETAILS OF INVESTIGATION:

On June 13, 2005, SA Bucaro was informed by SSA William "Dale" Edwards, ICE Attach, Mexico City, Mexico of the following: On June 12, 2005, the Government of Mexico detained Arif Ali DURRANI during the Government of Mexico's public safety operation, "Secure Mexico." DURRANI's detention was based on Article 37 of the General Population Law that authorizes the Government of Mexico to remove foreigners who have a criminal history in another country. DURRANI was subsequently transported to Mexico City, processed and deported.

On June 15, 2005, DURRANI was deported from Mexico to Pakistan, his country of birth, through the United States. When DURRANI arrived at Los Angeles International Airport, for a layover and connecting flight to Pakistan, he was taken into custody by ICE agents from RAC/Oxnard and SAC/San Diego, pursuant to an outstanding sealed arrest warrant (CR 99-470) out of the Central District of California. As requested by the United States Attorney's Office, Central District, DURRANI was not interviewed. DURRANI was processed and transported to Metropolitan Detention Center (MDC) in Los Angeles, California by ICE agents from RAC/Oxnard.

The investigation continues.

COLLATERAL REQUESTS:
None at this time.

UNDEVELOPED LEADS:
To be determined by SAC/San Diego.

O F F I C I A L   U S E   O N L Y
THIS DOCUMENT IS LOANED TO YOU FOR OFFICIAL USE ONLY AND REMAINS THE PROPERTY OF THE DEPARTMENT OF HOMELAND SECURITY, ICE. ANY FURTHER REQUEST FOR DISCLOSURE OF THIS DOCUMENT OR INFORMATION CONTAINED HEREIN SHOULD BE REFERRED TO ICE HEADQUARTERS TOGETHER WITH A COPY OF THE DOCUMENT.

REQUESTED BY:  BUCARO, BRIAN R
O F F I C I A L   U S E   O N L Y

| DEPARTMENT OF HOMELAND SECURITY<br>ICE<br><br>R E P O R T   O F   I N V E S T I G A T I O N | 1. TECS ACCESS CODE ██ |
|---|---|
| | 2. PAGE    1 |
| | 3. CASE NUMBER ████████ |

| 4. TITLE: ARIF DURRANI DBA AEROSPACE LOGISTICS SERVICES ET AL. |
|---|

| 5. CASE STATUS:    INTERIM RPT |
|---|

| 6. REPORT DATE<br>070805 | 7. DATE ASSIGNED<br>112904 | 8. CLASS<br>██ | 9. PROGRAM CODE<br>████ | 10. REPORT NO.<br>███ |
|---|---|---|---|---|

| 11. RELATED CASE NUMBERS: ███████████ |
|---|

| 12. COLLATERAL REQ: |
|---|

| 13. TYPE OF REPORT:<br>   INVESTIGATIVE FINDINGS / OTHER INFORMATION |
|---|

| TOPIC: ARREST OF ARIF ALI DURRANI AT LAX |
|---|

14. SYNOPSIS:
AEROSPACE LOGISTICS SERVICES is owned and operated by Arif Ali DURRANI, who
has previously been convicted and incarcerated for three counts of violating
Title 22 U.S.C. 2778, Arms Export Control Act, DURRANI has been a U.S. Customs
fugitive since May 1999, based on a sealed indictment and arrest warrant out
of RAC/Oxnard, for further violations of U.S. export law.

DURRANI has lived in Mexico since 1998 after being declared deportable by INS
in 1995.  On June 12, 2005, Mexican authorities took DURRANI into custody and
subsequently deported him from Mexico to Pakistan through the United States.
ICE agents from RAC/Oxnard and SAC/San Diego arrested DURRANI, pursuant to the
outstanding arrest warrant, at Los Angeles International Airport, where
DURRANI was to connect for a flight to Pakistan.  Contained within are details
as to DURRANI's arrest.

| 15. DISTRIBUTION:<br>SACSD | 16. SIGNATURE: ████████<br>████████████ SPECIAL AGENT |
|---|---|
| | 17. APPROVED: ████<br>████████████ OI GRP SUPERVISOR |
| | 18. ORIGIN OFFICE: SD<br>SAN DIEGO, CA - SAC | 19. TELEPHONE: 619 744 ███ |
| | | 20. TYPIST: ████ |

O F F I C I A L   U S E   O N L Y
THIS DOCUMENT IS LOANED TO YOU FOR OFFICIAL USE ONLY AND REMAINS THE PROPERTY
OF THE DEPARTMENT OF HOMELAND SECURITY, ICE. ANY FURTHER REQUEST FOR
DISCLOSURE OF THIS DOCUMENT OR INFORMATION CONTAINED HEREIN SHOULD BE REFERRED
TO ICE HEADQUARTERS TOGETHER WITH A COPY OF THE DOCUMENT.

O F F I C I A L   U S E   O N L Y

| DEPARTMENT OF HOMELAND SECURITY ICE | 1. PAGE    2 |
|---|---|
| R E P O R T   O F   I N V E S T I G A T I O N   C O N T I N U A T I O N | 2. CASE NUMBER ▮ |
| | 3. REPORT NUMBER: ▮ |

**DETAILS OF INVESTIGATION:**

On June 13, 2005, SA ▮ was informed by SSA ▮ ICE Attach, Mexico City, Mexico of the following:  On June 12, 2005, the Government of Mexico detained Arif Ali DURRANI during the Government of ▮ DURRANI's detention was based on Article 37 of the General Population Law that authorizes the Government of Mexico to remove foreigners who have a criminal history in another country.  DURRANI was subsequently transported to Mexico City, processed and deported.

On June 15, 2005, DURRANI was deported from Mexico to Pakistan, his country of birth, through the United States.  When DURRANI arrived at Los Angeles International Airport, for a layover and connecting flight to Pakistan, he was taken into custody by ICE agents from RAC/Oxnard and SAC/San Diego, pursuant to an outstanding sealed arrest warrant (CR 99-470) out of the Central District of California.  As requested by the United States Attorney's Office, Central District, DURRANI was not interviewed.  DURRANI was processed and transported to Metropolitan Detention Center (MDC) in Los Angeles, California by ICE agents from RAC/Oxnard.

The investigation continues.

**COLLATERAL REQUESTS:**
None at this time.

**UNDEVELOPED LEADS:**
To be determined by SAC/San Diego.

O F F I C I A L   U S E   O N L Y
THIS DOCUMENT IS LOANED TO YOU FOR OFFICIAL USE ONLY AND REMAINS THE PROPERTY OF THE DEPARTMENT OF HOMELAND SECURITY, ICE. ANY FURTHER REQUEST FOR DISCLOSURE OF THIS DOCUMENT OR INFORMATION CONTAINED HEREIN SHOULD BE REFERRED TO ICE HEADQUARTERS TOGETHER WITH A COPY OF THE DOCUMENT.

APPENDIX M

REQUESTED BY:  ████████████  *K2 617c*

O F F I C I A L   U S E   O N L Y

| | |
|---|---|
| DEPARTMENT OF HOMELAND SECURITY ICE | TECS ACCESS CODE ████ |
| SIGNIFICANT ACTIVITY REPORT | PAGE   1 |
| | CASE NUMBER: ████████ |

CASE TITLE: ARIF ALI DURRANI ETAL..

SHORT TITLE:
   ARREST OF ARIF ALI DURRANI, ICE FUGITIVE AND DEPORTATION THROUGH
   THE UNITED STATES.

| REPORT DATE/TIME 061505   2007 | DATE ASSIGNED 101304 | CLASS | PROGRAM CODE | SAR NUMBER ████ |
|---|---|---|---|---|

SAS NUMBER: 2005AR001855801     | SEAR NUMBER:

RELATED CASE: SD03IR05SD0003

FOR ADDL INFO CONTACT: ███████████████
   TITLE: SENIOR SPEC AGENT          PHONE: ██████████

LEVEL OF SENSITIVITY/IMPORTANCE:
   OF INTEREST TO ICE DIRECTOR OF INVESTIGATIONS

PUBLICITY INSTRUCTIONS/RESTRICTIONS:   - REG. PUBLIC AFFAIRS

DISTRIBUTION (EMAIL):

*K2 617c*

| APPROVING OFFICIALS: | | |
|---|---|---|
| LOC  - ████████████ | SENIOR ICE REPRESENTATIVE | DATE: 061505 |
| SAC/CA- ████████████ | ICE ASST ATTACHE | DATE: 061605 |
| HQ   - | OI PROGRAM MANAGER | DATE: 062105 |

| DISTRIBUTION: CAMX  SCRTJ HQFG  HQEX SACSD | SIGNATURE: ██████████████  SENIOR SPEC AGENT |
|---|---|
| | APPROVED: ██████████████  SENIOR ICE REPRESENT |
| ORIGINAL OFFICE: TJ TIJUANA - SIR | TELEPHONE: ██████████ |
| | TYPIST: ██████████ |

O F F I C I A L   U S E   O N L Y

THIS DOCUMENT IS LOANED TO YOU FOR OFFICIAL USE ONLY AND REMAINS THE PROPERTY OF

THE DEPARTMENT OF HOMELAND SECURITY, ICE.  ANY FURTHER REQUEST FOR DISCLOSURE OF THIS DOCUMENT OR INFORMATION CONTAINED HEREIN SHOULD BE REFERRED TO ICE HEADQUARTERS TOGETHER WITH A COPY OF THE DOCUMENT.

O F F I C I A L   U S E   O N L Y

| DEPARTMENT OF HOMELAND SECURITY ICE | TECS ACCESS CODE |
|---|---|
| SIGNIFICANT ACTIVITY REPORT | PAGE   2 |
| C O N T I N U A T I O N | CASE NUMBER: <br> SAR NUMBER: |

CASE PROGRAM CODES:

977 FOREIGN INTELLIGENCE   521 MEXICO BI-LATERAL IN

O F F I C I A L   U S E   O N L Y
THIS DOCUMENT IS LOANED TO YOU FOR OFFICIAL USE ONLY AND REMAINS THE PROPERTY OF
THE DEPARTMENT OF HOMELAND SECURITY, ICE. ANY FURTHER REQUEST FOR DISCLOSURE OF
THIS DOCUMENT OR INFORMATION CONTAINED HEREIN SHOULD BE REFERRED TO ICE
HEADQUARTERS TOGETHER WITH A COPY OF THE DOCUMENT.

O F F I C I A L   U S E   O N L Y

| DEPARTMENT OF HOMELAND SECURITY ICE | TECS ACCESS CODE ▮ |
|---|---|
| SIGNIFICANT ACTIVITY REPORT | PAGE      3 |
| C O N T I N U A T I O N | CASE NUMBER: ▮<br>SAR NUMBER: ▮ |

On 09/30/2004, the Senior ICE Representative Tijuana Office  (SIR/TJ) in conjunction with the Tijuana, Mexico, Mexican National Intelligence Agency (CISN), initiated an investigation into the illicit activities of a Pakistani National identified as Arif Ali DURRANI ETAL, who resided in Rosarito, Mexico.

It was later discovered that the investigation focused into violations of the Arms Export Control Act by the SAC/San Diego Strategic group (SAC/SDSG). A joint international investigation commenced with the cooperation of SAC/SD Strategic Group, SIR/TJ and CISN. The investigation focused on the identification of DURRANI's associates, businesses and method of operation.

The investigation lead to the identification of ▮▮▮▮▮ and ▮▮▮ ▮▮▮▮▮ DURRANI and ▮▮▮ were identified as being business associates with businesses in Rosarito, Mexico. It was also discovered that DURRANI and ▮▮▮ have active outstanding arrest warrants from the U.S., and an extensive criminal history. DURRANI was convicted and subsequently deported to France on charges stemming from Violations of the Munitions Control Act.

| DURRANI:<br>Warrant: | Current outstanding ICE-NCIC Warrant ▮▮▮▮▮ of |
|---|---|
| | 05/07/1999, Charges for Weapons Offense Case (CR-99-470). |
| | 1: 1986-10-03/US Customs-New Haven: Violation of Control Act<br>2: 1987-06-17/US Customs-Phoenix: 3 Counts: Exporting Restricted Munitions Without a license (10 year confinement). Mandatory release on 1992/09/01. |
| | USINS Deportation Proceeding: 1998-Deported to France. |

DURRANI was detained by Mexican Federal Investigative Agency and Immigration Institute (INM) on Sunday June 12, 2005 at about 1600 hours during ▮▮▮▮▮ ▮▮▮▮▮ DURRANI was then transported to Mexico City INM headquarters. ICE Attache coordinated with th Mexican authorities for the deportation of DURRANI, who was placed on a flight to Pakistan on June 15, 2005. The flight itinerary had two stop overs in U.S. soil, with the first stop being at LAX. SAC/SD coordinated with SAC/LA for the arrest of DURRANI on his stop over at the LAX airport.

O F F I C I A L   U S E   O N L Y

THIS DOCUMENT IS LOANED TO YOU FOR OFFICIAL USE ONLY AND REMAINS THE PROPERTY OF THE DEPARTMENT OF HOMELAND SECURITY, ICE.  ANY FURTHER REQUEST FOR DISCLOSURE OF THIS DOCUMENT OR INFORMATION CONTAINED HEREIN SHOULD BE REFERRED TO ICE HEADQUARTERS TOGETHER WITH A COPY OF THE DOCUMENT.

O F F I C I A L   U S E   O N L Y

| DEPARTMENT OF HOMELAND SECURITY ICE | TECS ACCESS CODE ▓ |
|---|---|
| SIGNIFICANT ACTIVITY REPORT | PAGE    4 |
| C O N T I N U A T I O N | CASE NUMBER: ▓ |
| | SAR NUMBER: ▓ |

SIR/TJ continues coordination with the local L.E. autorities to find and
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

K242c

O F F I C I A L   U S E   O N L Y

THIS DOCUMENT IS LOANED TO YOU FOR OFFICIAL USE ONLY AND REMAINS THE PROPERTY OF THE DEPARTMENT OF HOMELAND SECURITY, ICE.  ANY FURTHER REQUEST FOR DISCLOSURE OF THIS DOCUMENT OR INFORMATION CONTAINED HEREIN SHOULD BE REFERRED TO ICE HEADQUARTERS TOGETHER WITH A COPY OF THE DOCUMENT.

APPENDIX N

Client: _Durrani_

Contact: Wm Cole, AUSA in SanDiego Phone No: _____    Date: 7/14   Time: 3

(1) Party – Called: ✓   Returned Call: ___   Left Message: ___    Interview/Meeting: ____

his work on an investigation in SanDiego
   & more recent activity
      wanted to open up a dialogue w: possible
      pre-ind disposition &
      possible coop.

Since 99, their inv. has been involved in numerous import of defense
stuff

   very well aware of
      Rich Tobin          } detailed transaxual history of
      Charles Budsings    ( him directz activity
                                    ↓
   know ab A37b                    including blades
      fighter aircraft

   know rot forging JBS parts — or att. forging

   escrow records of Mirchips
      Aerospace
      coastal ctz invest.
         & money transfer.
            to buy articles.

no ind. yet → possible indictment
looking til end of Aug = window to discuss this period.
if inclined + work this out cd do that

his supplying things overseas
cd provide assistance w/ ppl in U.S. + overseas

Client: _Aurora_

Contact: _____ Phone No: _____ Date: _____ Time: ____

I/Party – Called: ___ Returned Call: ___ Left Message: ___ . Interview/Meeting: _____

wd start w/ proffer
cd pressure into the
possibility of s/g prison like cells → but might be futile

knows sm associates are aware of arrest
not sure all

N: bond — might end up in immig custody?
not sure
pretty reluctant abt bond
not inclined at this pt
but if really impressed cd
the bells individually stayed out
⇒ he belvs mex govt lie back →

√ news articles

che has a laurel, he may want to fight

UNITED STATES
CASE NO.

| DATE | TIME | EVENT | NOTES |
|---|---|---|---|
| 8-9 | | (619) 557-7859 | I called Asst William Cole in S.D.; he advised Δ is a target in Southern District, arms dealer operating non stop since arrived in MX; interested in talking to Δ. |
| 8-15 | | | I spoke w/ Asst; Bill Crawford; advised client not interested in cooperating & this is a likely trial |
| | | | I called Cole & advised the same |
| 9-19 | 12:00 | (805) 583-4405 x124 | I left message for Case agent Desmond Gibson; request a return call to set up date/time to review discovery in his office |
| | 3:30 | | Spoke w/ Crawford re discovery; he advised that Cirule was subpoenaed but no documents received; Fed Ex also had no documents; docs kept at WTC & no longer exist. Presently dealing w/ Cirule new Company |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

APPENDIX O

1  DEBRA WONG YANG
   United States Attorney
2  THOMAS P. O'BRIEN
   Assistant United States Attorney
3  Chief, Criminal Division
   WILLIAM A. CROWFOOT (SBN 134173)
4  Assistant United States Attorney
        1300 United States Courthouse
5       312 North Spring Street
        Los Angeles, California 90012
6  Telephone: (213) 894-4465
   Facsimile: (213) 894-6436
7  Email: william.crowfoot@usdoj.gov

8  Attorneys for Plaintiff
   United States of America

9

10              UNITED STATES DISTRICT COURT

11         FOR THE CENTRAL DISTRICT OF CALIFORNIA

12

13  UNITED STATES OF AMERICA,    )  No. CR 99-470-PA
                                 )
14              Plaintiff,       )  GOVERNMENT'S EX PARTE APPLICATION
                                 )  FOR LEAVE OF COURT TO DISMISS
15              v.               )  INDICTMENT PURSUANT TO FED. R.
                                 )  CRIM. P. 48(a)
16  ARIF DURRANI,                )
                                 )
17              Defendant.       )
                                 )
18                               )
                                 )
19                               )

20       Plaintiff, United States of America, pursuant to Fed. R.

21  Crim. P. 48(a), hereby moves ex parte for leave of court to

22  dismiss with prejudice the above-captioned indictment.

23       This application is based upon the attached memorandum of

24  points and authorities, the files and records in this case, and

25  ///

26

27

28



FILED
CLERK, U.S. DISTRICT COURT
SEP 23 2005
CENTRAL DISTRICT OF CALIFORNIA
BY                    DEPUTY

Priority ____
Send     ____
Enter    ____
Closed   ____
JS-5/JS-6 ____
JS-2/JS-3 ____
Scan Only ✓

ENTER ON CMS
SEP 26 2005

1 | any such additional evidence or argument as may be presented at

2 | any hearing on this application.

3 | Dated: September 23, 2005  Respectfully submitted,

4 |                              DEBRA WONG YANG
                               United States Attorney

5 |

6 |                              THOMAS P. O'BRIEN
                               Assistant United States Attorney
                               Chief, Criminal Division

7 |

8 |

9 |                              WILLIAM A. CROWFOOT

10|                             Assistant United States Attorney

11|                                  Attorneys for Plaintiff
                                   United States of America

12|

13|

14|

15|

16|

17|

18|

19|

20|

21|

22|

23|

24|

25|

26|

27|

28|

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## DISCUSSION

The Indictment charges defendant with two counts of exporting defense articles, namely, J-85 jet engine compressor blades, without having a license, in violation of 22 U.S.C. § 2778(b)(2) and (c), and 22 C.F.R. §§ 127.1(d) and 127.3. Defendant and his company did not have or obtain export licenses for the defense articles in question, as correctly alleged in the indictment.  In the course of preparing this case for trial, the government has learned that the purchaser of those goods did in fact have such export licenses and that, therefore, no further licenses were required.  Although, defendant, as a debarred person, was not permitted to participate directly or indirectly in the export of defense articles at the time of the transaction, defendant was not charged with that specific offense.[1]

In considering whether to grant the government leave to dismiss an indictment with prejudice pursuant to Rule 48(a), the Ninth Circuit has instructed that:

> Separation of power concerns generally
> require a district court to defer to the

_____

[1] At the time of the transaction, defendant was prohibited from exporting or causing the export of defense articles as a result of having been debarred.  The debarment resulted from defendant's 1987 conviction.  In April 1987 a jury found defendant guilty of three counts of violating the Arms Export Control Act, 22 U.S.C. § 2778(a)(2) and (c), namely, two counts of attempting to export arms without a license and one count of failing to register as an arms exporter with the State Department's Office of Munitions Control.  The conviction was affirmed on appeal.  See United States v. Durrani, 835 F.2d 410 (1987).

1

1       government's decision to seek dismissal of a

2       criminal charge because a denial of the

3       motion would represent an intrusion upon

4       prosecutorial prerogative. [citation

5       omitted].   The decision to dismiss an

6       indictment implicates concerns that the

7       Executive is uniquely suited to evaluate, and

8       a district court should be reluctant to deny

9       its request.

10 United States v. Gonzalez, 58 F.3d 459, 462 (9th Cir. 1995); see

11 also id. at 461 ("In light of the history and purpose of Rule

12 48(a), we have . . . required district judges entertaining such

13 requests [for leave to dismiss] to grant considerable deference

14 to the prosecutor"); id. ("the district court's discretion to

15 deny leave is limited"); United States v. Hayden, 860 F.2d 1483,

16 1487 (9th Cir. 1988)("While the judiciary has been authorized to

17 supervise prosecutorial decisions to dismiss, Rule 48(a) was not

18 enacted for the purpose of usurping the traditional role of the

19 prosecutor to determine whether to terminate a pending

20 prosecution").   This principle holds especially true in cases

21 where the request for leave to dismiss is uncontested.   See

22 Gonzalez, 58 F.3d at 461 ("a district court may deny an

23 uncontested request only 'in extremely limited cases . . .' when

24 the prosecutor's actions clearly indicate a betrayal of the

25 public interest'") (quoting United States v. Welborn, 849 F.2d

26 980, 983 n.2 (5th Cir. 1988)).

27

28

III.

## CONCLUSION

For the foregoing reasons, the government respectfully requests leave to dismiss the pending indictment in this case with prejudice.

Dated: September 23, 2005

Respectfully submitted,

DEBRA WONG YANG
United States Attorney

THOMAS P. O'BRIEN
Assistant United States Attorney
Chief, Criminal Division

WILLIAM A. CROWFOOT
Assistant United States Attorney

Attorneys for Plaintiff
United States of America

3

<u>CERTIFICATE OF SERVICE BY MAIL</u>

I, MONICA MORALES-GUZMAN, declare:

That I am a citizen of the United States and resident or employed in Los Angeles County, California; that my business address is Office of United States Attorney, United States Courthouse, 312 North Spring Street, Los Angeles, California 90012; that I am over the age of eighteen years, and am not a party to the above-entitled action;

That I am employed by the United States Attorney for the Central District of California who is a member of the Bar of the United States District Court for the Central District of California, at whose direction the service by mail described in this certificate was made; that on September 23, 2005, I deposited in the United States mail in the United States Courthouse at 312 North Spring Street, Los Angeles, California, in the above-entitled action, in an envelope bearing the requisite postage, a copy of:

**GOVERNMENT'S EX PARTE APPLICATION FOR LEAVE OF COURT TO DISMISS INDICTMENT PURSUANT TO FED. R. CRIM. P. 48(a).**

Addressed to:

**MOHAMMAD NADIM, ESQ.**
**1541 OCEAN AVE.**
**SANTA MONICA, CA 90401-2104**

at _HIS_/HER/THEIR known address, at which place there is a delivery service by United States mail.

This Certificate is executed on September 23, 2005, at Los Angeles, California.

I certify under penalty of perjury that the foregoing is true and correct.

MONICA M. MORALES-GUZMAN
LEGAL SECRETARY

APPENDIX P

1  Arif A. Durrani
   Reg. No. 09027-014
2  Federal Correctional Complex
   Victorville I
3  Adelanto, CA 92301

4

5

6

7

8                  UNITED STATES DISTRICT COURT

9                 CENTRAL DISTRICT OF CALIFORNIA

10  UNITED STATES OF AMERICA,           CASE No. CR 99-470-PA

11           Plaintiff,
                                        (PROPOSED) ORDER
12        v.                            CERTIFICATE OF INNOCENCE

13  ARIF A. DURRANI,

14           Defendant.

15  ────────────────────────────

16        Upon motion of the United States of America, the court

17  HEREBY DISMISSES with prejudice the above - captioned indictment

18  for the following reasons:

19        a) The defendant was arrested in Mexico on June 12,

20  2005. He was surrendered by Mexico and extradited to the United

21  States on June 15, 2005. He was arrested by U.S. Deputy Marshal,

22  Reyes, in Mexico city, and brought to Los Angeles, California.

23        b) The export license was issued prior to May 18, 1994,

24  and was in the government files. No offense was committed by

25  the defendant or anyone else against the United States.

26  /

27  //

28   ///

1          c) The documents and property seized based on this

2   indictment from the defendant must be returned by the

3   government, nunc pro tunc to September 23, 2005. No aspects of

4   these seizures be used for any other purposes by the government.

5          d) The government must inform the government of Mexico,

6   the defendant did not commit any offense against the United

7   States for which the surrender was secured. The immigration

8   status of the defendant be restored.

9

10  Dated:_____     _____
                              THE HON. PERCY ANDERSON
11                            United States District Judge

12
    Presented by:
13

14  _____
    Arif A. Durrani,
15  Defendant

16  //

17

18

19

20

21

22

23

24

25

26

27

28
                              - 2 -

APPENDIX Q



**LIMITED OFFICAL USE**
**UNITED STATES MARSHALS SERVICE**
**PRISONER TRACKING SYSTEM**
**DISTRICT OF CENTRAL DISTRICT OF CALIFORNIA**
**DISTRICT: 12 OFFICE: ROY**
**INDIVIDUAL CUSTODY AND DETENTION REPORT USM 129**
**NAME: DURRANI, ARIF ALI**
**USMS NUMBER: 09027014**

## I. IDENTIFICATION DATA

NAME: DURRANI, ARIF ALI

| USMS NUMBER: 09027014 | | PHONE: |
| ADDRESS: EXTRADITION FROM MEXICO , XX | | POB: PAKISTAN, XX |
| DOB: 08/14/1949 | AGE: 58 | |

| SEX: M | RACE: W | HAIR: BLK | EYE: BRO | HEIGHT: 511 | WEIGHT: 180 |
| SSN: | | FBI NBR: 447572FA5 | | ALIEN NBR: A21763558 | |

| *** SPECIAL HANDLING CODE | SPECIAL HANDLING REMARK |
| | HIGH BLOOD PRESSURE |
| MED | SUBJ. TAKES ACCUPRIL FOR HEART MURMUR |
| MED | |

| DETAINER DATE | ACTIVE | AGENCY | REMARK |
|---|---|---|---|
| 06/15/2005 | N | CUSTOMS & BORDER PROTECTION | |

| PRISONER ALIAS | ALIAS REMARK |
|---|---|
| NONE | |

| GENERAL REMARKS |
| ARRESTING AGENT ████████████  b7C, j2 |
| BODY HELD OVER DUE TO OUTSTANDING S/CA CASE |

## II. CASE INFORMATION

| CTR | STATUS | COURT CASE NUMBER | FEDERAL COURT CITY | JUDGE | US ATTORNEY | DEFENSE ATTORNEY |
|---|---|---|---|---|---|---|
| 1 | RL-DISMSB | CR 99-740. | LOS ANGELES | | | |
| 2 | RL-WOR | 05-2011M | LOS ANGELES | | | |

| CTR | ARREST DATE | ARRESTING AGENCY | ARREST LOCATION | WARRANT NUMBER |
|---|---|---|---|---|
| 1 | 06/15/2005 | U.S. MARSHALS SERVICE | MEXICO | C/CA |
| 2 | 09/26/2005 | U.S. MARSHALS SERVICE | ROYBAL FED BUILDING LACA | S/CA |

| CTR | OFFENSE CODE | OFFENSE | REMARK | DISPOSITION |
|---|---|---|---|---|
| 1 | 2699 | FRAUD | 22 USC 2778 EXPORTING DEFENSE ARTICLES W/O LICENSE | CHARGES DISMISSED/DROPPED |
| 2 | 4808 | COMPOUNDING CRIME | 22 USC 2278 CONSPIRACY/ ARMS CONTROL ACT | UNKNOWN |

## III. STATUS HISTORY

23

APPENDIX R



[TRANSLATION]

NATIONAL INSTITUTE FOR MIGRATION
COORDINATION OF MIGRATORY CONTROL
AND VERIFICATION

OFFICIAL LETTER NO.   4220

RE: ASSIGNMENT LETTER

Mexico City, June 14, 2005

▮▮▮▮▮▮▮▮▮▮▮
FEDERAL MIGRATION AGENT
EMPLOYEE NO. ▮▮▮▮▮▮▮▮▮▮▮▮▮

*K Z617c*

▮▮▮▮▮▮▮▮▮▮▮
FEDERAL MIGRATION AGENT
EMPLOYEE No. ▮▮▮▮▮▮▮▮▮▮

I HEREBY INFORM YOU THAT YOU HAVE BEEN DESIGNATED TO CARRY OUT THE
ASSIGNMENT WHOSE DETAILS ARE PRESENTED BELOW:

PLACE:          Mexico City   Miami, Florida, USA        London, England
                Miami, Florida, USA        Mexico City

PERIOD:         FROM THE 15ᵀᴴ TO THE 17ᵀᴴ OF JUNE, 2005

OBJECTIVE:      CARRYING OUT THE TRANSFER, CUSTODY AND REMOVAL OF
                ALIEN ARIF DURRANI, PAKISTANI NATIONAL.

IN KEEPING WITH THE ABOVE, YOU SHOULD APPLY FOR THE CORRESPONDING PER DIEM
PAYMENTS AND INTERNATIONAL TICKETS, WHICH WILL BE CHARGED AGAINST THE
ADMINISTRATIVE UNIT'S BUDGET IN RELATION TO PROJECT PO55 ENTITLED THE
DOCUMENTING AND REGULARIZATION OF THE ENTRY, STAY AND EXIT OF FOREIGNERS.

I REMIND YOU OF THE COMMITMENT AND OBLIGATION TO SUBMIT AN ACCOUNT OF THE
FUNDS RECEIVED NO LATER THAT THREE WORKING DAYS AFTER THE ASSIGNMENT IS
CONCLUDED.

SINCERELY YOURS,


THE ADMINISTRATOR

HECTOR EDUARDO ZELONKA VALDES

APPENDIX S

COPY

1   CAROL C. LAM
    United States Attorney
2   WILLIAM P. COLE
    Assistant United States Attorney
3   California State Bar No. 186772
    Federal Office Building
4   880 Front Street, Room 6293
    San Diego, California 92101-8893
5   Telephone: (619) 557-7859

6   Attorneys for Plaintiff
    United States of America
7

8                    UNITED STATES DISTRICT COURT

9                  SOUTHERN DISTRICT OF CALIFORNIA

10                   (HONORABLE LARRY A. BURNS)

11   UNITED STATES OF AMERICA,          )    Crim. Case No. 05CR1746-LAB
                                        )
12                      Plaintiff,      )    GOVERNMENT'S RESPONSE AND
                                        )    OPPOSITION TO DEFENDANT'S
13          v.                          )    MOTIONS FOR:
                                        )
14   ARIF ALI DURRANI,                  )    1)  AN ORDER OF DISMISSAL OF THE
                                        )        INDICTMENT;
15                      Defendant.      )    2)  AN ORDER SUPPRESSING
                                        )        EVIDENCE ILLEGALLY SEIZED ON
16                                      )        JUNE 22, 2005;
                                        )    3)  AN ORDER DIRECTING THE
17                                      )        GOVERNMENT TO PRODUCE
                                        )        GRAND JURY TRANSCRIPTS; AND
18                                      )    4)  AN ORDER DIRECTING THE
                                        )        GOVERNMENT TO PRODUCE
19                                      )        DOCUMENTS REQUESTED
                                        )
20                                      )    TOGETHER WITH STATEMENT OF
                                        )    FACTS, MEMORANDUM OF POINTS
21                                      )    AND AUTHORITIES, AND THE
                                        )    GOVERNMENT'S NOTICE OF MOTION
22                                      )    AND MOTION FOR RECIPROCAL
                                        )    DISCOVERY
23                                      )
                                        )    Date:     November 28, 2005
24                                      )    Time:     2:00 p.m.
                                        )
25                                      )

26          COMES NOW Plaintiff United States of America, by and through its counsel, Carol C. Lam,

27   United States Attorney, and William P. Cole, Assistant U.S. Attorney, and files it Response and

28   Opposition to Defendant's above-referenced motions and moves for reciprocal discovery.  The

1 | opposition and motion are based upon the files and records of the case together with the following

2 | statement of facts and memorandum of points and authorities.

**I**

**STATEMENT OF FACTS**

A.    **The Arms Export Control Act**

The Arms Export Control Act (22 U.S.C. § 2778) authorizes the President of the United States to control the export of "defense articles" by designating items, such as military aircraft and military aircraft components, on the United States Munitions List.

Munitions List items are classified by category at 22 C.F.R. § 121.1. Category VIII of the United States Munitions List covers military aircraft and associated equipment. Specifically, Category VIII(a) covers military aircraft which are specifically designed, modified or equipped for military purposes. Category VIII(b) covers military aircraft engines (except reciprocating engines) specifically designed or modified for the aircraft described in Category VIII(a). Likewise, Category VIII(h) designates as defense articles any "[c]omponents, parts, accessories, attachments, and associated equipment specifically designed or modified for the articles in paragraphs (a) through (e)" of Category VIII. 22 C.F.R. § 121.1, Category VIII(h).

To engage in the business of exporting defense articles or defense services, persons must be registered with the Department of State, Directorate of Defense Trade Controls (formerly "Office of Defense Trade Controls"), and must apply for and receive validated licenses or other approvals from the Department of State to export the defense articles. See 22 C.F.R. §§ 122.1(a), 123.1(a). Foreign persons (other than governments) are not eligible to receive export licenses. 22 C.F.R. § 120.1(c).

Any application for an export license may be disapproved whenever an applicant, any party to the export agreement, or any person who has a significant interest in the transaction has been debarred, suspended, or is otherwise ineligible to receive an export license or other authorization from any agency of the United States government. 22 C.F.R. § 126.7(a)(6).

//

//

//

2                                    05cr1746-LAB

**B.    Durrani's Criminal and Immigration History**

Durrani was born in Pakistan in 1949. [Decl. of William P. Cole, Exhibit 1 ("Application for Status as Permanent Resident").] He immigrated to the United States and gained lawful permanent resident status in 1978.

In 1986, Durrani applied for naturalization. However, in October 1986 -- while not yet naturalized -- he was arrested and indicted for illegally exporting, and attempting to export, HAWK missile system components intended for Iran. In 1987, he was convicted in the District of Connecticut on three counts of violating the Arms Export Control Act.[1] He was sentenced to 10 years in prison, but was paroled after serving about 5 years in custody.

In July 1988, as a result of his conviction, the United States government statutorily debarred Durrani from receiving export licenses, as reported at 53 Federal Register 27097-27098, July 18, 1988. Durrani remains on the United States Department of State, Directorate of Defense Trade Controls' List of Statutorily Debarred Parties, which list is accessible to the public through the Directorate of Defense Trade Controls' website.

Durrani's crimes also cost him his lawful permanent resident status. He tried to avoid deportation by applying for political asylum. [Cole Decl., Exhibit 2 ("Application for Asylum and for Withholding of Deportation").] However, in 1995, his request for political asylum was denied, and he was ordered deported from the United States. [Cole Decl., Exhibit 3 ("Decision and Order of the Immigration Judge").]

Notably, during his deportation proceedings before the Immigration Judge, Durrani admitted under oath that his arrest derailed his attempt to naturalize:

Q.    Did you ever apply for naturalization?

A.    Yes, I did.

Q.    And, what happened to that application?

A.    Everything was completed and the only thing left was that I had to take that final oath in the stadium to complete that.

---

[1]    For background regarding Durrani's 1986 arrest and subsequent conviction, see United States v. Durrani, 835 F.2d 410 (2d Cir. 1987), and Durrani v. United States, 294 F. Supp. 2d 204 (D. Conn. 2003).

05cr1746-LAB

1    Q.    And, why -- did you take that oath?

2    A..   No, I did not.

3    Q.    Why not?

4    A.    Because I was arrested at -- prior to that.  I guess

5    (indiscernible).

6    JUDGE TO MR. DURRANI:  You're going to have to speak up, Mr.

7    Durrani.

8    A.    I was arrested prior to actual ceremony in the stadium.

9    [Deportation Proceedings held September 29, 1993.][2/]

10    Although ordered deported in 1995, Durrani didn't actually leave the United States until 1998

11    (after an unsuccessful appeal to the Fifth Circuit).  He soon settled in Rosarito Beach, Mexico.

12    **C.    Durrani is Indicted in the Central District of California**

13    In 1999, a grand jury returned an Indictment against Durrani charging him with two counts of

14    violating the Arms Export Control Act in connection with the export of turbine engine compressor

15    blades to Jordan in 1994.  [Cole Decl., Exhibit 4 (Warrant for Arrest and Indictment).]  By this time,

16    Durrani was already in Mexico.

17    **D.    Durrani Continues His Illegal Arms Export Business from Mexico**

18    From Mexico, Durrani continued to engage in the illegal export of defense articles from the

19    United States through U.S.-based co-conspirators named George Charles Budenz II and Richard

20    Tobey.  Doing business as Aerospace Logistics Services, Durrani received orders from foreign

21    clients for military aircraft parts designated on the United States Munitions List.  Often, these orders

22    were for components of the General Electric J85 turbine jet engine, which powers the F-5 military

23    fighter aircraft and the T-38 military trainer aircraft.

24    After receiving an order, Durrani would task Budenz or Tobey with locating, purchasing

25    and/or accepting delivery of aircraft components.  Durrani would then provide Budenz and Tobey

26    with instructions to export the parts from the United States, often also instructing them to falsify

27    _____

28    [2/]    The Government is in possession of a certified copy of the tape of the September 29, 1993 proceedings.  The Government will have the certified copy available at the November 28, 2005 motion hearing.

1    invoices or other shipping documents associated with the exports. Durrani funded Budenz and

2    Tobey with cash and wire transfers from Mexican bank accounts held in the names of Durrani's

3    businesses, Aerospace Logistics Services and Coastal Cities Investments. Neither Budenz nor Tobey

4    (much less Durrani) ever obtained any export licenses from the Department of State.

5         Although Durrani orchestrated many illegal exports, the Government will provide just a few

6    examples here. On July 1, 2004, at Durrani's written instruction, Tobey exported from the United

7    States to the United Arab Emirates a cockpit canopy for the T-38 military trainer aircraft.[3] The

8    export filled a purchase order received by Durrani from a foreign client. No license was obtained for

9    this export.

10        In December and January 2005, Budenz exported from the United States to Malaysia T-5

11   amplifiers used on the J85 turbine jet engine. Even though Durrani sold the amplifiers for $45,000 a

12   piece, he instructed Budenz to describe the amplifiers on the shipping documents as worth only

13   $400. No licenses were obtained for these exports.

14        On January 27, 2005, on behalf of Durrani, Budenz exported to Malaysia nine nozzles for the

15   Honeywell T-55 engine, which powers the CH-47 "Chinook" helicopter. The export was part of an

16   extended transaction between Durrani, another foreign parts broker, and Iran Aircraft Industries.

17   Durrani sold the nozzles for $48,600 a piece. Again, no license was obtained for this export.

18        E.   **Mexico Deports Durrani**

19        On or about June 15, 2005, the Mexican government deported Durrani from Mexico.

20   Durrani's air travel from Mexico City to Karachi, Pakistan included a stop in Los Angeles.[4] Durrani

21   was accompanied on the flight from Mexico City to Los Angeles by a Mexican immigration official.

22   Two United States Marshals also were on the flight.[5] Contrary to Durrani's assertion, no federal

23

24

25

26        [3]   The T-38 is used to train fighter pilots. It is similar to the F-5.

27        [4]   Durrani's travel itinerary provided for air travel from Mexico City to Karachi, Pakistan,
     via Los Angeles, Houston, Toronto, London, and Dubai.
28

          [5]   Durrani was not the only fugitive on the flight.

                                          5                              05cr1746-LAB

1  agents "kidnaped" him.[9]  The United States Marshals on the flight were not even armed.  When

2  Durrani arrived at LAX, federal agents arrested him on the warrant arising from the 1999 indictment

3  out of the Central District of California.  [Cole Decl., Exhibit 4.]  Proceedings commenced against

4  Durrani in Los Angeles.  However, on or about September 23, 2005, the United States Attorney's

5  Office for the Central District of California moved to dismiss the 1999 indictment.  [Cole Decl.,

6  Exhibit 5 ("Government's Ex Parte App. for Leave of Court to Dismiss Indictment Pursuant to Fed.

7  R. Crim. P. 48(a)").]

8        F.    **Agents Obtain Records and Other Evidence from
              Durrani's Residence and Storage Facility in Mexico**

9

10        On June 22, 2005, several ICE agents traveled to the residence of Durrani's wife, Suzanne

11  Stehr, in Rosarito Beach, Mexico.  There, Stehr told the agents that she did not want to be involved

12  in Durrani's situation, and that she was in the process of moving his possessions out of his residence

13  and into storage.  She also told the agents that Durrani had aircraft parts at a nearby factory.  The

14  agents asked for Stehr's consent to search her residence, Durrani's residence, and the factory.  Stehr

15  consented.  She gave the agents written consent to take aircraft parts, documents, and computers

16  belonging to her and/or Durrani.  She accompanied the agents to Durrani's residence, which was

17  nearby.  She used a key in her possession to open the door and let agents into Durrani's residence.

18  The agents then went to Durrani's factory, where they seized numerous military aircraft parts.

19        Stehr told the agents that she also had Durrani's laptop computer.  About two days later,

20  Stehr willingly gave the laptop to ICE Special Agent Richard Federico.

21        G.    **The Indictment**

22        On September 23, 2005, United States Magistrate Judge Barbara L. Major issued an arrest

23  warrant for Durrani on a felony Complaint filed that same day in this district.  The Complaint

24  charged Durrani with conspiracy to violate the Arms Export Control Act, alleging overt acts taking

25  place in 2004 and 2005.  Durrani was arrested on the warrant on September 26, 2005.  On September

26

27  _____

        [9]    Durrani's penchant for creative stories and allegations is nothing new. The district judge
    who presided over Durrani's criminal case in Connecticut observed that the record revealed that Durrani

28  "'on several occasions has committed or has caused to be committed falsehoods in the pre-trial, trial and
    post-trial proceedings in this matter, reflecting a complete disdain for the law and this Court.'" Durrani
    v. United States, 294 F. Supp. 2d 204, 208 (D. Conn. 2003).

1 | 29, 2005, a federal grand jury sitting in the Southern District of California returned a five-count

2 | Indictment charging Durrani with conspiracy to violate the Arms Export Control Act, in violation of

3 | 18 U.S.C. § 371, and four counts of violating the Arms Export Control Act, in violation of 22 U.S.C.

4 | § 2778(b)(2) and (c), and 22 C.F.R. §§ 121.1, 123.1, and 127.1. On October 5, 2005, a magistrate

5 | judge in Los Angeles ordered Durrani's removal to this district.

6 |    **H.    The Status of Budenz and Tobey**

7 |        On August 26, 2005, Richard Tobey pled guilty to conspiracy to violate the Arms Export

8 | Control Act (Criminal Case No. 05-CR-1462-LAB). On October 18, 2005, George Charles Budenz

9 | II pled guilty to three counts of violating the Arms Export Control Act (Criminal Case No. 05-CR-

10 | 1863-LAB). Both men await sentencing.

11 |                                          **II**

12 |          **THE MOTION TO DISMISS THE INDICTMENT SHOULD BE DENIED**

13 |        Durrani moves to dismiss the Indictment on several grounds. He contends: (1) that the

14 | Indictment does not state facts sufficient to state an offense by Durrani; (2) that pre-indictment delay

15 | warrants dismissal under the Speedy Trial Act, Fed. R. Crim. P. 48(b), and the due process clause; (3)

16 | that he was "forcibly kidnaped from Mexico"; (4) that he was chosen for "selective prosecution"; and

17 | (5) that the Government has "used evidence it seized after the arrest to form the basis of probable cause

18 | for the arrest."[2] These contentions are thinly developed, if at all, in Durrani's memorandum of points

19 | and authorities. None has merit.

20 |    **A.    The Indictment States Offenses Against Durrani**

21 |        Durrani's moving papers provide no explanation for his assertion that the Indictment states no

22 | offense. Nevertheless, the Government will respond briefly to the assertion.

23 |        First, even a cursory review of the Indictment will show that it properly states a conspiracy

24 | offense under 18 U.S.C. § 371. The Indictment alleges that Durrani knowingly and intentionally agreed

25 | and conspired with other persons to commit offenses against the United States, to wit, to knowingly and

26 | willfully export from the United States defense articles designated on the United States Munitions List

27 | _____

28 | [2]    Durrani also complains that he has not received grand jury transcripts or other discovery. The Government addresses those issues in the sections of this memorandum responding to Durrani's other motions.

1  without first having obtained from the Department of State a license for such export or written

2  authorization for such export, in violation of Title 22, United States Code, Section 2778(b)(2) and (c),

3  and Title 22, Code of Federal Regulations, Sections 121.1, 123.1, and 127.1. [Indictment, p. 2:17-27.]

4  The Indictment alleges Durrani's personal participation in the conspiracy, as well as numerous overt acts

5  undertaken in furtherance of the conspiracy. [Indictment, p. 3-5.]

6        Second, Counts 2 through 5 state offenses under 22 U.S.C. § 2778. The elements of the offense

7  of exporting defense articles without a license are: (1) that defendant exported, or caused to be exported,

8  from the United States a defense article designated on the United States Munitions List; (2) that the

9  defendant did not obtain a license or written approval for export from the Department of State; and (3)

10 that defendant did such acts knowingly and willfully. See 22 U.S.C. § 2778; 22 C.F.R. § 127.1(a)(1);

11 United States v. Ortiz-Loya, 777 F.2d 973, 980 (5th Cir. 1985). Counts 2 through 5 allege each of those

12 elements. Accordingly, the Indictment states valid offenses.

**B.    The Indictment Should Not be Dismissed Under the Speedy**
**Trial Act, Rule 48(b) or the Due Process Clause**

15      Durrani contends that a 106-day "delay" between his arrest on June 15, 2005, and the Indictment

16 in this case somehow violated the Speedy Trial Act and also warrants dismissal under Fed. R. Crim. P.

17 48(b) and the Due Process Clause. He is wrong.

**1.    The Speedy Trial Act**

19      Under the Speedy Trial Act, Durrani's arrest on June 15, 2005, has no bearing on the present

20 Indictment. The Speedy Trial Act mandates that any indictment "charging an individual with the

21 commission of an offense shall be filed within thirty days from the date on which such individual was

22 arrested or served with a summons in connection with such charges." 18 U.S.C. § 3161(b) (emphasis

23 added). On June 15, 2005, Durrani was arrested on the warrant issued from the Central District of

24 California in 1999 in connection with a 1999 indictment charging Durrani with violating the Arms

25 Export Control Act in 1994. [Exhibit 4.] Durrani was not charged with any crime in this district until

26 the filing of the Complaint on September 23, 2005. He was arrested on the Complaint on September

27 26, 2005. He was indicted in this district on September 29, 2005 — well within the 30-day period

28 provided by 18 U.S.C. § 3161(b). Neither the Complaint nor the Indictment in this district has anything

1   to do with the charges contained in the 1999 indictment, which, as noted, concerned conduct in 1994.

2   Accordingly, the Indictment did not violate the Speedy Trial Act. See United States v. Hausman, 894

3   F.2d 686, 687 (5th Cir. 1990) (where the warrant and complaint upon which the defendant was arrested

4   did not contain the offense upon which the defendant was later convicted, the alleged delay between

5   arrest and indictment did not violate the Speedy Trial Act).

6                  **2.    Fed. R. Crim. P. 48(b)**

7          Under Fed. R. Crim. P. 48(b), if there is unnecessary delay presenting a charge to a grand jury,

8   the court may dismiss the indictment. The Ninth Circuit has emphasized that "a Rule 48(b) dismissal

9   'should be imposed only in extreme circumstances.'" United States v. Huntley, 976 F.2d 1287, 1291

10  (9th Cir. 1992) (quoting United States v. Sears, Roebuck & Co., 877 F.2d 734, 737 (9th Cir. 1989));

11  accord United States v. Jiang, 214 F.3d 1099, 1101 (9th Cir. 2000).

12         Because of the severity of the sanction, the Ninth Circuit has held that a district court abuses its

13  discretion if it dismisses under Rule 48(b) without first satisfying the requirements of "caution" and

14  "forewarning." Jiang, 214 F.3d at 1101; Huntley, 976 F.2d at 1292. "Forewarning" means just that.

15  See Huntley, 976 F.2d at 1292 ("For example, if the court had a reasonable concern about the old

16  complaint and unreturned arrest warrant, it might have ordered the government to obtain an indictment

17  or show cause why the complaint should not be dismissed."). "The term 'caution' is used in this circuit

18  in a non-obvious, technical sense. Caution requires findings of prosecutorial misconduct and actual

19  prejudice to the accused." Id.

20         Durrani does not meet these standards. He makes the conclusory assertion that a 106-day "delay"

21  between his arrest on the Central District warrant and his subsequent indictment by a grand jury in this

22  district caused him "substantial actual prejudice." But he does not describe the nature of any prejudice--

23  much less "substantial" prejudice--that he supposedly suffered. Nor does he make any intelligible

24  showing of prosecutorial misconduct. And, of course, he does not allege that the United States Attorney

25  was "forewarned" that seeking an indictment within just months of a crime could result in a dismissal

26  for "delay."

27         The Indictment in this case was rapid, not delayed. The Indictment alleges illegal exports as late

28  as January 2005 and a conspiracy continuing up to June 2005. The Indictment issued in September 2005

1  -- less than a year into the five-year statute of limitations. This is not an "extreme" circumstance

2  warranting a Rule 48(b) dismissal.

3              **3.    Due Process**

4          "The Fifth Amendment guarantees that defendants will not be denied due process as a result of

5  excessive preindictment delay." United States v. Sherlock, 962 F.2d 1349, 1353 (9th Cir. 1992). Courts

6  scrutinize alleged violations of this guarantee under a two-pronged test. Id. First, the defendant must

7  prove that he has suffered "actual, non-speculative prejudice from the delay." Id. "[T]he proof must be

8  definite and not speculative, and [the defendant] must demonstrate how the loss of a witness and/or

9  evidence is prejudicial to his case." United States v. Gregory, 322 F.3d 1157, 1165 (9th Cir. 2003)

10  (quoting Moran, 759 F.2d at 782). This burden is "heavy" and this Court "frequently find[s] actual

11  prejudice lacking." Sherlock, 962 F.2d at 1354; accord Huntley, 976 F.2d at 1290 ("The task of

12  establishing the requisite prejudice for a possible due process violation is 'so heavy' that we have found

13  only two cases since 1975 in which any circuit has upheld a due process claim."). Second, the defendant

14  "must show that the delay, when balanced against the prosecution's reasons for it, offends those

15  'fundamental conceptions of justice which lie at the base of our civil and political institutions.'" Id. at

16  1353-54 (citation omitted).

17          Here, as already explained, Durrani makes nothing but a conclusory assertion of prejudice. He

18  does not allege that the "delay" caused him to lose any witnesses or evidence. Nor does he demonstrate

19  how indicting him within months of the alleged offenses violates any fundamental conceptions of justice.

20  Accordingly, he fails to show any due process violation.

21      **C.     Durrani's Allegation that He was "Kidnaped" in Mexico**
            **Provides No Basis for Dismissal of the Indictment**

22

23          Durrani alleges that he "was kidnaped and arrested by three U.S. agents from San Diego,

24  California who arrived in Mexico City and physically, with weapons pointed at my head, kidnaped and

25  arrested me." [Declarations of Arif Durrani ¶ 2.] Without citing any authority, he asserts that this

26  purported "kidnaping" warrants dismissal of the Indictment. He is wrong.

27          Even assuming that United States agents "kidnaped" Durrani in Mexico City (which they did

28  not), it would not warrant dismissal of the Indictment. In United States v. Alvarez-Machain, 504 U.S.

1   655 (1992), the Supreme Court considered the forcible kidnaping of Humberto Alvarez-Machain from

2   Mexico to stand trial for participating in the murder of Drug Enforcement Administration special agent

3   Enrique Camarena-Salazar and another person.  The Supreme Court held that the forced abduction of

4   Alvaraz-Machain provided no defense to the jurisdiction of United States courts.  Id. at 657.  Indeed,

5   "[t]he Supreme Court has long held that the manner by which a defendant is brought to trial does not

6   affect the government's ability to try him."  United States v. Matta-Ballesteros, 71 F.3d 754, 762 (9th

7   Cir. 1995); accord United States v. Gonzalez, 240 F.3d 14, 16 (1st Cir. 2001) (seizure of defendant in

8   foreign country — without resort to extradition procedures -- did not create any jurisdictional defect).

9   Accordingly, even if true, Durrani's "kidnap" allegations would provide no basis for dismissal.

10          **D.      Durrani's Unsupported Allegation of Selective
                       Prosecution Provides No Basis for Dismissal**

11

12          Durrani makes an ill-defined claim that the Indictment should be dismissed for "selective

13   prosecution."  His moving papers state:

14          Defendant was wrongly convicted of the similar charges in 1987, served time, was
            released in 1992, was in the country until 1998 when he was illegally deported even
15          though he had become a U.S. Citizen on May 13, 1996.  Said 'selective prosecution' has
            continued until the instant case.

16

17   [Mot. & Not. by Def. for an Order of Dismissal of Indictment, p. 3:12-15.]

18          Durrani fails to establish a valid selective prosecution claim.  "The government retains broad

19   discretion as to whom to prosecute."  Belmontes v. Brown, 414 F.3d 1094, 1126 (9th Cir. 2005).  "[A]

20   presumption of regularity supports prosecutorial judgments, and 'in the absence of clear evidence to the

21   contrary, courts presume that [prosecutors] have properly discharged their official duties.'"  Id. (quoting

22   United States v. Armstrong, 517 U.S. 456, 464 (1996)).  "In our system, so long as the prosecutor has

23   probable cause to believe that the accused committed an offense defined by statute, the decision whether

24   or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his

25   discretion."  Bordenkircher v. Hayes, 434 U.S. 357, 364 (1978).  However, the decision to prosecute may

26   not be based on unjustifiable standards such as race, religion, or other arbitrary classifications, including

27   the exercise of protected statutory and constitutional rights.  Belmontes, 414 F.3d at 1126.  "In order to

28

                                                        11                              05cr1746-LAB

1  prevail on a selective prosecution claim, a defendant must show that the prosecutorial policy both had

2  a discriminatory effect and was motivated by a discriminatory purpose." Id.

3         Here, Durrani makes no such showing. His personal opinion that he was "wrongfully convicted"

4  and "illegally deported" is irrelevant. Durrani does not even articulate, much less establish, any

5  prosecution policy having a discriminatory effect or motivated by a discriminatory purpose.

6  Accordingly, the Court should reject his selective prosecution claim.

7         E.    <u>There Was Probable Cause For Durrani's Arrest</u>

8         Citing <u>United States v. Bizier</u>, 111 F.3d 214 (1st Cir. 1997), Durrani contends that the

9  Government used evidence seized after his arrest to provide probable cause for the arrest. <u>Bizier</u> merely

10  stands for the proposition that evidence obtained after an arrest may not form the basis of probable cause

11  for that arrest. <u>Id.</u> at 217. That proposition has no relevance here. As already explained, Durrani was

12  arrested on June 15, 2005 on an arrest warrant issued on an Indictment. Accordingly, there was probable

13  cause for that arrest. Later, on September 26, 2005, Durrani was arrested on a warrant issued on a

14  Complaint. Thus, at the time of the arrest, a probable cause determination had already been made by a

15  judicial officer. Therefore, Durrani's motion to dismiss the Indictment should be denied.

16                                        **III**

17  **THE COURT SHOULD NOT SUPPRESS EVIDENCE OBTAINED IN MEXICO**

18         Durrani moves to suppress the evidence obtained during the search of his residence and business

19  premises in Rosarito Beach, Mexico. He contends that the searches violated the Fourth Amendment.

20  His contention lacks merit.

21         "The proponent of a motion to suppress has the burden of establishing that his own Fourth

22  Amendment rights were violated by the challenged search or seizure." <u>Rakas v. Illinois</u>, 439 U.S. 128,

23  132 (1978). The Fourth Amendment does not apply to the search and seizure by United States agents

24  of property that is owned by a nonresident alien and located in a foreign country. <u>United States v.</u>

25  <u>Verdugo-Urquidez</u>, 494 U.S. 259, 261 (1990).

26         Here, it is undisputed that the searches took place in a foreign country. Moreover, Durrani is a

27  nonresident alien. His application for political asylum was denied and he was ordered deported from

28  the United States in 1995. [Exhibits 2 and 3.]. <u>See also Durrani v. United States</u>, 294 F. Supp. 2d 204,

1   208-09, 214 (D. Conn. 2003) (recounting Durrani's own assertions that his claim for political asylum

2   was denied, that he was ordered deported in 1995, that he left the United States in 1998, and that he then

3   made unsuccessful attempts to gain a visa to reenter the United States).

4          Against these facts, Durrani offers nothing more than his own conclusory assertion that he has

5   been a United States citizen since May 1986. This self-serving assertion does not carry his burden of

6   establishing that he is a United States citizen. Therefore, under Verdugo-Urquidez, Durrani has failed

7   to establish that the Fourth Amendment even applied to the searches in Mexico. His motion to suppress

8   should be denied.

9                                                  IV

10  **DURRANI IS NOT ENTITLED TO DISCLOSURE OF GRAND JURY TRANSCRIPTS**

11         Durrani moves for disclosure of all grand jury transcripts. The Court should deny the motion.

12         The Supreme Court has consistently recognized "that the proper functioning of our grand jury

13  system depends upon the secrecy of grand jury proceedings." Douglas Oil Co. v. Petrol Stops

14  Northwest, 441, U.S. 211, 219 (1979). Grand jury transcripts may be disclosed "upon a showing that

15  grounds may exist for a motion to dismiss the indictment because of matters occurring before the grand

16  jury." F.R.C.P. 6(e)(3)(E)(ii). But such disclosure "may not be ordered unless the defendant

17  demonstrates with particularity the existence of a compelling need that is sufficient to outweigh the

18  policy of grand jury secrecy." United States v. DeTar, 832 F.2d 1110, 1113 (9th Cir. 1987).

19         A presumption of regularity supports prosecutorial decisions and in the absence of clear evidence

20  to the contrary, courts presume that they have properly discharged their official duties. United States

21  v. Armstrong, 517 U.S. 456, 464 (1996). A strong presumption of regularity also attaches to grand jury

22  proceedings. United States v. Wadlington, 233 F.3d 1067, 1073 (8th Cir. 2000). Mere speculation of

23  impropriety does not--and cannot--justify disclosure of grand jury proceedings. DeTar, 832 F.2d at

24  1113; United States v. Claiborne, 765 F.2d 784, 792 (9th Cir. 1985)("Speculation cannot justify [the]

25  court's intervention into the grand jury proceedings."), disapproved on other grounds in United States

26  v. Baker, 10 F.3d 1374 (9th Cir. 1993); United States v. Ferreboeuf, 632 F.2d 832, 835 (9th Cir. 1980)

27  ("Mere 'unsubtantiated, speculative assertions of improprieties in the proceedings' do not supply the

28  'particular need' required to outweigh the policy of grand jury secrecy.")(citation omitted); United States

                                                   13                                    05cr1746-LAB

1   v. Hardy, 762 F. Supp. 1403, 1413 (D. Haw. 1991) (defendant's allegation that the prosecutor "may have

2   misinstructed the federal grand jury" was little more than speculation and did not warrant disclosure of

3   grand jury proceedings).

4        Here, in seeking blanket disclosure of all grand jury transcripts, Durrani offers nothing more than

5   speculation of impropriety. Durrani asserts that "there is no doubt but that the Government improperly

6   placed before the Grand Jury a mass of prejudicial material and has otherwise prejudiced the grand jury

7   process." But he sets forth no factual basis whatsoever for this assertion. Likewise, his counsel declares

8   his personal "belief" that the grand jury was "misled and deceived." Defense counsel also declares that

9   "[i]t is quite conceivable" that there are other, unspecified "defects" in the manner in which the

10  Indictment was returned. This is precisely the type of speculation that does not warrant disclosure of

11  grand jury proceedings. See Ferreboeuf, 632 F.2d at 835 ("[Defendant's] assertion of impropriety here

12  is mere speculation . . . . [Defendant] was simply on a fishing expedition"); DeTar, 832 F.2d at 1113

13  ("It is not sufficient for [movant] to assert that he has no way of knowing whether prosecutorial

14  misconduct occurred."); United States v. Short, 671 F.2d 178, 187 (6th Cir. 1982) (a general claim that

15  the grand jury transcripts would reveal exculpatory evidence does not establish particularized need).

16  Because Durrani does not meet the stringent standards for breaching grand jury secrecy, the Court should

17  deny the motion for disclosure of grand jury transcripts.

18                                              V

19              **THE GOVERNMENT WILL COMPLY WITH RULE 16 AND BRADY**

20       The defense's approach to discovery has been a study in contrasts. On one hand, the defense

21  propounds lengthy, overly broad, "any and all"-style discovery requests without regard to the limits of

22  Fed. R. Crim. P. 16. On the other hand, the defense has yet to take the time to inspect any discovery

23  made available by the Government.

24       The Government has roughly 17 boxes of discovery and numerous aircraft parts ready for

25  Durrani's inspection. This discovery includes, among other things, items seized from Durrani's business

26  and residence in Mexico, items seized from the residences of Charles Budenz and Richard Tobey, and

27  bank records, telephone toll records and shipping records. Additional discovery will be produced as it

28  becomes available. In many respects, the discovery ready for Durrani's inspection exceeds the

                                              14                              05cr1746-LAB

1  requirements of Rule 16. The Government intends to comply with its discovery obligations, as more

2  fully discussed below.

3          **A.    The Government Will Disclose Information**
                **Subject to Disclosure Under Rule 16(a)(1)(A) and (B)**

4                  **of the Federal Rules of Criminal Procedure**

5         The Government will disclose statements of the defendant as provided by Rule 16(a)(1)(A) and

6  (B). The defendant is not entitled to summaries of oral statements of the defendant made to persons not

7  known by him to be government agents, and the memorialization of any such statements in a written

8  report does not make them discoverable as "written" statements of the defendant. United States v.

9  Hoffman, 794 F.2d 1429, 1432 n.4 (9th Cir.1986).

10      **B.    The Government Will Comply With Rule 16(a)(1)(D)**

11         The Government will disclose a copy of Durrani's prior criminal record.

12      **C.    The Government Will Comply With Rule 16(a)(1)(E)**

13         The Government will permit the defendant to inspect and copy or photograph all books, papers,

14  documents, photographs, tangible objects, buildings, or places, or portions thereof, which are within the

15  possession, custody, or control of the Government, and which are material to the preparation of the

16  defendant's defense or are intended for use by the Government as evidence-in-chief at trial or were

17  obtained from or belong to the defendant.

18         The defendant is not entitled to all evidence known or believed to exist which is, or may be,

19  favorable to the accused, or which pertains to the credibility of the Government's case. As stated in

20  United States v. Gardner, 611 F.2d 770 (9th Cir. 1980):

21          [T]he prosecution does not have a constitutional duty to disclose every bit of information
        that might affect the jury's decision; it need only disclose information favorable to the

22          defense that meets the appropriate standard of materiality.

23  Id. at 774-775 (citations omitted); see also United States v. Sukumolachan, 610 F.2d 685, 687 (9th Cir.

24  1980) (the Government not required to create exculpatory material that does not exist); United States

25  v. Flores, 540 F.2d 432, 438 (9th Cir. 1976) (Brady does not create any pretrial discovery privileges not

26  contained in the Federal Rules of Criminal Procedure).

27  //

28  //

15

05cr1746-LAB

**D.    The Government Will Comply With Rule 16(a)(1)(F)**

The Government is not presently aware of any physical or mental examinations, or scientific tests or experiments, referenced in Rule 16(a)(1)(F).  However, if this changes, the Government will permit the defendant to inspect and copy or photograph any results or reports of physical or mental examinations, and of scientific tests or experiments, or copies thereof, which are within the possession of the Government, and by the exercise of due diligence may become known to the attorney for the Government and are material to the preparation of the defense or are intended for use by the Government as evidence-in-chief at the trial.

**E.    The Defendant is Not Entitled to the Disclosure of Witness Statements Prior to the Witness Testifying on Direct Examination at Trial**

Production of witness statements is governed by the Jencks Act, 18 U.S.C. § 3500, and need occur only upon timely motion after the witness testifies on direct examination.  See United States v. Taylor, 802 F.2d 1108, 1118 (9th Cir. 1986); United States v. Mills, 641 F.2d 785, 790 (9th Cir. 1981). Indeed, even material believed to be exculpatory and therefore subject to disclosure under the Brady doctrine, if contained in a witness statement subject to the Jencks Act, need not be revealed until such time as the witness statement is disclosed under the Act.  See United States v. Bernard, 623 F.2d 551, 556 (9th Cir. 1979).

**F.    Expert Witnesses**

Well in advance of trial, the Government will give to the defendant a written summary of any testimony that the government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case-in-chief.

**G.    Brady and Henthorn Material**

The Government will perform its duty under Brady v. Maryland, 373 U.S. 83 (1963) and United States v. Agurs, 427 U.S. 97 (1976), to disclose exculpatory evidence within its possession that is material to the issue of guilt or punishment, as well as its duty under Giglio v. United States, 405 U.S. 150 (1972), to provide information on any benefits provided to Government witnesses in exchange for their testimony.  Additionally, the Government will examine the personnel records of any Government

16

1  personnel who will testify at trial, and provide such material as the defense may be entitled to receive

2  under United States v. Henthorn, 931 F. 2d 29 (9th Cir. 1991).

3  **H.   Witness Lists and Addresses**

4  There is no requirement in a non-capital case for the Government to supply the defense with a

5  list of witnesses it expects to call at trial. The Government objects to providing any such list at this time,

6  and also objects to any request for the names and addresses of witnesses that the Government may or

7  may not call at trial. Any criminal convictions of witnesses, known to the Government, will be disclosed

8  prior to the witnesses' testimony.

9  **I.   Grand Jury Transcripts**

10  As already addressed in this memorandum, the Government opposes disclosure of grand jury

11  transcripts, except as may be consistent with the Jencks Act.

12  To the extent that Durrani seeks discovery beyond the above-discussed items, the Government

13  opposes the motion.

14  **VI**

15  **GOVERNMENT'S MOTION FOR RECIPROCAL DISCOVERY**

16  The defendant has invoked Federal Rule of Criminal Procedure 16(a) in seeking discovery.

17  Accordingly, the Government seeks reciprocal discovery from the defendant under Rule 16(b).

18  The Government, pursuant to Rule 16(b), hereby requests the defendant to permit the

19  Government to inspect, copy, and photograph any and all books, papers, documents, photographs,

20  tangible objects, or make copies of portions thereof, which are within the possession, custody or control

21  of the defendant and which he intends to introduce as evidence in his case-in-chief at trial.

22  The Government further requests that it be permitted to inspect and copy or photograph any

23  results or reports of physical or mental examinations and of scientific tests or experiments made in

24  connection with this case, which are in the possession or control of the defendant, which he intends to

25  introduce as evidence-in-chief at the trial or which were prepared by a witness whom the defendant

26  intends to call as a witness. The Government also requests reciprocal export witness disclosures. The

27  Government requests that the court make such orders as it deems necessary to insure that the

28  Government receives the discovery to which it is entitled.

17                                                    05cr1746-LAB

1

2

## VII

## CONCLUSION

3          For the above stated reasons, the Government requests that Durrani's motions be denied, except

4    where unopposed, and that the Government's motion for reciprocal discovery be granted.

5    DATED:        November _18_, 2005

6

7                                              Respectfully submitted,

8                                              CAROL C. LAM
                                               United States Attorney

9

10                                             WILLIAM P. COLE
                                               Assistant United States Attorney

11                                             Attorneys for Plaintiff
                                               United States of America

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                                    18

05cr1746-LAB

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal Case No.05CR1746-LAB |
| | ) | |
| Plaintiff, | ) | CERTIFICATE OF SERVICE BY MAIL |
| | ) | |
| v. | ) | |
| | ) | |
| ARIF ALI DURRANI, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

IT IS HEREBY CERTIFIED that:

I, Theresa M. Pinachio, am a citizen of the United States over the age of 18 years and a resident of San Diego County, California; my business address is 880 Front Street, Room 6293, San Diego, CA 92101-8893; I am not a party to the above-entitled action; and

I deposited in the United States mail at San Diego, California, in an envelope bearing the requisite postage, a copy of Government's Response and Opposition to Defendant's Motions for: (1) An Order of Dismissal of the Indictment; (2) An Order Suppressing Evidence Illegally Seized on June 22, 2005; (3) An Order Directing the Government to Produce Grand Jury Transcripts; and (4) An Order Directing the Government to Produce Documents Requested; addressed to: Mohammad "Moe" Nadim, Attorney at Law, 1541 Ocean Avenue, Suite 200, Santa Monica, CA 90401-2104, the last known address, at which place there is delivery service of mail from the United States Postal Service.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this day, November 18, 2005.



COPY

1  CAROL C. LAM
   United States Attorney
2  WILLIAM P. COLE
   Assistant United States Attorney
3  California State Bar No. 186772
   Federal Office Building
4  880 Front Street, Room 6293
   San Diego, California 92101-8893
5  Telephone: (619) 557-7859

6  Attorneys for Plaintiff
   United States of America

7

8                    UNITED STATES DISTRICT COURT

9                  SOUTHERN DISTRICT OF CALIFORNIA

10                    (HONORABLE LARRY A. BURNS)

11  UNITED STATES OF AMERICA,          )   Crim. Case No. 05CR1746-LAB
                                       )
12                      Plaintiff,     )   DECLARATION OF WILLIAM P. COLE
                                       )   IN SUPPORT OF GOVERNMENT'S
13          v.                         )   RESPONSE AND OPPOSITION TO
                                       )   DEFENDANT'S MOTIONS FOR:
14  ARIF ALI DURRANI,                  )
                                       )   1)  AN ORDER OF DISMISSAL OF THE
15                      Defendant.     )       INDICTMENT;
                                       )   2)  AN ORDER SUPPRESSING
16                                     )       EVIDENCE ILLEGALLY SEIZED ON
                                       )       JUNE 22, 2005;
17                                     )   3)  AN ORDER DIRECTING THE
                                       )       GOVERNMENT TO PRODUCE
18                                     )       GRAND JURY TRANSCRIPTS; AND
                                       )   4)  AN ORDER DIRECTING THE
19                                     )       GOVERNMENT TO PRODUCE
                                       )       DOCUMENTS REQUESTED
20                                     )
                                       )   Date:     November 28, 2005
21                                     )   Time:     2:00 p.m.
                                       )
22  _____)

23

24

25

26

27

28

1      I, William P. Cole, declare:

2      1.    I am the Assistant United States Attorney assigned to the above-referenced matter. I

3  have personal knowledge of the facts set forth herein.

4      2.    Each of the exhibits attached hereto is a true and correct copy of a certified copy,

5  except for redactions made to comply with General Order No. 514. The certified copies are in the

6  possession of the Government and will be made available for inspection at the hearing on the

7  defendant's pending motions.

8      I declare under penalty of perjury under the laws of the United States that the foregoing is

9  true and correct, and that this declaration is signed in San Diego, California on November 18, 2005.

10

11                               William P. Cole

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

              05cr1746-LAB

APPENDIX T

O F F I C I A L   U S E   O N L Y

REQUESTED BY: GIBSON, DESMOND

| DEPARTMENT OF HOMELAND SECURITY ICE | 1. ███████████ |
|---|---|
| | 2. PAGE    1 |
| R E P O R T   O F   I N V E S T I G A T I O N | 3. ████████████████ |

4. TITLE: ARIF A. DURRANI DBA LONESTAR

5. CASE STATUS:    INTERIM RPT

| 6. REPORT DATE 021097 | 7. DATE ASSIGNED 050593 | 8. ████ | 9. ████ | 10. REPORT NO. 013 |
|---|---|---|---|---|

11. RELATED CASE NUMBERS: ████████████████████████

12. COLLATERAL REQ: █████████

13. TYPE OF REPORT:
    COLLATERAL REQUEST / IN

TOPIC: REQUEST TO SAC/BALTIMORE TO SERVE SUBPOENA IN LINTHICUM, MD

14. SYNOPSIS:
RAC/Oxnard is investigating alleged illegal exports by Arif DURRANI,
doing business as LONESTAR AEROSPACE, INC., and as SIGNAL AEROSPACE,
INC.  Please refer to other reports on this investigation, if additional
background information is desired.

UNDEVELOPED LEADS:

SAC/BA:    It is requested that SAC/Baltimore serve a grand jury subpoena
           for documents at CIRCLE INTERNATIONAL, INC., located at
           810 Oregon Avenue, Linthicum, MD 21090.  Please have the
           custodian of records at CIRCLE INTERNATIONAL, INC., contact
           SS/A Kempton at (805) 988-8690 with any questions.  Please note
           also that CIRCLE INTERNATIONAL is not a subject at this time.
           (The subpoena is being forwarded by FedEx.)

| 15. DISTRIBUTION: | 16. SIGNATURE: _____ |
|---|---|
| ███████████████ | KEMPTON        ERNEST     W  SENIOR SPEC AGENT |
| | 17. APPROVED: _____ |
| | DONAHUE        JAMES      D  SUP CRIM INVEST |
| | 18. ORIGIN OFFICE: OX OXNARD - RAC | 19. TELEPHONE: 805 988 8690 |
| | | 20. TYPIST: KEMPTON |

O F F I C I A L   U S E   O N L Y
THIS DOCUMENT IS LOANED TO YOU FOR OFFICIAL USE ONLY AND REMAINS THE PROPERTY
OF THE DEPARTMENT OF HOMELAND SECURITY, ICE. ANY FURTHER REQUEST FOR
DISCLOSURE OF THIS DOCUMENT OR INFORMATION CONTAINED HEREIN SHOULD BE REFERRED
TO ICE HEADQUARTERS TOGETHER WITH A COPY OF THE DOCUMENT.



COPY

U. S. Department of Justice

**United States Attorney**
**Central District of California**

William A. Crowfoot
Assistant United States Attorney
(213) 894-4465
(213) 894-6436(fax)

United States Courthouse
312 North Spring Street, 13ᵗʰ floor
Los Angeles, California  90012

September 16, 2005

Compliance Specialist
Directorate of Defense Trade Controls
2401 E Street, NW SA-1 #1304
Washington, DC 20037

     Re:   United States  v.  Arif  Durrani, CR 99-470-PA

Dear

     This letter will supplement my letters of August 15, September 8, 2005 and earlier today (a letter incorrectly dated September 8, 2005 -- corrected letter attached).

     As requested, attached you will find the entire text of defendant's motion to dismiss, including his declaration.

     Today I had the opportunity to speak for the first time with the person who ircle International at the time the two shipments which are the subject of this case were made in May 1994.  In fact, he signed the airway bills.  This person told me that Circle acted as the freight forwarder on behalf of the Royal Jordanian Air Force at that time and that the aircraft parts in question in all likelihood were covered by blanket export licenses obtain by the Royal Jordanian Air Force.  He indicated that it would not have been unusual for such a blanket license to state a broad description of goods, which would include parts such as the ones in this case, and, further, that it would not have been unusual if the license stated that such parts were to be obtained from "various U.S. suppliers."  He had no specific recall of the particular transactions which were the subject of this case because the Jordanians were obtaining parts from many suppliers.

     I believe we need to determine whether any such blanket export licenses were in effect in favor of the Royal Jordanian Air Force in early May 1994.  Unfortunately, I cannot provide you

001

with the export license number from the Shippers Export Declaration as we have not been able to locate the SEDs.

Thank you very much for your kind assistance.  I can be reached at telephone number

Very truly yours,

DEBRA WONG YANG
United States Attorney

WILLIAM A. CROWFOOT
Assistant United States Attorney

enclosure



**United States Attorney**
**Central District of California**

*William A. Crowfoot*
*Assistant United States Attorney*
*(213) 894-4465*
*(213) 894-6436(fax)*

*United States Courthouse*
*312 North Spring Street, 13ᵗʰ floor*
*Los Angeles, California 90012*

September 16, 2005

Compliance Specialist
Directorate of Defense Trade Controls
2401 E Street, NW SA-1 #1304
Washington, DC 20037

     Re:   <u>United States v. Arif Durrani</u>, CR 99-470-PA

Dear

     This letter will supplement my letters of August 15 and September 8, 2005.

     In a motion to dismiss the indictment in this case, defendant Durrani states in a sworn declaration that he had copies of export licenses issued to Circle International and the Royal Jordanian Air Force. See Item no. 21 in the attached page of that declaration. This underscores the importance of question no. 2 in my September 8, 2005 letter as to whether anyone applied for any export licenses on behalf of Arif Durrani or Lonestar Aerospace, Inc., a California corporation, including, specifically, export licenses for the export in or about May, 1994, to the Royal Jordanian Air Force of: (i) 41 J-85 Engine Stage 1 Compressor Blades (P/N 6009T01P01); and (ii) 110 J-85 Engine Stage 2 Compressor Blades (P/N 6009T02P01).

     Thank you very much for your kind assistance. I can be reached at telephone number

     Very truly yours,

DEBRA WONG YANG
United States Attorney

WILLIAM A. CROWFOOT
Assistant United States Attorney

enclosure

APPENDIX U

## Orders on Motions

<u>5:86-cr-00059-SRU USA v. Durrani</u> **CASE CLOSED on 01/14/2002**
CLOSED


### U.S. District Court

### United States District Court for the District of Connecticut

## Notice of Electronic Filing

The following transaction was entered on 7/9/2007 at 9:41 AM EDT and filed on 7/9/2007

**Case Name:**      USA v. Durrani

**Case Number:**    <u>5:86-cr-59</u>

**Filer:**

**Document Number:** 36(No document attached)


**Docket Text:**
ELECTRONIC ENDORSEMENT ORDER denying without prejudice [35] Motion for liability and to recover damages as to Arif Durrani (1). The claims raised by this motion have nothing to do with this criminal case and with this District. Signed by Judge Stefan R. Underhill on 7/9/07. (Sbalbi, B.)


**5:86-cr-59-1 Notice has been electronically mailed to:**
William J. Nardini william.nardini@usdoj.gov, sue.scott@usdoj.gov
Maciej A. Piatkowski mapiatkowski@rrjd-law.com


**5:86-cr-59-1 Notice has been delivered by other means to:**

Jeffrey A. Meyer
U.S. Attorney's Office-NH
157 Church St., 23rd floor
New Haven, CT 06510

APPENDIX V



### Minutes of the United States District Court
### Southern District of California
### Friday, October 14, 2005

2005CR01746-LAB

**For the Honorable:   Louisa S. Porter   Magistrate Judge**

**Deputy Clerk:    Irma Fletes**

**On Calendar:**

**2005CR01746-LAB**

USA vs.

  (1) ARIF ALI DURRANI (C)

Lang Booking #
ENG 09027014   **(1) By:**
      **William P. Cole  AUSA**
      619 557-5610

**ARRAIGNMENT (1)**

**Minutes:**
Tape No: POR05-1; 4989-5790

DOA: 9/9/05

ATTORNEY MOHAMAD NADIM RTND - N/A
FEDERAL DEFENDERS, IN.,
JOHN ELLIS S/A

DFT ARRAIGNED ON THE INDICTMENT.  DFT PLEADS NOT GUILTY MOTION HRG/TRIAL
SETTING SET FOR 11/28/05 @ 2:00 P.M. BEFORE DISTRICT JUDGE BURNS.

GOVERNMENT ORAL MOTION FOR DETENTION/BOND HEARING -GRANTED.
DETENTION/BOND HEARING SET FOR 10/19/05 @ 2:00 P.M. BEFORE MAGISTRATE JUDGE
MCCURINE.

REQUESTED BY:  BUCARO, BRIAN R

O F F I C I A L   U S E   O N L Y

| DEPARTMENT OF HOMELAND SECURITY ICE | 1. TECS ACCESS CODE ███ |
|---|---|
| R E P O R T   O F   I N V E S T I G A T I O N | 2. PAGE  1 |
| | 3. CASE NUMBER  ████████ |

4. TITLE: ARIF DURRANI DBA AEROSPACE LOGISTICS SERVICES ET AL.

5. CASE STATUS:    INTERIM RPT

| 6. REPORT DATE 102005 | 7. DATE ASSIGNED 112904 | 8. CLASS ███ | 9. PROGRAM CODE ███ | 10. REPORT NO. ███ |
|---|---|---|---|---|

11. RELATED CASE NUMBERS:

12. COLLATERAL REQ:

13. TYPE OF REPORT:
    INVESTIGATIVE FINDINGS

TOPIC: ARREST OF ARIF DURRANI ON SOUTHERN DISTRICT OF CALIFORNIA COMPLAINT

14. SYNOPSIS:

AEROSPACE LOGISTICS SERVICES is owned and operated by Arif Ali DURRANI, who has previously been convicted and incarcerated for three counts of violating Title 22 U.S.C. 2778, Arms Export Control Act, DURRANI has been a U.S. Customs fugitive since May 1999, based on a sealed indictment and arrest warrant out of RAC/Oxnard, for further violations of U.S. export law.
                                                            STET

DURRANI has lived in Mexico since 1998 after being declared deportable by INS in 1995.  On June 15, 2005, DURRANI was taken into custody, at Los Angeles International Airport by ICE agents from RAC/Oxnard and SAC/San Diego, pursuant to the 1999 outstanding arrest warrant, after having been deported by the Government of Mexico.  DURRANI was set to stand trial in the Central District of California on October 4, 2005.  On September 23, 2005, a criminal compliant was filed and an arrest warrant was issued for DURRANI in the Southern District of California.  Details are contained within.

| 15. DISTRIBUTION: SACSD | 16. SIGNATURE: ███████  SPECIAL AGENT |
|---|---|
| | 17. APPROVED: ███████  OI GRP SUPERVISOR |
| | 18. ORIGIN OFFICE: SD SAN DIEGO, CA - SAC |
| | 19. TELEPHONE: 619 744 ███ |
| | 20. TYPIST: ███ |

O F F I C I A L   U S E   O N L Y

THIS DOCUMENT IS LOANED TO YOU FOR OFFICIAL USE ONLY AND REMAINS THE PROPERTY OF THE DEPARTMENT OF HOMELAND SECURITY, ICE. ANY FURTHER REQUEST FOR DISCLOSURE OF THIS DOCUMENT OR INFORMATION CONTAINED HEREIN SHOULD BE REFERRED TO ICE HEADQUARTERS TOGETHER WITH A COPY OF THE DOCUMENT.

OFFICIAL USE ONLY

| DEPARTMENT OF HOMELAND SECURITY ICE | 1. PAGE    2 |
|---|---|
| R E P O R T   O F   I N V E S T I G A T I O N C O N T I N U A T I O N | 2. CASE NUMBER |
| | 3. REPORT NUMBER: |

DETAILS OF INVESTIGATION:

On June 15, 2005, Arif DURRANI had been taken into custody, at Los Angeles International Airport by ICE agents from RAC/Oxnard and SAC/San Diego, pursuant to an outstanding arrest warrant based on a sealed indictment from 1999, after having been deported by the Government of Mexico.

On September 22, 2005, SAC/San Diego learned from the United States Attorney's Office, Southern District of California that the United States Attorney's Office, Central District of California would be dismissing their case and the 1999 indictment against DURRANI, potentially as soon as Friday, September 23, 2005.

On September 23, 2005, within the United States District Court for the Southern District of California, before the Honorable Barbara L. Major, a criminal complaint was made against Arif Ali DURRANI for the violation of Title 18 U.S.C. Section 371 - Conspiracy to Commit Offenses Against the United States; to wit, Title 22, U.S.C., Section 2778  Arms Export Control Act.  The criminal complaint was filed and an arrest warrant issued for DURRANI; both documents were not sealed by the court.

On or about September 26, 2005, the charges were dismissed against DURRANI by the United States Attorney's Office, Central District of California, regarding the 1999 indictment on two counts of violating the Arms Export Control Act.

On or about September 26, 2005, DURRANI was taken into custody by the United States Marshals Service in the Central District of California pursuant to the September 23, 2005 arrest warrant out of the Southern District of California.

On September 27, 2005, pursuant to the September 23, 2005 arrest warrant and criminal complaint out of the Southern District of California, DURRANI appeared before the Honorable Andrew J. Wistrich, Magistrate Judge, United States District Court for the Central District of California.  DURRANI waived Identity Hearing, was ordered detained without bail, and a Preliminary Hearing was set for October 5, 2005.

The investigation continues.

COLLATERAL REQUESTS:
None at this time.

UNDEVELOPED LEADS:
To be determined by SAC/San Diego.

OFFICIAL USE ONLY

THIS DOCUMENT IS LOANED TO YOU FOR OFFICIAL USE ONLY AND REMAINS THE PROPERTY OF THE DEPARTMENT OF HOMELAND SECURITY, ICE. ANY FURTHER REQUEST FOR DISCLOSURE OF THIS DOCUMENT OR INFORMATION CONTAINED HEREIN SHOULD BE REFERRED TO ICE HEADQUARTERS TOGETHER WITH A COPY OF THE DOCUMENT.

APPENDIX W



**LIMITED OFFICAL USE**
**UNITED STATES MARSHALS SERVICE**
**PRISONER TRACKING SYSTEM**
**DISTRICT OF CENTRAL DISTRICT OF CALIFORNIA**
**DISTRICT: 12 OFFICE: ROY**
**INDIVIDUAL CUSTODY AND DETENTION REPORT USM 129**
**NAME: DURRANI, ARIF ALI**
**USMS NUMBER: 09027014**

## I. IDENTIFICATION DATA

| | |
|---|---|
| USMS NUMBER: 09027014 | NAME: DURRANI, ARIF ALI |
| ADDRESS: EXTRADITION FROM MEXICO , XX | PHONE: |
| DOB: 08/14/1949      AGE: 58 | POB: PAKISTAN, XX |

| | | | | | |
|---|---|---|---|---|---|
| SEX: M | RACE: W | HAIR: BLK | EYE: BRO | HEIGHT: 511 | WEIGHT: 180 |
| SSN: | | FBI NBR: 447572FA5 | | ALIEN NBR: A21763558 | |

| *** SPECIAL HANDLING CODE | SPECIAL HANDLING REMARK |
|---|---|
| | HIGH BLOOD PRESSURE |
| MED | SUBJ. TAKES ACCUPRIL FOR HEART MURMUR |
| MED | |

| DETAINER DATE | ACTIVE | AGENCY | REMARK |
|---|---|---|---|
| 06/15/2005 | N | CUSTOMS & BORDER PROTECTION | |

| PRISONER ALIAS | ALIAS REMARK |
|---|---|
| NONE | |

| GENERAL REMARKS | b7C, j2 |
|---|---|
| ARRESTING AGENT ▇▇▇▇▇▇▇▇▇ | |
| BODY HELD OVER DUE TO OUTSTANDING S/CA CASE | |

## II. CASE INFORMATION

| CTR | STATUS | COURT CASE NUMBER | FEDERAL COURT CITY | JUDGE | US ATTORNEY | DEFENSE ATTORNEY |
|---|---|---|---|---|---|---|
| 1 | RL-DISMSB | CR 99-740. | LOS ANGELES | | | |
| 2 | RL-WOR | 05-2011M | LOS ANGELES | | | |

| CTR | ARREST DATE | ARRESTING AGENCY | ARREST LOCATION | WARRANT NUMBER |
|---|---|---|---|---|
| 1 | 06/15/2005 | U.S. MARSHALS SERVICE | MEXICO | C/CA |
| 2 | 09/26/2005 | U.S. MARSHAL SERVICE | ROYBAL FED BUILDING LACA | S/CA |

| CTR | OFFENSE CODE | OFFENSE | REMARK | DISPOSITION |
|---|---|---|---|---|
| 1 | 2699 | FRAUD | 22 USC 2778 EXPORTING DEFENSE ARTICLES W/O LICENSE | CHARGES DISMISSED/DROPPED. |
| 2 | 6808 | COMPOUNDING CRIME | 22 USC 2278 CONSPIRACY/ ARMS CONTROL ACT | UNKNOWN |

## III. STATUS HISTORY

23

APPENDIX X

United States Marshals Service
LIMITED OFFICIAL USE
Subject Report for DURRANI,ARIF (FID 389864)



Date Closed: 09/28/2005
Date Executed: 09/26/2005
Execution Code: DET LODGED; CUSTODY TAKEN
Arrested in District: 012                    b7C, j²
To Be Prosecuted: U
Close Summary: NOTIFIED BY ▓▓▓▓FROM LOS ANGELES USMS SUBJECT WAS ARRAIGNED ON
SAN DIEGO
WARRANT ON 09/26/05.  HE IS WT. TO
REMOVED TO SAN DIEGO.

Case Number: 9912-0510-2394-J
Case Status: CLOSED
Originating District: 012 - CA/C LOS ANGELES (Warrants)
International Liaison: HQTS - Mexico City Liaison
Opened: 06/15/2005
Closed: 06/15/2005

Charge Information
Agency: USC - Federal Agency
DTR  US CUSTOMS SERVICE
Part of Task Force: LOS ANGELES REG TASK FORCE
Charge: 5299, WEAPON OFFENSE
Warrant Date: 05/07/1999
Date Received: 05/10/1999
OCDE: No
Remarks: CASE#CR99-470,EXPORTING DEFENSE ARTICLES WITHOUT A LICENSE

Close Information
Date Closed: 10/27/2005
Date Executed: 06/15/2005
Execution Code: PHYSICAL ARREST                b7C, j²
Arrested in District: 012
To Be Prosecuted: Y
Close Summary: MCFO DEPORT FROM MEXICO CITY.DUSM'S ▓▓▓▓▓▓AND INSPECTOR
▓▓▓▓▓▓ESCORTED
AND TOT US CUSTOMS AT PORT OF ENTRY.

APPENDIX Y



**U.S. Department of Justice**
**Office of the Inspector General**
Investigations Division
Los Angeles Field Office
330 N. Brand Blvd, Suite 655
Glendale, CA 91203
Phone (818) 543-1172  Fax (818) 637-5082

February 19, 2008

Arif A. Durrani #09027-014
Federal Correctional Complex
Victorville I
P.O. Box 5300
Adelanto, CA 92301

Dear Mr. Durrani:

The purpose of this letter is to acknowledge receipt of your correspondence dated August 20, 2007. The staff of the Investigations Division has reviewed the issues that you raised.

The Office of the Inspector General (OIG) receives a high volume of complaints every day for review and handling. Because the OIG has limited staff and resources we are not able to investigate every complaint. Only those complaints involving criminally prosecutable misconduct and the most egregious administrative misconduct can be accepted for investigation. Many other issues can and should be addressed by the management levels of the involved components. We have determined that Federal Bureau of Investigation (FBI), Los Angeles should review your complaint. Therefore, your complaint has been forwarded to:

> FBI Los Angeles
> 11000 Wilshire Boulevard
> Los Angeles, California 90024-3672

Any further correspondence regarding this matter should be directed to that office.

I hope this answers any questions you have relative to this matter.

Sincerely,

Kenneth R. Strange Jr.
Special Agent in Charge

APPENDIX Z

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

```
------------------------------------------------x
                                                :
       USA                                      :
                                                :
       vs.                                      :Civil  No.  3:86cr59(SRU)
                                                :
       Arif A. Durrani                          :
                                                :
                                                :
------------------------------------------------x
```

## ORDER RETURNING SUBMISSION

The Clerk has received your <u>Exhibits</u> however, it is deficient in the area(s) checked below:

(NOTE: L.R. refers to the Local Rules, District of Connecticut)

1. _ L.R.5(c)
   _ No certificate of service attached to pleading
   _ Certificate of service fails to list names and addresses of all parties served
   _ Certificate of service is not signed

2. _ L.R.5(e)
   Failure to submit document under seal

3. _ L.R.10
   _ Failure to sign pleading (original signature)
   _ Failure to double space
   _ Margin is not free of printed matter
   _ Left hand margin is not one inch;
   _ Judge's initials do not appear after the case number
   _ Docket number is missing
   _ Failure to supply federal bar number
   _ Holes not punched in document

4. _ L.R.83.1(d)
   Motion to admit pro hac vice must be made by local counsel or member of the bar of this Court

5. ✔ Other
   <u>**Failure to sign pleading and 2241 motion must be filed where custodian can be found, i.e., in California.**</u>

The Clerk is hereby Ordered to return the above pleading and to notify counsel of such action.

Date: _7/9/07_

_(signature)_
United States District Judge

(YGM)

rev. 7/18/05

9/11/07
07cv1196 order

# UNITED STATES DISTRICT COURT

## DISTRICT OF CONNECTICUT

FILED

2007 AUG 17 P 3: 32

U.S. DISTRICT COURT

Arif A. Durrani
    v.

S.A. Holencik, et al

CS
3:07CV1196 (WWE)

## TRANSFER ORDER

The above-identified case is hereby transferred to the docket of _Robert N. Chatigny_, U.S.D.J., for all purposes.

All future pleadings or documents in this matter should be filed with the Clerk's Office in _Hartford_ and bear the docket number _3:07CV1196 (RNC )_. Pleadings or documents filed at any other seat of court will be refused at the Clerk's Office and returned to you unfiled. [See Local Rule 3(a) (formerly Local Rule 7(a))].

IT IS SO ORDERED.

Dated at Bridgeport, Connecticut, this 17th day of August, 2007.

_____
WARREN W. EGINTON
Senior United States District Judge

## Other Orders/Judgments
3:07-cv-01196-RNC Durrani v. Holencik et al

INS

### U.S. District Court

### United States District Court for the District of Connecticut

### Notice of Electronic Filing

The following transaction was entered on 9/7/2007 at 9:27 AM EDT and filed on 9/6/2007
**Case Name:**    Durrani v. Holencik et al
**Case Number:**    3:07-cv-1196
**Filer:**
**Document Number:** 3

**Docket Text:**
ORDER OF TRANSFER. Case reassigned to Judge Stefan R. Underhill for all further proceedings.
Signed by Judge Robert N. Chatigny on 9/6/07. (D'Onofrio, B.)

**3:07-cv-1196 Notice has been electronically mailed to:**

**3:07-cv-1196 Notice has been delivered by other means to:**

Arif A. Durrani
VICTORVILLE MEDIUM I
FEDERAL CORRECTIONAL INSTITUTION
Inmate Mail/Parcels
P.O. BOX 5300
ADELANTO, CA 92301

The following document(s) are associated with this transaction:

**Document description:** Main Document
**Original filename:** n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1034868047 [Date=9/7/2007] [FileNumber=1362864-0]
[5ca8da267400d4720378a33f263cea80bd27737a90595df9b34c764f821928b35026
42a8f06be0e12289a9b39c199910cad4ab548bb1753297ef51bbece106f8]]